

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE, 200 VESEY STREET
Suite 400
NEW YORK, NEW YORK 10281-1022

Nancy A. Brown
(212) 336-1023
brownn@sec.gov

April 26, 2017

**By ECF**

Hon. Joseph A. Dickson
United States Magistrate Judge
District of New Jersey
Martin Luther King, Jr. Federal Building
    and Courthouse
50 Walnut Street
Newark, New Jersey  07102

    Re:    <u>SEC v. Gentile; 16 Civ. 1619 (JLL)(JAD)</u>

Dear Judge Dickson:

    We represent the Plaintiff, Securities and Exchange Commission, in the above-captioned civil action. As directed by the Court at our April 12, 2017 conference, we write to provide a status update on the parallel criminal case (<u>United States v. Gentile</u>, 16 Cr. 155 (JLL) ("Criminal Case")) and to set forth the reasons for our opposition to continuing the stay of this matter.

    The appeal of the United States Attorney's Office ("USAO") of Judge Linares' January 30, 2017 dismissal of the indictment remains pending. Although the USAO recently filed information due in the Court of Appeals, those filings continue to indicate that the Government has not yet determined whether it will pursue an appeal of the dismissal. (Appeal Docket No. 17-1468, Criminal Appeal Information Statement, at 2 ("Tentatively appealing a dismissal of the indictment").) The pendency of this appeal, however, does not in any way justify the further stay of this matter, since the Criminal Case remains dismissed, and there is no indictment pending against Gentile.

Background

    The Commission filed its case on the same day, March 23, 2016, as the indictment was unsealed in the Criminal Case. The Commission's Complaint alleges that Defendant Gentile, with others, perpetrated two lucrative penny stock manipulation and unregistered public distribution schemes, employing, among other devices, manipulative matched trades, kick-backs, and fraudulent stock touting. The Complaint charges Gentile with violations of the anti-fraud, anti-touting, and securities registration requirements of the federal securities laws and seeks injunctions against future violations, disgorgement of ill-gotten gains with interest, penalties, and a bar against future participation in penny stock offerings. (DE 1.)

At the request of Defendant, the Commission consented to the entry of an Order staying the civil case pending resolution of the Criminal Case. (DE 8 (the "Stay").)[1] By its terms, the Stay was to run through a "judgment" in the Criminal Case. Thus, when the Court dismissed the indictment in the Criminal Case on January 30, 2017, the Defendant acknowledged that the Stay was no longer operative. (DE 12 (Gentile Letter to the Court, dated March 9, 2016 [sic], at 1).) However, Defendant now argues that the Stay should be re-imposed because the USAO has filed a notice of appeal from the dismissal of the indictment. (Id.) Because the Commission will suffer prejudice, it no longer consents to a stay of these proceedings, and the Court should allow discovery to commence and set a date by which Defendant should file his answer.

Standards for Ordering a Stay of a Civil Case

Courts in this District apply a six-factor test in considering a motion to stay a civil proceeding pending the resolution of a criminal prosecution: "1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest." Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd. 7 F. Supp. 2d 523, 526-27 (D.N.J. 1998).[2]

In applying those factors, courts are mindful that a "stay of a civil case is an extraordinary remedy." Strategic Envtl. Partners, LLC v. NJ Dep't of Envtl. Protection, No. 12 Civ. 3252, 2016 WL 3267285, at *2 (D.N.J. June 8, 2016) (quotations omitted). This is particularly so, where, as here, no indictment is pending, and the resolution of any criminal proceeding that might someday be filed is indeterminate. Cress v. City of Ventnor, No. 08 Civ. 1873, 2009 WL 750193, at *2 (D.N.J. March 18, 2009) ("Unlike when an indictment has been returned, here there is less certainty that [Defendant's] criminal trial will begin shortly. Thus, a stay would be indefinite, prejudicing Plaintiffs."); see also Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc., 175 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (denying stay to pre-indictment defendant, noting that post-indictment, the prejudice to plaintiff of a stay is minimized by the Speedy Trial Act which ensures that the criminal action will produce "a reasonably speedy resolution").

