

May 5, 2017

**VIA ECF**

The Honorable Joseph A. Dickson
United States Magistrate Judge for the District of New Jersey
Martin Luther King, Jr. Federal Building & Courthouse
50 Walnut Street #4
Newark, New Jersey 07102

    Re:   *Securities and Exchange Commission v. Gentile*, No. 2:16 Civ. 01619 (JLL) (JAD)

Dear Judge Dickson:

    We represent Defendant Guy Gentile in the above-referenced matter and write in response to the SEC's letter dated April 26, 2017 regarding the question of whether it is in the interest of justice to continue the stay currently in effect. When the parties appeared on April 12, we focused on the then-pending criminal appeal as being the primary driver behind continuing the stay – that appeal has now been withdrawn.

    Nevertheless, this Court should continue the stay for a few more weeks pending *Kokesh v. Securities & Exchange Commission*, *cert. granted*, 137 S. Ct. 810 (2017) because the Supreme Court's decision in that case will significantly shape the legal analysis this Court will have to apply when deciding Mr. Gentile's motion to dismiss the complaint on statute of limitations grounds, which he intends to file shortly after the stay is lifted. The forthcoming *Kokesh* decision confronts the question of whether "disgorgement" is a "penalty" or "forfeiture" subject to a five-year statute of limitations. Because civil penalties, and injunctions based on past conduct, are clearly penalties subject to that limitations period, the *Kokesh* opinion is likely to be case determinative.

    Forcing both parties to brief this critical legal issue immediately prior to a definitive statement by the Supreme Court, only to have both parties then submit new memoranda of law to take into account that decision, makes little sense as a general matter. Given the specifics of this decade-old case, where the alleged conduct has been acknowledged by the Government to have ended in June 2008, at which point – as the Government also has acknowledged – Mr. Gentile walked away from the alleged conduct in question – and where the defendant actively and successfully cooperated for almost four years, and where the SEC readily agreed to a stay in this matter fifteen months ago, all of the traditional factors weigh heavily in favor of continuing the stay for another few weeks to avoid the judicial burden of successive memorandums.

Hon. Joseph A. Dickson
May 5, 2017
Page 2 of 10

Going beyond the question of the stay, the SEC asserts in its letter that Mr. Gentile's motion to dismiss will be meritless. But in order to make this assertion, it makes factual statements that are contrary to the Government's prior assertions to Judge Linares in this case, misstates the applicable law, and questionably suggests that Mr. Gentile may have violated additional securities laws while actively cooperating with the US Attorney's office and the SEC – during a time when he was in near daily contact with FBI agents and in which he or his lawyers updated the SEC on everything he did in the securities industry in real time. If it is true that the SEC has instituted a new investigation into Mr. Gentile after he successfully obtained a dismissal of the indictment in the related criminal case – such an investigation inquiry, given the history between Mr. Gentile and the SEC over the past four years, appears dubious, at best.

Accordingly, continuing the current stay for a few weeks until *Kokesh* is decided strongly supports the interests of both judicial economy and the economy of the parties, and given the passage of a decade since the relevant events, a one to two-month stay cannot possibly prejudice either party, whereas lifting the stay now will certainly prejudice both parties and the Court.

**Background**

The SEC filed this action on March 23, 2016, alleging that Mr. Gentile participated in two "schemes" nearly a decade ago and immediately thereafter agreed that the case should be stayed. Compl. (dkt. #1) ¶ 1. The SEC's lawsuit came on the same day as the U.S. Attorney's Office's indictment, *U.S. v. Gentile*, No. 16 Cr. 155 (JLL), which itself followed a 2012 arrest and almost four years of active cooperation with both the United States Attorney's Office and the SEC in dozens of cases. The indictment, however, was untimely, and was dismissed by Order dated January 30, 2017. *See* Opinion, in *U.S. v. Gentile*, No. 16 Cr. 155 (JLL), Jan. 30, 2017, dkt. 32 ("Mtd. Op."), at 11; Order, in *U.S. v. Gentile*, No. 16 Cr. 155 (JLL), Jan. 30, 2017, dkt. 33 (dismissing indictment).

