

May 10, 2017

**VIA ECF**

The Honorable Joseph A. Dickson
United States Magistrate Judge for the District of New Jersey
Martin Luther King, Jr. Federal Building & Courthouse
50 Walnut Street #4
Newark, New Jersey 07102

      Re:    *Securities and Exchange Commission v. Gentile*, No. 2:16 Civ. 01619 (JLL) (JAD)

Dear Judge Dickson:

      We represent Defendant Guy Gentile in the above-referenced matter and write to respond briefly to the SEC's letter dated yesterday, May 9, 2017 (dkt. #21). As detailed below, the SEC's letter serves to highlight why continuing the stay in this matter until *Kokesh* is decided serves the interest of judicial economy. (The SEC frames the issue as being a request by us to "re-impose a stay" that was already lifted, apparently ignoring Your Honor's April 12 Order which continues the stay currently in effect).

      As an initial matter, it is unclear why the SEC is writing now regarding the scheduling of interrogatories. When the SEC approached us on this issue yesterday morning, we made it clear that we did not understand the purpose of discussing the timing of interrogatories since the case was stayed, and once the stay was lifted we intended to file a motion to dismiss. Accordingly a discussion of scheduling interrogatories was premature at best. That said, we did agree that if the motion to dismiss was not granted, then sixty days for interrogatories was acceptable, although we did not know that this would be the topic of correspondence with Your Honor.

      Next, the SEC claims that there were two errors in Mr. Gentile's May 5 letter. But the SEC's explanations themselves are not accurate and do not clarify the record. In the May 5 letter, Mr. Gentile had asserted that the SEC published information that it had already obtained an injunction against Mr. Gentile. Mr. Gentile's information stemmed from a publically disseminated "MIS Alert" which was sent to numerous banks and financial institutions. We understand that MIS Alerts are based on reviews of government databases to which Mr. Gentile does not have access and deducted that the information came from a government database. While the SEC has since informed us that it did not issue any statement that the MIS Alert system would have relied on, Mr. Gentile has no evidence of this. Accordingly, Mr. Gentile never conceded that the MIS Alert was caused by a reporting error, as that has not been established.

      Regardless of what led to this error, the SEC ignores the thrust of Mr. Gentile's argument regarding the effect of the MIS Alert publicizing that he had already been enjoined from violating the securities laws: the devastating personal and business penalties he has suffered as a direct result. Immediately after the MIS Alert was distributed, dozens of banks and financial institutions notified him that they were closing his personal and business accounts and refused to do future business with

Hon. Joseph A. Dickson
May 10, 2017
Page 2 of 3

him, and dozens more financial institutions have declined to open new accounts on his behalf. To the extent that the SEC wants to argue that an injunction in this case will not be a penalty, the effects he has suffered as a result of this erroneous MIS Alert – whether it is based on the SEC's own statement or other error – demonstrates, along with all the other evidence, the punative nature of such a remedy.

Finally, the SEC claims that it "is aware of no new investigation that has been opened into Mr. Gentile's conduct after the dismissal of the criminal indictment against him" and then clarifies that the sole investigation the SEC referred to in its April 26 letter was a pre-existing investigation into Mr. Gentile's Bahamian broker-dealer. While it is true that Mr. Gentile had been notified of a pre-existing investigation into the Bahamian broker-dealer, he could not have known that this investigation was the basis for the SEC's newfound position that it suddenly needs to "protect the public" from Mr. Gentile by way of an injunction. On the contrary, because the SEC and DOJ had previously informed Mr. Gentile that they did not believe this investigation reflected that he had committed any securities violations, and because the SEC did not reference any specific investigation, Mr. Gentile could only assume that the SEC's argument was based on a new investigation.

Indeed, Mr. Gentile began cooperating with the DOJ and SEC in July 2012, and his Bahamian broker-dealer has played a role in numerous investigations that have benefited both the DOJ and SEC. The FBI agents assigned to his case – who frequently traveled and held numerous meetings there – instructed him at the beginning of their relationship that he must continue to operate it in the same manner as usual during the pendency of his cooperation. Mr. Gentile, of course, was told that he had immunity for all conduct engaged in at the direct instruction of the government, and was also told that his ability to continue running his broker-dealer in the ordinary course was part of the benefit of his cooperation.

Both the DOJ and SEC have been fully aware of all the activities occurring at this broker-dealer, and how it has been conducting business since 2012. This included having access to all relevant documents regarding a FINRA investigation into the Bahamian broker-dealer, as it related to a question of whether it had violated any US securities laws by impermissibly promoting itself to American citizens by way of its website. After Mr. Gentile provided a Wells Submission to FINRA on this question, demonstrating compliance with all applicable laws, FINRA informed Mr. Gentile that it was closing its inquiry with no further action. The government was notified of this event – as it was notified of every material event in Mr. Gentile's life for the past four years.

Following FINRA's decision to close the inquiry, which the SEC was specifically informed of, Mr. Gentile was informed that the NY SEC office did not have any concerns regarding the Bahamian broker-dealer or have any reason to believe it was violating any laws. Several months later, however, Mr. Gentile was informed that another SEC office had previously opened up an inquiry into the same question that was looked into by FINRA. This was the topic of numerous conversations between Mr. Gentile's counsel and the SEC and DOJ. At no time, did either the SEC or DOJ inform Mr. Gentile that they had any concern about this other investigation, and they did not believe it reflected that Mr. Gentile had violated his cooperation agreements with either agency, both of which obligated him to not violate any laws during its pendency. Indeed, up until the indictment was dismissed, including at oral argument on his motion to dismiss, the government

affirmed that Mr. Gentile did everything asked of him during his cooperation period between 2012 through 2016 and was always completely truthful and forthcoming on all issues. Obviously, if the government believed that he was violating the securities laws during the time of his cooperation – as the SEC now appears to suggest – this would have been raised. It never was.

      In its recent letter, the SEC tries to revise history in seeking to justify its request to lift the stay in advance of the *Kokesh* decision. But the local offices of the SEC and DOJ enjoyed years of Mr. Gentile's cooperation and exemplary work, without raising any question whatsoever as to how he was running his Bahamian broker-dealer. Then, more than a year ago, the SEC readily agreed to the stay of this action, again without asserting any so-called need to "protect the public" at that time based on an this investigation that it was well aware of.

      Overall, no forward-looking injunction can be supported by the SEC highlighting this other investigation into conduct by the Bahamian broker-dealer regarding an issue that the SEC has long been aware of without raising any concerns to Mr. Gentile. This conclusion is more compelling given that Mr. Gentile and the broker-dealer were under the direct supervision of the DOJ and New York SEC during 2012 through 2016. During that time, Mr. Gentile was explicitly instructed by the government to continue operating the broker-dealer in the ordinary course of business to assist with the various matters he was cooperating on. The SEC's reliance therefore, on this investigation in support of its argument in favor of lifting the stay now, is misplaced.

      For the above reasons, as well as those outlined in our May 5 letter which the SEC has not opposed, we respectfully request that the Court temporarily maintain the stay in this action pending the Supreme Court's forthcoming decision in *Kokesh*, and thereafter set a briefing schedule for Mr. Gentile's motion to dismiss on statute of limitations grounds. Thank you for Your Honor's consideration of these matters.

                                                            Respectfully submitted,

                                                            Adam C. Ford

cc:      Honorable Jose Linares (Via Federal Express)
           Simona K. Suh, Esq. (via ECF)
           Nancy A. Brown, Esq. (via ECF)