The status of this case is, in all relevant respects, analogous to the pre-indictment situation, in which no speedy resolution of the criminal case can be assured. The indictment against Gentile has been dismissed, and the USAO has not even determined whether to pursue its appeal. (See Criminal Case DE 34 (noting that the notice of appeal was filed "protectively" to permit the Solicitor General "sufficient time to determine whether to pursue an appeal") and Appeal Docket No. 17-1468, Criminal Appeal Information Statement, at 2 ("Tentatively appealing a dismissal of the indictment").) But even if the USAO were to pursue the appeal, no speedy resolution of the criminal charges is assured. A victory on appeal for the Government would simply return the Criminal Case to the District Court, where litigation concerning Gentile's claims of violations of his

---

[1]   The USAO has not moved at any time to intervene and to stay these proceedings.

[2]   There is no dispute that the issues in this case and the dismissed indictment in the Criminal Case overlap.

speedy trial and due process rights – raised but not determined by the earlier proceedings – would precede any trial of the merits. (See Criminal Case DE 14 (Gentile's "Motion to Dismiss the Indictment Based on Violations of the Statute of Limitations, His Right to a Speedy Trial, and His Right to Due Process").) Thus, at best, the delay faced by the Commission here promises to be lengthy and of unknown duration.

The uncertain status of the Criminal Case also means that a further stay of this matter will not promote the Court's interest in judicial efficiency. Cress, 2009 WL 750193, at *3. Because there is no basis to believe that the dismissed Criminal Case will soon, if at all, be adjudicated on the merits, there is no reason to expect that the collateral estoppel effect of a criminal judgment will streamline the matters to be proved in this case.

Also not implicated here is any real, cognizable impact on Gentile's Fifth Amendment rights. Courts are more likely to grant a stay where an indictment has been returned because of the Fifth Amendment dilemma posed where a defendant faces an ongoing criminal proceeding. Walsh Secs., Inc., 7 F. Supp. 2d at 527. In those circumstances, if the defendant asserts his Fifth Amendment rights to avoid self-incrimination, he might be subjected to an adverse inference in the civil action, creating the quandary of choosing between waiving his Fifth Amendment rights and effectively forfeiting the civil case. State Farm Mut. Auto. Ins. Co. v. Beckham-Easley, No. 01 Civ. 5530, 2002 WL 31111766, at *3 (E.D. Pa. Sept. 18, 2002). But it is not unconstitutional to force a defendant to make that choice, Baxter v. Palmigiano, 425 U.S. 308, 318-19 (1976), and where no indictment has been returned, the dangers of self-incrimination are "at least somewhat more remote." Sterling Nat'l Bank, 175 F. Supp. 2d at 577. "Where civil defendants are not subject to criminal charges, therefore, the 'inappropriateness of a stay is manifest.'" State Farm, 2002 WL 31111766, at *3 (quotations omitted); accord De'Omilia Plastic Surgery, PC v. Sweeton, No. 12 Civ. 6415, 2013 WL 6070037, at *3 (D.N.J. Nov. 18, 2013) (defendant's fear that she might be indicted by other jurisdictions did not justify a stay of civil case, holding "courts generally deny *pre* indictment requests for a stay") (emphasis in original); Citibank, NA v. Super Sayin' Publishing, LLC, 86 F. Supp. 3d 244, 249 (S.D.N.Y. 2015).

Moreover, Gentile himself has shown little concern about protecting his Fifth Amendment rights. He has voluntarily sat for lengthy interviews with at least one reporter about his involvement in the matters that led to this case. See Zeke Faux, BloombergBusinessweek, "'Bro, I'm Going Rogue': The Wall Street Informant Who Double-Crossed the FBI," available at https://www.bloomberg.com/news/features/2017-03-23/-bro-i-m-going-rogue-the-wall-street-informant-who-double-crossed-the-fbi. And, according to the USAO, Gentile long ago admitted his guilt for the conduct alleged in this case when he agreed to cooperate with the Government after his arrest in 2012. (Criminal Case, DE 19 (Memorandum of Law in Opposition to Defendant Guy Gentile's Motion to Dismiss the Indictment, Sept. 23, 2016, at 5).)[3] Thus, Gentile's Fifth Amendment rights are not threatened by the SEC case proceeding now.

---

[3] Two of Gentile's confederates in both schemes alleged here have already pled guilty in this Court to their conduct. See United States v. Cohen, 15 Cr. 248 (JLL) (D.N.J.) (DE 3) and United States v. Taxon, 15 Cr. 249 (JLL) (D.N.J.) (DE 3).