During the cooperation period, 2012 until his indictment on March 23, 2016, Mr. Gentile worked extensively – almost full time – with both the U.S. Attorney's Office and with the SEC, providing assistance in investigations into some of the country's largest broker-dealers and other individuals whom the Government suspected routinely orchestrated large-scale illegal pump-and-dump and other securities fraud schemes. Over the course of years, Mr. Gentile provided what the Government consistently and, to this day, still describes as extraordinary cooperation, the likes of which no one in either office has previously encountered. Overall, his unparalleled cooperation directly resulted in numerous arrests and indictments of his alleged co-conspirators and other individuals involved in a wide variety of securities fraud, as well as several SEC settlements resulting in multiple-millions of dollars in disgorgement and penalties, injunctions, and lifetime industry bars.

**The Court should continue the stay pending the *Kokesh* decision this (or next) month.**

> ***The Pending Supreme Court decision in Kokesh v. Securities & Exchange Commission may be case determinative and will certainly directly impact the Court's analysis of the forthcoming motion to dismiss on statute of limitations grounds.***

Because the forthcoming *Kokesh* decision will dramatically affect this Court's analysis of Mr. Gentile's upcoming motion to dismiss and shape the scope of this action, a brief stay is strongly in the interest of judicial economy and the economy of the parties; will significantly streamline the proceedings; and will not prejudice the parties.

Mr. Gentile intends to file a motion to dismiss the instant action on statute of limitations grounds shortly after the stay is lifted, and prior to the start of discovery. His motion will detail the manner in which, given the facts of this case, including Mr. Gentile's walking away from all alleged conduct in June 2008, and not being accused of any other violation of the securities laws since that time, all the remedies the SEC seeks in this matter – including the injunction and disgorgement – are "penalties," subject to a five-year statute of limitations, and time-barred.

The SEC's ability to maintain the instant action will almost certainly hinge on the Supreme Court's upcoming decision in *Kokesh v. Securities & Exchange Commission*. In *Kokesh*, the appellate Court had considered whether the relevant statute of limitations, which applies to "the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise," 28 U.S.C. § 2462, applies to "disgorgement." *SEC v. Kokesh*, 834 F.3d 1158 (10th Cir. 2016). The Supreme Court granted petitioner's writ of certiorari on precisely this issue – whether SEC enforcement actions seeking disgorgement are governed by § 2462's five-year statute of limitations. 137 S. Ct. 810 (2017).

But during the Supreme Court's oral argument, even before examining the application of Section 2462, *six* Justices sought to address the threshold question of whether the SEC even possesses statutory authority to seek "disgorgement" as oppose to "forfeiture" covered by § 2462. *See Kokesh Tr.*, Apr. 8, 2017 (attached as Exhibit A), at 7-9, 13, 31, 52. Indeed, during argument Chief Justice Roberts noted:

> One reason we have this problem is that the SEC devised this remedy or relied on this remedy without any support from Congress. If Congress had provided, here's a disgorgement remedy, you would expect them, as they typically do, to say, here's a statute of limitations that goes with it. …
>
> Now, it was a concern – you know, Chief Justice Marshall said it was utterly repugnant to the genius of our laws to have a penalty remedy without limit. … And it -- the concern, it seems to me, is multiplied when it's not only no limitation, but it's something that the Government kind of devised on its own. I mean, I think –doesn't that cause concern?

*Id.* at 31-32. *See also id.* at 52 ("Well, here we don't know, because there's no statute governing it. We're just making it up.") (Gorsuch, J.). The more "liberal" leaning Justices also appeared very skeptical of the SEC's claim that they could seek disgorgement from defendants indefinitely.