In contrast, the prejudice to the Commission from an indefinite and complete stay is real and present. Among the relief sought here is an injunction against future violations of the antifraud provisions of the federal securities laws.[4] By his own admission, Gentile continues to make his living in the securities industry, operating an on-line Bahamian broker-dealer, SureTrader, and retaining his "affiliation" with a US broker-dealer, Stock USA Investments, Inc. Therefore, obtaining an injunction from future violations against Gentile – an industry participant – as quickly as possible is of utmost importance for the Commission and its mission of investor protection. As the court in SEC v. Dresser Indus., Inc. recognized, such relief serves the public interest, and weighs heavily in favor of denying a stay to defendants in securities actions. 628 F.2d 1368, 1377 (D.C. Cir. 1980); accord Walsh Secs., 7 F. Supp. 2d at 529.[5]

Gentile's Statute of Limitations Arguments Are Unavailing

Gentile has indicated that he will move to dismiss the Commission's claims on statute of limitations grounds if the matter is to proceed. But because that motion would be meritless and in any event cannot be addressed without full merits discovery, the statute of limitations defense is no bar to proceeding to full discovery.

Gentile maintains that because the Commission's complaint alleges that his conduct occurred more than five years prior to the complaint's filing, its action is barred by 28 U.S.C. § 2462. That statute provides that any action for the "enforcement of any civil fine, penalty or forfeiture . . . shall not be entertained unless commenced within five years from the date when the claim first accrued." But that statute has no application to the Commission's claims here for three reasons:

First, the Commission's Complaint alleges that at least one of Gentile's manipulation and unregistered offering schemes continued into 2010. (Complaint (DE 1) ¶ 68 (alleging that the last

---

[4] The Commission also seeks disgorgement and penalties. In weighing prejudice to the non-movant, courts consider the possibility that a dissipation of assets may occur while the stay is in place. State Farm, 2002 WL 31111766, at *2. Here, as noted in the Bloomberg article, and on his own website, http://www.guygentile.com, Gentile owns and operates a broker-dealer in the Bahamas, SureTrader. As he acknowledges on his website, Gentile "splits his time between Miami and the Bahamas," and travels frequently, including to Mexico, Paris, Cuba, Singapore, and throughout the Caribbean. He also apparently lives a lavish lifestyle, most recently throwing himself a James Bond-themed birthday party for 80 guests in a rented Bahamian villa. https://www.bloomberg.com/news/features/2017-03-23/-bro-i-m-going-rogue-the-wall-street-informant-who-double-crossed-the-fbi. Given his dual residency, and the fact that he operates his business abroad, the Commission fears that any assets available now to satisfy its monetary claims may well not be available should a judgment be entered in the distant future.

[5] From the USAO's decision not to seek a stay of this action, the Court can infer that it has no concern about the possibility of interference with its matters, a concern that might otherwise implicate the public interest in favor of a stay. SEC v. Fishoff, No. 15 Civ. 3725, 2016 WL 1262508, at *4 (D.N.J. March 31, 2016) (granting the USAO's motion to intervene and for a stay and citing the public interest in "a complete, unimpeded investigation into potential criminal activity").

unlawful sale of KYUS stock occurred in November 2010).) Because Gentile signed tolling agreements with the Commission that covered approximately two years of the limitations period, the Commission's Complaint, filed in March 2016, was filed within the limitations period.

Second, any statute of limitations defense would have no effect on the Commission's action because Section 2462 bars only certain remedies and not entire actions. Compare 28 U.S.C § 2462 (setting a time limit for enforcement of fines, penalties and forfeitures) with 28 U.S.C. § 1658(a) (providing limitations periods barring new causes of action for statutes enacted after 1990).

Third, Section 2462 bars punitive remedies only and does not bar the Commission's claim for injunctive relief.[6] See Meeker v. Lehigh Valley R.R., 236 U.S. 412, 423 (1915) ("The words 'penalty or forfeiture' in this section refer to something imposed in a punitive way for an infraction of a public law. . . .") (interpreting predecessor to Section 2462); Gabelli v. SEC, 133 S. Ct. 1216, 1223 (2013). In this Circuit, injunctions against securities violators are remedial, not punitive. As a result, 28 U.S.C. § 2462 does not apply to the Commission's claims for injunctive relief.