But if the Court preserves the SEC's ability to seek the remedy of disgorgement, it appears based on the transcript likely to conclude that Section 2462's five-year statute of limitations applies to disgorgement as it does to forfeiture and other penalties as held by *Gabelli*. Indeed, while guessing which way the Supreme Court will rule can be akin to reading tea leaves, it appears that the Court may decide the issue unanimously – against the SEC. Finally, even if the Supreme Court finds that the SEC possesses authority to seek *remedial* disgorgement indefinitely, Mr. Gentile is still prepared to demonstrate that the disgorgement the SEC seeks in this case is a penalty, and therefore this specific case is beyond the limitations period, even if the SEC could seek disgorgement under different fact patterns than those alleged here.

Of course, we can merely guess as to the Supreme Court's decision, but we can confidently say that *the Court will issue its decision before the term ends next month*. And regardless of the scope of the decision, and whichever way it rules, the *Kokesh* decision will drive Mr. Gentile's arguments on this critical issue – as well as this Court's analysis.

**Standards for a Stay in a Civil Case**

Given the impact the Supreme Court's decision in *Kokesh* will have on Mr. Gentile's upcoming motion and indeed on this case as a whole, continuing the stay for another few weeks makes the most sense. This Court is obviously empowered to continue the stay entered last year and still in effect. Indeed, "the power to stay proceedings is incidental to the power inherent in every Court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "In the exercise of its sound discretion, a Court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976).

In deciding whether a stay is warranted, Courts have considered "factors including (1) the length of the stay, (2) the hardship to the moving party if a stay were not granted, (3) the injury a stay would cause to the non-movant, and (4) judicial economy." *In re Michaels Stores, Inc.*, No. 14 Civ. 07563 (KM) (JBC), 2016 WL 947150, at *4 (D.N.J. Mar. 14, 2016) (granting stay pending the Supreme Court's decision on "precisely the statute at issue" in the stayed proceeding).

*A brief stay is warranted.*

In the present case, the relevant factors strongly favor a brief stay:

(1) *The length of the stay.* Mr. Gentile requests only that this Court continue the stay currently in effect until the Supreme Court decides *Kokesh*. As soon as *Kokesh* is decided, Mr. Gentile is prepared to file his motion to dismiss on statute of limitations grounds within 30 days. *See, e.g.*, *Whittaker v. Cty. of Lawrence*, 437 F. App'x 105, 107 (3d Cir. 2011) (District Court stayed the action pending the Supreme Court's decision in a legally dispositive matter); *Duchene v. Westlake Servs., LLC*, No. 2:13 Civ. 01577, 2015 WL 5947669, at *2 (W.D. Pa. Oct. 13, 2015) (granting stay pending the Supreme Court's forthcoming "decisions [that] have the potential to reshape the class action and statutory standing landscape applicable to this case"). This finite and brief time period is a but a blip, especially given that the underlying conduct allegedly occurred nearly a decade ago, and that the SEC readily agreed a year ago to a stay pending the resolution of the criminal case – which, but for the District Court's decision on the motion to dismiss, might have continued for years to come. *See, e.g.*, *In re Michaels Stores, Inc.*, 2016 WL 947150, at *4 ("the presumed duration of the stay would be a matter of months and there would be minimal prejudice to either side.").

(2) *The hardships.* The second factor should drive the analysis here. This factor inquires as to "the hardship to the moving party if a stay were not granted." *Id.* The "hardship" in this instance – briefing the relevant legal issues without the benefit of the Supreme Court's forthcoming controlling precedent in *Kokesh* on the critical legal point in issue – would be shared equally among the Court, the SEC, and Mr. Gentile. Indeed, it is in the "economy of time and effort for [the Court] itself," *Landis*, 299 U.S. at 254, to benefit from the *Kokesh* decision instead of wading through the parties' briefs, only to have to likely entertain a new round of briefing after the Supreme Court rules.