In SEC v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980), the Third Circuit held that "the purpose of injunctive relief is not to punish the violator, but to deter him from committing future infractions of the securities laws." Id. (citing SEC v. Koracorp Indus., Inc., 575 F.2d 692, 697 (9th Cir. 1978)). "Essentially, a court makes a prediction of the likelihood of future violations based on an assessment of the totality of the circumstances surrounding the particular defendant and the past violations that were committed." Id. Bonastia set out the factors courts should consider in making that prediction:

> [T]he degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances against future violations, and the likelihood, because of defendant's professional occupation, that future violations might occur.

Id.

Because a properly entered injunction is remedial, it is not a penalty or forfeiture within the meaning of § 2462. For that reason, as one court has recently held in response to a defendant's motion to dismiss on statute of limitations grounds, "the statute of limitations question merges with the substantive requirements for obtaining an injunction under the securities laws – if the substantive claim is viable, then it is, by definition, not subject to a statute of limitations." SEC v. Wyly, 950 F. Supp. 2d 547, 558 (S.D.N.Y. 2013).

---

[6] This term, the Supreme Court is considering whether 28 U.S.C. § 2462 applies to Commission claims for disgorgement. Kokesh v. SEC, No. 16-529. However, that case raises no question of the statute's application to injunctive relief. See Kokesh, 2017 WL 766064, at *1 (Feb. 24, 2017) (Brief of Petitioner, Question Presented ("Does the five-year statute of limitations in 28 U.S.C. §2462 apply to claims for 'disgorgement'?").) And, as noted above, the Commission's complaint in this case alleges conduct within the statute of limitations, to which the statute does not even arguably apply.

Indeed, the only courts to have ruled that an injunction is barred by the statute of limitations have done so on a finding – with the benefit of a full evidentiary record – that injunctive relief would not satisfy the remedial standards set out in Bonastia, and would therefore be a penalty for the purposes of 28 U.S.C. § 2462. So, for example, in SEC v. Jones, 476 F. Supp. 2d 374 (S.D.N.Y. 2007), the court granted summary judgment to defendants on the Commission's claim for injunctive relief because the Commission had failed to establish a "realistic likelihood of recurrence," through evidence of a pattern of violations or continued misconduct. Id. at 383-85.[7] And in Johnson v. SEC, 87 F.3d 484, 489-90 (D.C. Cir. 1996), the court ruled that 28 U.S.C. § 2462 would apply to bar the Commission's suspension of a respondent in an administrative proceeding because it had made no evidentiary finding of the respondent's current incompetence or "the degree of risk she posed to the public." See also SEC v. Bartek, 484 F. App'x 949, 957 (5th Cir. 2012) (affirming grant of summary judgment to defendant on statute of limitations grounds where there was no evidence that injunction addressed "the prevention of future harm in light of the minimal likelihood of similar conduct in the future").[8]

For these reasons, Gentile's motion to dismiss on statute of limitations grounds would, at best, be premature before discovery can produce a full evidentiary record. Without discovery, the Court will have no basis to assess the factors dictated by Bonastia, and can therefore make no finding about whether an injunction will protect the public from future harm, and is therefore remedial, or is punitive. If it is the former, it should be entered and no statute of limitations will apply.

\* \* \*

At the conference on April 12, 2017, the Court advised the parties that they could agree to adjourn dates set in the Court's Scheduling Order (DE 17) but should apprise the Court of any such adjournments. In keeping with that directive, the Commission advises that, at the Defendant's request for more time, the parties have agreed to exchange Rule 26 disclosures on April 28, 2017, rather than April 26, 2017.

Respectfully submitted,

Nancy A. Brown

cc: Hon. Jose L. Linares (via regular mail)
Adam Ford, Esq., (via email)

---

[7] The Court had first denied defendants' motion to dismiss on statute of limitations grounds. SEC v. Jones, No. 05 Civ. 7044 (RCC), 2006 WL 1084276, at *3-6 (S.D.N.Y. April 25, 2006).

[8] Whatever the outcome of Gentile's present request for a resumption of the Stay, the Court should be aware that the Commission has a pending, non-public investigation into possible securities laws violations arising out of Gentile's operation of his Bahamian broker-dealer. Of course, if the staff determines that documents obtained in that investigation are relevant to the allegations in the instant Complaint, it will make them available to Gentile if and when discovery is allowed.