If, in contrast, the stay is not continued, Mr. Gentile would likely file his motion to dismiss by the beginning of June, the SEC's opposition brief would be due towards the end of June, and the reply brief would be due in July. By July, of course, the decision in *Kokesh* will be issued, at which point the parties would be forced to draft and submit an entirely new round of briefing based on that decision. Forcing both parties to do this – and forcing the Court to read moving papers that may be entirely moot within weeks – makes no sense. *See, e.g.*, *Pennsylvania State Troopers Ass'n v. Pawlowski*, No. 1:09 Civ. 1748, 2011 WL 9114, at *1 (M.D. Pa. Jan. 3, 2011) ("it is of no benefit to either party to incur substantial costs litigating an issue that the Supreme Court may very well determine is not actionable in the course of these proceedings.").

(3) *Injury to the non-movant.* While the SEC justifiably has an interest in moving its caseload forward, it will not be injured by a very brief stay. Indeed, to the extent that the SEC now maintains that it has an interest in protecting the public from Mr. Gentile, (SEC Ltr. at 4), that supposed interest is entirely belied by (i) the fact that it has known about Mr. Gentile's

alleged conduct for somewhere between upwards seven and nine years; (ii) its ready agreement, more than a year ago, to a stay of this action; and (iii) the SEC's detailed knowledge of all of Mr. Gentile's activities and conduct since he became one of its top cooperators in July 2012. In other words, given the significant passage of time, with no adverse effect on the public, the public interest will not be harmed by waiting a month or so until the Supreme Court's decision.

Surprisingly, the SEC makes the claim that Mr. Gentile "admitted his guilt for the conduct alleged in this case." SEC Ltr. at 3. On the contrary, Mr. Gentile pleaded *not-guilty* to the charged conduct that overlaps entirely with the conduct alleged here, and obtained a dismissal of that indictment. Moreover, the SEC is aware of the recordings Mr. Gentile made with his alleged co-conspirator, Adam Gottbetter, a lawyer, in which Gottbetter asserted on different occasions that he understood the securities laws, and that none of Mr. Gentile's conduct or that of Mr. Gottbetter's violated any securities laws in connection with KYUS. While the SEC mentions that it has settled its case against Gottbetter, it fails to mention that during his guilty plea for the "overlapping" conduct, Gottbetter never admitted to any securities laws violations in connection with KYUS.[2]

Second, the SEC drops a footnoted assertion that it "has a pending, non-public investigation" relating to Mr. Gentile's broker-dealer, SEC Ltr. at 6 n.8. This purported investigation appears spurious, at best. Obviously, the SEC knows Mr. Gentile did not engage in any wrongdoing during the time he was cooperating with the SEC, when he was in daily contact with several FBI agents working directly with the SEC's office, or after his indictment when he was under pre-trial supervision. If the SEC honestly believed Mr. Gentile was engaged in ongoing violation of the securities laws, surely it wouldn't have suggested staying this action 14 months ago. Thus, there is no legitimate claim by the SEC that it needs to "obtain[] an injunction … as quickly as possible." *Id.* at 4.[3]

(4) *Judicial economy.* Because the Supreme Court's holding in *Kokesh* will be dispositive on the issues in this case, Mr. Gentile seeks a brief stay that "would streamline the proceedings by simplifying issues and promoting judicial economy." *Duchene*, 2015 WL 5947669, at *4 (granting stay because the result of the forthcoming Supreme Court decision may result in "any judicial resources spent on this matter between now and then would essentially be to no avail"). *See, e.g.*, *Walker v. County of Gloucester*, No. 15 Civ. 7073, 2016 WL 1725942, at *3 (D.N.J. Apr. 28, 2016) ("A stay in the present matter furthers the interests of the Court 'by reducing the risk of duplication of effort.'"); *Perrin v. Papa John's Int'l, Inc.*, No. 4:09 Civ.

---

[2] Mr. Gentile has reason to believe that the FBI was sharing Mr. Gentile's recordings with the SEC. His work on behalf of the SEC in this matter was particularly dangerous, as Mr. Gentile had been told by certain target he received information about ongoing non-public SEC investigations from someone inside that office.

[3] The SEC's suggestion that the stay should be lifted immediately because Mr. Gentile participated in a 40th birthday party for himself – even one with a theme – has no support in the law.

1335, 2015 WL 3823142, at *4 (E.D. Mo. June 19, 2015) (granting stay because of "the efficiency of waiting for the Supreme Court's ruling" before addressing defendants' motions).

Overall, there can be no question that a brief stay until the Supreme Court's decision in June will promote judicial economy, as well as the interests of the parties, will streamline the issues in this case, and will not prejudice the SEC.

**The SEC's other arguments do not militate against briefly continuing the stay.**

*Mr. Gentile's alleged conduct unequivocally ended in June 2008 – as the Government has explicitly told Judge Linares in the "overlapping" criminal case.*

The SEC's comments that Mr. Gentile's alleged misconduct in this case extended into 2010 are stunning given the undisputed record in this case. There has never been the slightest suggestion that Mr. Gentile's alleged involvement in the KYUS scheme extended beyond June 2008. Indeed, during oral argument on Mr. Gentile's motion to dismiss the related indictment, (December 21, 2016), Judge Linares went out of his way to protect the appellate record and ensure he understood the very last date that the Government could possibly allege Mr. Gentile's conduct occurred:

> THE COURT: Okay. And there is no argument here of a continuing offense or any of that. I just want the record to be clear in case of appellate review. There's no argument, this is not a continuing offense of any kind that would save the statute. This is two specific acts as set forth in your indictment, right?
>
> MR. GRIPPO: It's an ongoing scheme and a conspiracy, as we allege in the indictment, your Honor, based on two separate --
>
> THE COURT: Two separate --
>
> MR. GRIPPO: -- it was called pump-and-dump schemes, but it's one conspiracy –
>
> THE COURT: Right.
>
> MR. GRIPPO: -- which we allege ended in June of 2008. So unless the Government comes --
>
> THE COURT: That is 2008, okay.
>
> MR. GRIPPO: June 2008, your Honor.
>
> THE COURT: All right.
>
> MR. GRIPPO: -- so unless we come into the possession of new evidence, which we don't

anticipate, given the age of the case, your Honor, but as it's indicted and charged now, it is a conspiracy that ended in June of 2008.[4]

A representative of the SEC currently involved in this case was sitting in the Courtroom during this exchange. The same SEC staff attorneys involved in this case had been working closely with AUSA Grippo for the past four years. Obviously, if there were any credible evidence that Mr. Gentile's conduct extended beyond June 2008, Mr. Grippo certainly would have so notified the Court during this exchange, or prior to Judge Linares' decision dismissing the indictment. It is inconceivable that the SEC would have been aware of ongoing criminal conduct related to the KYUS scheme and yet failed to notify the AUSA in connection with that office's opposition to Mr. Gentile's motion to dismiss. Indeed, as the SEC itself acknowledged, "There is no dispute that the issues in this case and the dismissed indictment in the Criminal Case overlap." *See* SEC Ltr at 2 fn. 2. The SEC's complaint mirrored the federal criminal charges stemming from his 2012 arrest when Mr. Gentile was charged with the RVNG and KYUS allegations. Identical to the SEC allegations, the conduct detailed in the criminal charges "allegedly occurred beginning in April of 2007 and ended approximately in June 2008." *See* Opinion, in *U.S. v. Gentile*, No. 16 Cr. 155 (JLL), Jan. 30, 2017, dkt. 32 ("Mtd. Op."). There is simply no good faith basis for the SEC to assert that Mr. Gentile engaged in any conduct beyond June 2008.[5]

### *An injunction in this case would be punitive.*

Finally, the SEC asserts that, even if *Kokesh* leaves the SEC with no other remedy, it might nonetheless seek an injunction. Any claim, however, that such an injunction would not be a penalty – and thus not subject to the same five-year statute of limitations – flies in the face of Mr. Gentile's years of cooperation and exemplary conduct, and ten years of conduct that is beyond reproach.

The caselaw dictates that a *remedial* injunction, *i.e.*, one that can be imposed based on facts older than five years, must be "based on a determination of whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct." *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980). In contrast, an injunction becomes punitive when it

---

[4] Gentile Oral Argument Tr. Pg. 42. (attached hereto).

[5] The SEC claims that *some* conduct continued into 2010. The SEC, however, neglects to mention that the alleged conduct was *someone else's*. Indeed, the cited paragraph of the complaint alleges that attorney Adam Gottbetter sold KYUS stock in 2010. Compl. (dkt. #1) ¶ 68. But this allegation is *wholly irrelevant to the alleged liability of Mr. Gentile*. As the Government readily conceded in this case any of Mr. Gentile's alleged conduct involving KYUS concluded in June 2008. Even if Mr. Gentile's conduct extended to 2010, as the SEC now suggests, the tolling agreements signed in this case are invalid for similar reasons as those found by Judge Linares in dismissing the criminal case, and therefore this complaint is still time-barred – on the basis of seeking only penalties.

"goes beyond remedying the damage caused to the harmed parties by the defendant's action." *Johnson v. S.E.C.*, 87 F.3d 484, 488 (D.C. Cir. 1996). Accordingly, Courts routinely dismiss SEC enforcement actions seeking an injunction as time barred under Section 2462 where the proposed injunction "goes *beyond* remedying the damage caused to the harmed parties by the defendant's action." *Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 7 (D.C. Cir. 2000) (emphasis original). Indeed, an injunction "is a penalty even if only one of its various objectives is to punish wrongful conduct; that is, if it 'serv[es] *in part* to punish.'" *Id. (quoting Austin v. United States*, 509 U.S. 602, 610 (1993)) (emphasis original). The issue even arose during the recent *Kokesh* oral argument, and Chief Justice Roberts all but took for granted that, without evidence of a continuing violation, an injunction would of course be a penalty. *See also Kokesh Tr.*, at 56 ("if it's beyond the statutory limitation, I suspect that an injunction would be kind of irrelevant unless the conduct has continued that long.") (Roberts, C.J.).

      Here, it has been nearly a decade since Gentile's alleged conduct, during which time he has not engaged in any questionable conduct and in fact extraordinarily assisted the Government in pursuing and successfully prosecuting criminal and civil violations of securities laws. The likelihood that Mr. Gentile would engage in future securities violations is not merely remote, but borders on the absurd. Thus, there can be no question that the injunctions sought here are punitive and in no way remedial. Indeed, they would serve no identifiable remedial function while seriously undermining Mr. Gentile's ability to work in his chosen field and to continue to operate his legitimate, lawful companies as he has been doing under the watchful eye of the SEC and DOJ for the past four years. As will be more fully detailed in his motion to dismiss, the penal nature of an SEC injunction is indisputable given the actual ways he has already been penalized by banks, financial institutions, and other service providers since the SEC issued an (erroneous) public statement asserting that the SEC had imposed an injunction against Mr. Gentile. Any injunction in this case is almost certain to be found punitive and therefore this entire case hinges on the question of whether disgorgement has a five-year limitation period. We will know that answer before the Fourth of July.

      Overall no prejudice will be suffered by the SEC by a brief stay before briefing the threshold question of whether the SEC has timely brought this case.

\*     \*     \*

In sum, in the interests of both judicial economy and the economy of the parties, we respectfully request that the Court temporarily maintain the stay in this action pending the Supreme Court's forthcoming decision in *Kokesh*. Thank you for Your Honor's consideration of this matter.

                        Respectfully submitted,

                        Adam C. Ford

cc:    Hon. Jose L. Linares (via FedEx)
        Simona K. Suh, Esq. (via ECF)
        Nancy A. Brown, Esq. (via ECF)

(Enclosure: *Kokesh* Supreme Court transcript)