**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | No. 2:16 Civ. 01619 (JLL)(JAD) |
| GUY GENTILE, | |
| Defendant. | |

### Memorandum of Law in Support of Defendant Guy Gentile's Motion to Dismiss

FORD O'BRIEN LLP
85 Broad St., 28th Floor
New York, New York 10004
212.858.0040

*Attorneys for Defendant Guy Gentile*

<u>**TABLE OF CONTENTS**</u>

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................. 6

ARGUMENT ..................................................................................................... 10

    I.     Legal Standard on Motion to Dismiss ................................................ 10

    II.    The Complaint Must Be Dismissed Because All Claims Are Barred by the Statute of Limitations Under Section 2462 ........................................... 12

          A.    Injunctions that seek to address past harm by punishing defendants are penalties under Section 2462 ............................... 12

          B.    The requested injunctions here seek at the very least "in part" to punish Gentile for alleged past conduct and are therefore penalties under Section 2462 ...................................... 14

          C.    Enjoining Gentile from participating in an area of the securities industry is punitive, not equitable……………………….…………… 22

    III.   The Tolling Agreements Are Invalid Because They Were Obtained by Either Fraud or Making Material Misrepresentations to Gentile in Violation of His Due Process Rights ............................................................................... 22

    IV.   The SEC Cannot Obtain Injunctive Relief Because it Has Failed to State a Claim and the Relief Sought Lacks Requisite Specificity ............................... 26

          A.    The Complaint fails to allege any facts entitling the SEC to injunctive relief ............................................................................. 26

          B.    The injunctions sought lack requisite specificity under FRCP 65 ....................................................................................... 28

CONCLUSION…………………………………………………………………..30

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Am. Bus. Ass'n v. Slater,*
    231 F.3d 1 (D.C. Cir. 2000) ................................................................ 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................... 28

*Austin v. United States,*
    509 U.S. 602 (1993) ...................................................................... 14

*Daniels v. Woodbury County, Iowa,*
    742 F.2d 1128 (8th Cir. 1984) ......................................................... 29

*Gabelli v. SEC,*
    568 U.S. 442 (2013) ............................................................... 2, 12, 14

*Handelman v. State of New Jersey,*
    2016 WL 3691976 (D.N.J. July 12, 2016) ........................................... 11

*Hines v. Nichols,*
    2016 WL 3460220 (M.D. Ga. May 18, 2016) ...................................... 28

*Huntington* v. *Attrill,*
    146 U. S. 657 (1892) ...................................................................... 13

*Proffitt v. F.D.I.C.,*
    200 F.3d 855 (D.C. Cir. 2000) ................................................... 16, 22

*In re Reserve Fund Secs. & Derivative Litig.,*
    2013 WL 5432334 (S.D.N.Y. Sept. 30, 2013) .................................... 27

*Int'l Union, United Auto. Aerospace & Agr. Implement Workers v. Amerace Corp.,*

   740 F. Supp. 1072 (D.N.J. 1990) ........................................................... 25

*Jama Corp. v. Gupta,*

   2008 WL 627410 (M.D. Pa. Mar. 4, 2008) ............................................. 25

*Kokesh v. SEC,*

   2017 WL 2407471 ................................................................... 2, 14, 15

*Kowalsky v. Deutsche Bank National Trust Co.,*

   2015 WL 5770523 (D.N.J. Sept. 30, 2015) ........................................... 11

*Kunkle v. Naugle,*

   2015 WL 7756197 (E.D. Pa. Dec. 2, 2015) ........................................... 25

*Legacy Gen. Partner, LLC,*

   2017 WL 417093 (M.D. Fla. Jan 31, 2017) ........................................... 27

*Louis W. Epstein Family P'ship v. Kmart Corp.,*

   13 F.3d 762 (3d Cir. 1994) ................................................................... 28

*McCormick v. Kline,*

   670 F. App'x 764 (3d Cir. 2016) ......................................................... 25

*Meeker v. Lehigh Valley R. Co.,*

   236 U.S. 412 (1915) ........................................................................... 15

*Payne v. Travenol Laboratories,*

   565 F.2d 895 (5th Cir. 1978) ............................................................... 28

*Rockefeller Cir. Props. Inc. Sec. Litig,*

   311 F.3d 198 (3d Cir. 2002) ............................................................... 10

*S.E.C. v. Secure Capital Funding Corp.,*

2013 WL 3286234 (D.N.J. June 28, 2013) .............................................................. 29

*S.E.C. v. Tourre,*

4 F. Supp. 3d 579 (S.D.N.Y. 2014) ....................................................................... 29

*Schmidt v. Skolas,*

770 F.3d 241 (3d Cir. 2014) .......................................................................... 13, 14

*SEC v. Bartek,*

484 F. Appx. 949 (5th Cir. 2012) ......................................................................... 18

*SEC v. Berry,*

580 F. Supp. 2d 911 (N.D. Cal. 2008) .................................................................. 18

*SEC v. Bonastia,*

614 F.2d 908 (3d Cir. 1980) ............................................................................... 16

*SEC v. Graham,*

823 F.3d 1357 (11th Cir. 2016) ........................................................................... 28

*SEC v. Jones,*

476 F. Supp. 2d 374 (S.D.N.Y. 2007) ............................................................. 19, 20

*SEC v. Lucent Techs., Inc.,*

363 F. Supp. 2d 708 (D.N.J. 2005) ................................................................. 12, 13

*SEC v. Microtune, Inc.,*

783 F. Supp. 2d 867 (N.D. Tex. 2011) ............................................................ 23, 24

*SEC v. Quinlan,*

2008 WL 4852904 (E.D. Mich. Nov. 7, 2008) ....................................................... 18

*SEC v. Sky Way Global, LLC,*

    710 F. Supp. 2d 1274 (M.D. Fla. 2010) ................................................. 28

*SEC v. Smyth,*

    420 F.3d 1225 (11th Cir. 2005) ............................................................ 28

*SEC v. Torr,*

    87 F.2d 446 (2d Cir. 1937) .................................................................. 26

*SEC v. Wyly,*

    950 F. Supp. 2d 547 (S.D.N.Y. 2013) .................................................... 18

*Smith v. Township of Warren,*

    2016 WL 7409952 (D.N.J. Dec. 22, 2016) .............................................. 11

*United States v. Gentile,*

    2017 WL 424907 (D.N.J. Jan. 30, 2017) ................................................. 26

*United States v. Levine,*

    658 F.2d 113 (3d Cir. 1981) ................................................................ 23

<u>Statutes</u>

15 U.S.C. § 77t(b) ................................................................................. 26

15 U.S.C. § 78u(d)(1) ............................................................................ 26

28 U.S.C. § 2462 ............................................................................. Passim

Guy Gentile respectfully submits this memorandum of law in support of his motion to dismiss the Securities and Exchange Commission's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

The SEC filed the present lawsuit seeking to punish Gentile for allegedly violating specific public laws back in 2008. The Complaint seeks $17 million in disgorgement, even though it fails to allege Gentile actually received even a fraction of this amount; it seeks civil penalties on top of the disgorgement and pre-judgment interest; and it seeks injunctions as a way to further punish and stigmatize Gentile, branding him with a scarlet letter on his record so as to dissuade banks, investment advisors, and others from doing any business with him. On top of all that, it seeks to bar him from an entire area of the securities business, enjoining him from this particular industry even though he has not been involved in it for almost a decade and has no interest in entering it again. And since it purports to seek these penalties to deter both Gentile and others from engaging in similar conduct, there can be no dispute that all the sanctions sought in the Complaint are primarily intended to punish Gentile – to an extent beyond that permitted by law. The Complaint does not even pretend to simply return things to the *status quo ante* as an equitable matter, enjoin him from specific likely future conduct, or compensate victims of his alleged wrongdoing.

Claims governed by § 2462, however, *seeking to punish* a defendant are now indisputably time barred when the charged conduct is greater than five years old. Indeed, the Supreme Court's recent decision in *Kokesh v. SEC*, 137 S. Ct. 1635, 2017 WL 2407417 (June 5, 2017), leaves no doubt that the Commission's case against Gentile is time barred.  While *Kokesh* specifically focused on whether the Commission could seek disgorgement for any conduct

beyond five years – which it cannot – the decision built upon the Court's prior ruling in *Gabelli v. SEC,* 568 U.S. 442 (2013), which precluded the Commission from seeking *civil penalties* after five years. Plainly, the SEC is precluded from obtaining disgorgement or civil penalties for the alleged conduct involving stock tickers RVNG and KYUS from 2007-2008. Notwithstanding this inevitable result, the Commission has suggested that these rulings still leave open the question of whether the Commission can seek an injunction or industry bar for conduct more than five years old – and intends to move forward just to seek these penalties based on the alleged past conduct. The framework and analysis set forth in *Kokesh*, however, entirely forecloses the Commission from seeking all penalties based on eight and nine-year-old conduct, including the "obey the law" and industry bar injunctions the Commission continues to seek here.

Writing on behalf of a unanimous court, Justice Sotomayor set forth a straightforward two-part test, explaining that a "penalty" in the context of an SEC enforcement action is any sanction imposed (1) as a consequence of violating a public law and (2) for punitive purposes. *Kokesh*, 137 S.Ct. at 1643. Plainly, the "obey the law" injunctions and penny-stock bar sought here based on isolated conduct from nearly a decade ago would be sanctions imposed for violating a public law and for punitive purposes – as retribution and as a deterrent (both specifically and generally) – not to compensate anyone or serve any other identifiable remedial or equitable purpose. *Id*. ("…a pecuniary sanction operates as a penalty if it is sought for the purpose of punishment, and to deter others from offending in a like manner…").

While the SEC has long enjoyed the ability to seek and obtain *equitable remedies* without being restrained by any limitations period, the Supreme Court and lower courts have now clearly defined exactly where equity ends and a penalty begins. *Kokesh* clearly delineates the outer time-

limits of the Commission's ability to bring an action against Gentile seeking penalties, whether in the form of fines, disgorgement, "obey the law" injunctions, or a penny-stock bar where the face of the Complaint alleges a "scheme" almost a decade old.  This result is even more clear considering that Gentile has cooperated with the SEC and DOJ in numerous joint investigations for almost three years, much of that time without any operative tolling agreement or suggestion that Gentile posed a threat to the public. Indeed, during those four years, the SEC used Gentile as a cooperator to assist it in bringing dozens of successful cases, during which time the Commission never suggested that Gentile was a threat to the public who must be enjoined immediately. This fact alone precludes any argument by the SEC that the demand for any injunction now is 100% equitable and only to protect the public from Gentile's imminent violation of the securities laws.

This case is ripe for disposition on a motion to dismiss because the Commission has pled itself out of court based on the allegations in the Complaint.  On its face, the Complaint alleges two schemes that violated securities laws, one that ended in 2007 and one that ended no later than June 30, 2008. These end-dates of Gentile's alleged involvement were affirmed by the Assistant United States Attorney, who jointly worked with the SEC on the RVNG and KYUS investigations, and filed and argued the related criminal case.  These end-dates were also affirmed by the Commission itself in two separate complaints filed against alleged co-conspirators Mike Taxon and Itamar Cohen.  And these end dates were reaffirmed in the complaint filed against Adam Gottbetter and his partners. Accordingly, Judge Linares has already held that "there is no dispute that … [Gentile's] alleged criminal activity ended as of June 2008." *United States v. Gentile,* – F. Supp. 3d –, 2017 WL 424907 (D.N.J. Jan. 30, 2017).

Gentile signed four agreements with six month tolling periods and one with a nineteen day tolling period, which even if valid – they are not– would toll the statute of limitations for approximately two years and 19 days. Even after excising this time from the calculation, two years and 19 days of tolling from June 30, 2008 required the Commission to file any claim seeking to punish Gentile related to KYUS by August 10, 2015. The Commission filed its Complaint against Gentile seven months later, on March 23, 2016. Accordingly, even if all five tolling agreements are valid, since all of the claims on the face of the Complaint seek penalties that contain five-year limitations periods, they are time barred by § 2462, and as such, this Complaint must be dismissed in its entirety as untimely.

The agreements here, however, like those found invalid in the related criminal case, are invalid for similar reasons: Gentile entered into them unknowingly and apparently after having been intentionally misled by the SEC as to the nature of the agreements.  Gentile executed the tolling agreements with the SEC – as he did with the DOJ – based on an understanding that the conduct he was being investigated for involving KYUS ended at the end of the scheme in June 2008.  Gentile also signed the agreements under the understanding that he was signing them as part of a cooperation agreement with the SEC, as the SEC told him.  To the extent the SEC asserts that it is charging him under an aiding and abetting theory involving conduct engaged in by Gottbetter and his partner in 2009 and 2010, this argument contradicts Gentile's understanding based on the government's representations prior to signing the agreements and renders them signed unknowingly. Had Gentile been informed by government attorneys that they believed his misconduct involving KYUS shares included trades placed by Gottbetter up through 2010, he would not have signed the tolling agreements, as that would have potentially extended his period of cooperation by an additional two years, a fact that Gentile expressed to the

government he was not willing to do. As Judge Linares already found in the related criminal case, it was important to Gentile to know the exact amount of time that he was agreeing to toll with respect to the investigation regarding RVNG and KYUS, so as to not be trapped by the government into a longer period of cooperation than he wanted to provide. Accordingly, if the SEC takes the new position that he can be charged for someone else's trades that took place in 2010, then Gentile did not knowingly and intelligently enter into any tolling agreement with the SEC. And, as Judge Linares already ruled in the related criminal case, all tolling agreements based on this misunderstanding should be found invalid. Given the past four years during which the cooperation agreement between Gentile and the DOJ and SEC was consistently referenced and Gentile provided extra-ordinary cooperation that has repeatedly been acknowledged by the government in court filings, the SEC's post-complaint assertions to Gentile that it never entered into a cooperation agreement with him in 2012, would support a finding that the tolling agreements were procured by fraud, or at the very least a serious misunderstanding by Gentile, and the agreements can also be found void on that basis as well.

The Complaint should also be dismissed because the SEC has not alleged the elements necessary to obtain injunctive relief (the only remaining possible sanction given *Kokesh* and *Gabelli*). Specifically, the SEC has failed to, and cannot, allege that Gentile is presently engaged in or about to engage in any acts or practices which constitute or will constitute a violation of any rule or regulation, which it is required to do before it may enjoin an individual from such acts or practices. Indeed, the Complaint was filed more than fifteen months ago, at which time the SEC declined to seek an injunction, so surely Gentile was not and is not imminently about to engage in any prohibited conduct.

Finally, the Complaint can also be dismissed for the SEC's failure to plead with requisite

specificity under FRCP 65 exactly what conduct of Gentile's the SEC seeks to enjoin beyond the broad mandate to "obey the law." The Third Circuit precludes the generic "obey the law" injunctions that the Commission seeks here.

## STATEMENT OF FACTS

On March 23, 2016, the SEC filed a complaint against Gentile alleging involvement in two separate schemes that were "perpetrated in 2007" and "perpetrated in 2008" (Cmplt. ¶ 1) when George W. Bush was still president, and several months before Lehman Brothers failed. In its Complaint, the SEC does not allege that Gentile engaged in any conduct that violated any securities laws after June 2008, nor could it. The SEC presented identical allegations in the Commission's complaint against Mike Taxon and Itamar Cohen, which alleged "the [RVNG] scheme was perpetrated in 2007" and the KYUS scheme "was perpetrated in 2007-2008." (Ford Dec. ¶ 4, Ex.1)[1] The SEC has also notified this court in its prior filings that Gentile "had retired shortly after the KYUS scheme," which it described as ending "in 2008." (*Id.* ¶ 5, Ex. 2, ¶¶ 4, 39, 57)

As this court is aware from the related criminal case *United States v. Gentile*, and may take judicial notice of as a matter of public record, the allegations against Gentile involving KYUS ended no later than June 30, 2008. (*Id.* ¶¶ 6, 7, Exs. 3, 4) The Government has acknowledged this as the last date it had evidence that Gentile allegedly engaged in any unlawful conduct. (*Id.* ¶ 8, Ex. 5, pg. 42) The AUSA confirmed to this court that its office, which conducted the investigation into RVNG and KYUS jointly with the SEC, is aware of no evidence

---

[1] All references to "Ford Dec." refer to the Declaration of Adam Ford dated June 30, 2017 submitted in support of Gentile's Motion to Dismiss, and the exhibits attached thereto.

that Gentile engaged in any misconduct after June 30, 2008 related to KYUS (or any other matter). (*Id.*)

In paragraph 68, the Complaint asserts that different individuals, Gottbetter and his partner, placed trades in KYUS until November 2009 and November 2010. (Cmplt. ¶ 68) It also alleges that Gentile "had access to and ability to execute trades in at least one of those accounts, and he assisted in the execution of some of these subsequent sales of KYUS stock." (*Id.*) While the Complaint fails to satisfy basic pleading requirements under 9(b) and is not entirely clear, the reference to "subsequent sales of KYUS stock" can only be intended to refer to the sales of stock that occurred "subsequent" to the alleged fraudulent promotion up until June 30, 2008. As the government has acknowledged on numerous occasions in this case, and related cases, and as Judge Linares has already ruled, there is no dispute that Gentile did not engage in any conduct that allegedly violated any laws at anytime after June 2008.

Indeed, during oral argument on Gentile's motion to dismiss the related indictment (December 21, 2016), Judge Linares went out of his way to protect the appellate record and ensure he understood the very last date that the government could possibly allege Gentile's conduct occurred:

> THE COURT:  Okay. And there is no argument here of a continuing offense or any of that. I just want the record to be clear in case of appellate review.  There's no argument, this is not a continuing offense of any kind that would save the statute.  This is two specific acts as set forth in your indictment, right?

> MR. GRIPPO: It's an ongoing scheme and a conspiracy, as we allege in the indictment, your Honor, based on two separate --

> THE COURT: Two separate --

> MR. GRIPPO: -- it was called pump-and-dump schemes, but it's one conspiracy –

> THE COURT: Right.

7

MR. GRIPPO: -- which we allege ended in June of 2008. So, unless the Government comes --

THE COURT: That is 2008, okay.

MR. GRIPPO: June 2008, your Honor.

THE COURT: All right.

MR. GRIPPO: -- so unless we come into the possession of new evidence, which we don't anticipate, given the age of the case, your Honor, but as it's indicted and charged now, it is a conspiracy that ended in June of 2008. (Ford Dec. ¶ 8, Ex. 5, pg. 42)

A representative of the SEC currently involved in this case was sitting in the courtroom during this exchange.  (Ford Dec. ¶ 9) The same SEC staff attorneys involved in this case had been working closely with AUSA Grippo for the prior four years before that exchange.  (*Id*.) Obviously, if there were any credible evidence that Gentile's wrongful conduct extended beyond June 2008, or that the Commission's Complaint (which was filed nine months before this exchange with the court), was intended to assert a violation that occurred in 2010, AUSA Grippo, who had jointly investigated the matter, would have been aware of these facts and he obviously would have so notified the court during this exchange.  The Commission staff attorneys, of course, had months after this assertion to correct it before Judge Linares relied upon the government's representation that the conduct ended June 30, 2008 in his decision dismissing the indictment. They did not. It is inconceivable that the DOJ and SEC would have been aware of ongoing criminal conduct related to the KYUS scheme and yet failed to notify Judge Linares in opposing Gentile's motion to dismiss the criminal indictment.

Based on the government's representations, Judge Linares concluded, "There is no dispute that … [Gentile's] alleged criminal activity had ended as of June 2008." (*Id*.)  As the SEC itself acknowledged, "There is no dispute that the issues in this case and the dismissed

indictment in the Criminal Case overlap." (Ford Dec. ¶ 11, Ex. 7)[2]  Accordingly, the SEC cannot

now stand before this court and argue that Gentile's illegal conduct extended beyond this date on

the undisputed record.

The Commission has previously taken the position before this court that the conduct of

Gottbetter and his partners in 2009 and 2010 involved *different conduct* unrelated to the alleged

KYUS scheme that it has asserted in several court filings ended in 2008. (Ford Dec. ¶ 5, Ex. 2)

In its complaint against Gottbetter and his partners, the SEC asserted (and Gottbetter

acknowledged when he pleaded guilty and settled) that after June 30, 2008, (when Gentile's

alleged involvement in KYUS ended), Gottbetter and his partner *inflated* the value of the KYUS

stock, and that those two men – without Gentile's knowledge or involvement – continued to sell

it.  According to the SEC's complaint against Gottbetter (and the government's prior

representations to Judge Linares) Gentile had nothing to do with this. (*Id.* ¶¶ 39, 40)

Finally, no post-June 2008 – or indeed any of Gottbetter's pre-June 2008 conduct – was

sufficient for the Commission to allege that Gottbetter engaged in any 10b-5 violation; rather the

SEC only alleged he aided and abetted a 10b-5(b) violation with respect to KYUS. (*Id.* ¶¶ 86, 87)

The Complaint here, therefore, cannot be interpreted to allege that Gentile ever aided and abetted

Gottbetter or his partner in 2009 and 2010 in any 10b-5 violations related to KYUS. That is a

---

[2] The nature of a pump and dump scheme in itself dictates that the scheme must end after the shares are "dumped" and cannot continue for another two years, because after the shares are "dumped" the share price falls below the price at the start of the scheme – after that point there is no rational connection to the alleged material misstatements or artifice to defraud. Given that the stock price of KYUS was significantly lower in 2009 and 2010 than the original purchase price, it is not credible to assert such trades are related to a pump and dump scheme. (Ford Dec. ¶ 12, Ex. 8)

*legal impossibility* as one cannot aid and abet another aider and abettor, but only someone who engaged in the underlying violation.[3]

## ARGUMENT

### I.    Legal Standard on Motion to Dismiss

On a motion to dismiss pursuant to FRCP 12(b)(6), a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 713 (D.N.J. 2005). That being said, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *S.E.C. v. Kearns*, 691 F. Supp. 2d 601, 608 (D.N.J. 2010) (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)); *accord S.E.C. v. Dubovoy*, 2016 WL 5745099, at *3 (D.N.J. Sept. 29, 2016). "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *S.E.C. v. Kearns*, 691 F. Supp. 2d at 608 (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

Federal Rule of Civil Procedure 9(b) requires that the complaint "state with particularity the circumstances constituting fraud." In this case, "because the securities claim asserts fraud, the SEC must meet the heightened pleading standard of Rule 9(b). . ." *S.E.C. v. Kearns*, 691 F. Supp. 2d at 609.  *See also Dubovoy*, 2016 WL 5745099, at *3; *In re Rockefeller Cir. Props. Inc. Sec.*

---

[3] "[F]or a defendant to be liable as an aider and abettor in a civil enforcement action, the SEC must prove: (1) the existence of a securities law violation by the primary (as opposed to aiding and abetting) party; (2) knowledge of this violation on part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the primary violation." *SEC v. Apuzzo*, 689 F.3d 204, 206 (2d Cir. 2012).

*Litig*, 311 F.3d 198, 216 (3d Cir. 2002) ("Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all the essential factual background that would accompany the first paragraph of any newspaper story – that is, the who, what, when, where, and how of the events at issue.").

While technically the FRCP requires a defendant to plead an affirmative defense based on a statute of limitations in the answer, the Third Circuit permits defendants to raise a statute of limitations defense by a Rule 12(b)(6) motion, if "the time alleged in the statement of claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *Smith v. Township of Warren*, 2016 WL 7409952, at *12 (D.N.J. Dec. 22, 2016). In other words, where the statute of limitations bar to bringing the claim is "apparent on the face of the complaint," a court may properly dismiss the claim under Rule 12(b)(6). *Id.*

Courts routinely dismiss cases on statute of limitations grounds on a motion to dismiss where a plaintiff has affirmatively "pleaded himself out of court." *See, e.g.*, *Handelman v. State of New Jersey*, 2016 WL 3691976, at *6-7 (D.N.J. July 12, 2016) ("Plaintiff has affirmatively pleaded that there are no timely allegations" in the complaint); *Kowalsky v. Deutsche Bank Nat'l Trust Co.*, 2015 WL 5770523, at *6 (D.N.J. Sept. 30, 2015) ("Looking only to the dates in the Complaint and matters of public record, the court finds that Plaintiff's claims … are facially time barred by the applicable statute of limitations."). In doing so, a court may properly rely on documents that are "integral to or explicitly relied upon in the complaint" or matters of public record without converting the motion to dismiss into a motion for summary judgment. *Schmidt*, 770 F.3d at 249. Indeed, "the justification for the integral documents exceptions is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing

its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint." *Id.* at 250.

## II. The Complaint Must Be Dismissed Because All Claims Are Barred By The Statute of Limitations Under Section 2462

All the counts in the SEC's complaint against Gentile are time barred under 28 U.S.C. § 2462, because the action seeks to impose for the purposes of punishment a civil fine, disgorgement, and punitive injunctions for conduct beyond five years. As an initial matter, the Supreme Court has ruled that SEC actions for civil monetary penalties and disgorgement for conduct more than five years old are precluded. *Gabelli v. SEC*, 568 U.S. 442, 454 (2013); *Kokesh v. SEC*, 137 S. Ct. 1635. Thus, the claims here seeking to impose punishment against Gentile in the form of civil fines and disgorgement for conduct allegedly occurring in 2007-2008 are simply time barred. The remaining issue, therefore, is whether the punishments the SEC seeks to impose on Gentile in the form of "obey the law" injunctions and a penny-stock bar also by way of injunction constitutes penalties subject to section 2462's five-year limitations period. Under the analysis set forth in *Kokesh* and prior guidance, these sanctions are penalties as pleaded in the instant Complaint, and are therefore barred by the applicable statute of limitations.[4]

### A. Injunctions that seek to address past harm by punishing defendants are penalties under Section 2462.

Based on its plain meaning, statutory language, and legislative history, Section 2462 applies to monetary and non-monetary penalties. Section 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, *pecuniary or*

---

[4] The Court in *Kokesh* left open the question of whether the Commission can seek disgorgement at all, since no explicit statutory authority for this remedy exists. *Kokesh*, 137 S.Ct. at 1645, fn 3.

> *otherwise*, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon. (emphasis added)

To be clear, § 2462 places a five-year time limit on *both* pecuniary and non-pecuniary penalties, such as injunctions and industry bars sought by the SEC. Even before *Kokesh*, courts, including the Tenth Circuit, thoroughly analyzed the legislative history and statutory construction of § 2462, setting forth in a detailed analysis why it clearly applies to non-pecuniary penalties. *See e.g.*, *United States v. Telluride, Co.*, 46 F.3d 1241, 1245 (10th Cir. 1998) ("Based on this construction, we view 'pecuniary or otherwise' as modifying both the terms penalty and forfeiture.").

The Supreme Court agrees. In *Kokesh*, the Supreme Court set forth the following definition of a penalty: "a 'penalty' is a punishment, whether *corporal* or pecuniary, imposed and enforced by the State, for a crime or offense against its laws." *Kokesh*, 137 S. Ct. at 1642 (citing *Huntington* v. *Attrill*, 146 U. S. 657, 667 (1892)) (emphasis added). That is, consistent with § 2462's application to penalties "pecuniary or otherwise," the *Kokesh* court clearly defined penalty to include non-monetary punishment, "corporal or pecuniary." In reviewing the historical meaning of penalty, the *Kokesh* court identified two underlying principles: (1) "First, whether a sanction represents a penalty turns in part on 'whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual'; and (2) "Second, a pecuniary sanction operates as a penalty only if it is sought 'for the purpose of punishment, and to deter others in like manner'— as opposed to compensating a victim for his loss." *Id.* Based on these principles, the court established a straightforward two-part test to determine whether a penalty under section 2462 is punitive or remedial (whether addressing monetary or non-monetary sanctions). *Id*. Here, the injunctions and penny stock bar the SEC seeks to impose on Gentile, on the face of the

Complaint, are for violating public laws and for punitive purposes, punishing Gentile by labeling

him a wrongdoer, taking away his right to work, and making an example out of him to deter him

and others. As such, they are subject to a five-year limitation period.[5]

As the Supreme Court has made clear, injunctions and industry bars are considered

penalties even if the objective is only partly to penalize and partly equitable. *Am. Bus. Ass'n v.*

*Slater*, 231 F.3d 1, 7 (D.C. Cir. 2000) (*quoting Austin v. United States*, 509 U.S. 602, 610

(1993)) ("[A] penalty [is] any sanction that goes *beyond* remedying the damage caused to the

harmed parties by the defendant's action" and "a sanction is a penalty even if only one of its

various objectives is to punish wrongful conduct; that is, if it serves *in part* to punish.")

(emphasis in original).[6]

B.    The requested injunctions here seek at the very least "in part" to punish Gentile for alleged past conduct and are therefore penalties under Section 2462.

In each Count in the Complaint, the SEC seeks an injunction against Gentile claiming

that "[b]y virtue of the foregoing, Gentile violated and, unless restrained and enjoined, will

continue violating [the securities laws]."  Other than Gentile's alleged conduct related to KYUS,

which the SEC pleaded as a scheme that "was perpetrated in 2007-2008," (Ford Dec. Exs. 1, 2,

---

[5] The statute of limitations under section 2462 begins to run when the fraud occurs, not when it is discovered, *Gabelli v. SEC*, 568 U.S. 442 (2013), so there is no dispute that the statute of limitations for RVNG began to run as of August 1, 2007 and KYUS began to run as of June 30, 2008, more than nine and eight years ago, respectively.

[6] *Kokesh* affirmed this finding, also quoting *Austin*, that even relief that serves multiple purposes is punishment *if one of those purposes is punitive*. *Kokesh*, 137 S.Ct. at 1643 ("A civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.").  The *Kokesh* decision also emphasized, consistent with prior lower court's analyses, that disgorgement goes "beyond compensation" because it "labels defendants [as] wrongdoers." *Id*. Obviously "obey the law" injunctions and industry bars are intended to, at least in part, label the defendant as a wrongdoer.

3) and allegedly "assisting" in executing trades in the same stock two years later unrelated to the pump and dump scheme, (*Id.* ¶ 68) the SEC does not actually allege any facts to support the assertion that Gentile is currently violating any securities laws, or about to, nor that he is likely to do so in the future, let alone that he will "continue violating" them if not "immediately" enjoined. Accordingly, the Complaint's allegations leave no room for dispute that at least part of the purpose of the injunctions is to punish Gentile for past conduct that allegedly violated public laws, and as such are subjection to a five-year limitations period under *Kokesh*.

Even before the two-part test set forth in *Kokesh*, courts routinely dismissed SEC attempts to impose injunctions for conduct occurring more than five years prior to the SEC enforcement action if such injunctions were intended, at least in part, to punish, as opposed to actually immediately protect the public from an ongoing violation or one that was to occur imminently without a prompt injunction. In doing so, courts relied on an analysis that provided the precedential support for the court in *Kokesh* to refine into a two-part test. That analysis sought to determine if the actual intent of the injunction was to punish – at least in part – and if so, it is subject to Section 2462's limitations period.

For example, the D.C. Circuit Court, in *Johnson v. SEC*, set forth the rationale and standard for determining whether an injunction is remedial, as some injunctions are, or punitive, as is the case here.  87 F.3d 484 (D.C. Cir. 1996).[7] The court held that relief is a penalty when "it

_____

[7] The *Johnson* court's analysis, which mirrors *Kokesh* and like *Kokesh* relies heavily on *Meeker v. Lehigh Valley R. Co.*, 236 U.S. 412, 421-22 (1915), is supported by the statutory text of § 2462, which undermines the finding in some courts' pre-*Kokesh* decisions that section 2462 does not apply to injunctions, even though the statutory text states that the limitations period applies to "action[s], suit[s] or proceeding[s] for the enforcement of any civil fine, penalty or forfeiture, *pecuniary or otherwise*." 28 U.S.C. § 2462 (emphasis added). Several federal decisions had held, pre-*Kokesh*, that both disgorgement and injunctions are never penalties but are always *de jure* equitable.  These decisions have been effectively overruled, at least in that part, by *Kokesh*.

goes beyond remedying the damage caused to the harmed parties by the defendant's action" and

rejected the SEC's proposed injunction as beyond the limitations in Section 2462. *Id.* at 488; *see*

*SEC v. Bartek*, 484 F. Appx. 949, 957 (5th Cir. 2012) (whether a sanction, including an

injunction, is punitive, hinges upon the questions of (1) whether the requested remedies address

"past harm allegedly caused by the defendant," and (2) whether there is a "minimal likelihood"

that defendant will engage in "similar conduct in the future."); *see also SEC v. Quinlan*, 2008

WL 4852904, at *11 (E.D. Mich. Nov. 7, 2008), *aff'd*, 373 F. Appx. 581 (6th Cir. 2010).

In determining whether an injunction was punitive, courts also previously considered

whether an injunction would have a "stigmatizing effect and long-lasting repercussions," and if

so, concluded that it is properly considered a penalty. *Id.*; *Proffitt v. F.D.I.C.*, 200 F.3d 855, 861

(D.C. Cir. 2000) (injunction/industry bar barring individual from banking industry is punitive

and subject to limitations period); *SEC v. Berry*, 580 F. Supp. 2d 911, 918 (N.D. Cal. 2008)

("The SEC's request for an injunction, officer and director bar, and penalties do not seek to

'remedy the damage caused,' they seek to punish"); *SEC v. Wyly*, 950 F. Supp. 2d 547, 558

(S.D.N.Y. 2013) ("While some courts have held that no statute of limitations applies to claims

for equitable relief, many apply Section 2462 where the injunctive relief sought is punitive in

nature...") (footnote omitted).[8]

---

[8] Some courts before *Kokesh* noted that "purpose of injunctive relief is not to punish the violator, but to deter him from committing future violations of the securities laws." *see, e.g.*, *SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980). To the extent that these prior cases stand for the proposition that injunctions are as a matter of law equitable and can never be punitive, plainly this is inconsistent with the holding in *Kokesh*. *Kokesh*, at 137 S.Ct. at 1643-44 ("sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because 'deterrence [is] not [a] legitimate nonpunitive governmental objectiv[e].'") ("Deterrence ... has traditionally been viewed as a goal of punishment"). Indeed, *Kokesh* overruled the fiction adopted by some lower courts that disgorgement was, as a matter of law equitable, and never a punishment, specifically rejecting the black-letter rule urged by the SEC, by reasoning that

The case of *SEC v. Jones* is also instructive. 476 F. Supp. 2d 374 (S.D.N.Y. 2007).  In *Jones*, the SEC sought a permanent injunction prohibiting defendants from committing future violations of specific sections of the Advisers Act. *Id.* at 383. In determining whether the request for the injunction was time barred, the court highlighted Second Circuit case law that "demands that the Commission 'go beyond the mere facts of past violations and demonstrate a realistic likelihood of recurrence.'" *Id.* The court, as required by the Second Circuit, also looked to "collateral consequences" in evaluating whether the "injunction preventing future violations of the securities laws" was more "punitive than remedial." *Id.* at 383. The court found that (1) "the Commission has not put forth any facts that would indicate Defendants engaged in a pattern of securities laws violations;" (2) "several years have passed since Defendants' alleged misconduct" which "undercuts the Commission's assertion that Defendants pose a continuing risk to the public"; and (3) "the potential collateral consequences of a permanent injunction are quite serious," including "stigmatiz[ing] Defendants in the investment community and significantly impair[ing] their ability to pursue a career." *Id.* Based on these findings, the court held that the injunction sought was a penalty subject to § 2462, and dismissed the request for the injunction and complaint as untimely. *Id.*[9]

---

"disgorgement" as "applied in the SEC enforcement context" routinely exceeds any "compensatory" aim and that while "disgorgement serves compensatory goals in some cases…[a] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* at 1643. In short, any argument now that all injunctions sought in SEC enforcement actions are equitable as a matter of law is without legal basis.

[9] While *Jones* ruled on summary judgment, the principles stated therein apply equally here, especially where the SEC has failed even to come close to meeting the FRCP's plausibility requirement.

*Kokesh* abandons any analysis that involves the "degree of risk that the defendant poses," or whether there is a more than "minimal likelihood" he will engage in similar conduct when confronted with a request for an injunction based solely on conduct more than five years old, *i.e.,* conduct that is not actually occurring or about to imminently occur at the time of the requested injunction. But even if these considerations survive *Kokesh*, the injunctions and bar the Commission seeks in this case, *based on the facts alleged in this Complaint*, make clear that they are punitive, not remedial, because the Commission failed to plead even a single fact suggesting that Gentile posed any risk whatsoever at the time of filing and because of the demonstrated stigmatizing effect and long-lasting repercussions any injunction against Gentile would have if based solely on such old, alleged conduct. And since the Complaint was filed fifteen months ago, it is now beyond dispute that he did not pose an immediate threat to the public at the time the Complaint was filed, thereby precluding issuing an injunction now.

There can be no question that the injunctions sought here, including "obey the law" prohibitions on violating certain securities laws and a ban on participation in sale of penny stocks, are entirely, or at least primarily, punitive, not remedial under any previously articulated analysis.  Indeed, they would serve no identifiable remedial function – such as compensating an individual or enjoining an individual who is engaged, about to engage, or is likely to engage in a violation – while undermining Gentile's ability to work in an entire field of the securities business (which Gentile has no interest or intention of returning to anyway), permanently stigmatizing him, seeking retribution for alleged conduct that occurred a decade ago, and interfering with his ability to make a living in his chosen profession.

It is not disputed, and the government has recognized in the criminal complaint filed against Gentile, in its papers opposing his motion to dismiss the criminal indictment, and at oral

argument on that motion, that whatever Gentile's alleged involvement in the alleged conduct relating to RVNG and KYUS was, he exited the alleged conspiracy of his own volition more than nine years ago, in June 2008. (Ford Dec. ¶ 8, Ex. 5) For the next four years, Gentile lived an exemplary life, building a business, and taking part in charitable and civic activities. Immediately upon his arrest in July 2012, Gentile offered and agreed to cooperate with the government, both the DOJ and SEC, which he did for the next several years. Not exaggerating, during the four years before the current Complaint was filed, Gentile provided extraordinary cooperation against all individuals involved in the charged RVNG and KYUS schemes, (*Id*. ¶¶ 4, 5, Ex. 1, 2) and assisted the SEC in numerous investigations of high-value targets unknown to Gentile, who, though having been on the radar of the SEC for years, were previously beyond the government's reach. During this time, Gentile also led the SEC to individuals and broker-dealers unaffiliated with Gentile and unknown to the government, whom Gentile learned to be involved in illegal penny-stock schemes. (*Id*. ¶ 10, Ex. 6) Indeed, all told, Gentile's assistance directly led to dozens of individuals being charged by the DOJ and sued by the SEC, which to date has received in excess of 12 million dollars in penalties and disgorgement during his more than 3 years of cooperation. (*Id*.) Of course, in connection with his subsequent criminal indictment (and its dismissal), Gentile's cooperation entered the public record. (*Id*. ¶ 7, Ex. 4)

As this Court can take judicial notice of statements made by the Assistant United States Attorney in the parallel criminal proceeding and in letters the SEC has filed with this court – since his arrest in July 2012, Gentile has been 100 percent truthful, honest, and helpful to the DOJ and SEC as a cooperator.  (*Id*. ¶ 8, Ex. 5) Not a single incident has occurred to raise any questions over the past five years, meaning, that for purposes of this case, it is undisputed (and certainly nothing in the Complaint suggests otherwise) that Gentile cannot be said to have

engaged in any conduct that could be considered a violation of the securities (or any other) laws. (*Id*.)  In fact, the SEC itself has acknowledged that as of a few weeks ago it was not aware of any information suggesting that Gentile had violated any laws, securities or otherwise, excluding the stale allegations in the current Complaint. (*Id*. ¶ 11, Ex. 7)

The SEC must acknowledge also that it has not alleged any facts in the Complaint to support the statement that "unless restrained and enjoined [Gentile] will continue violating [the securities laws]," as it baselessly asserts in Claims 1-5. Rather, after Gentile was indicted one year ago, the SEC agreed to a complete stay of the civil matter, and at that time sought no injunction.  If the SEC actually believed it needed the injunction to protect the public from Gentile, *i.e.* for remedial or equitable purposes, it most certainly would have sought the injunction a year ago, as a pre-condition, to asking this court for a stay.  Or, if there really was an actual concern of a future violation of the securities laws, it would have sought an injunction in July 2012, after his arrest on charges identical to the allegations in the present Complaint, when Gentile started cooperating with the agency on an almost full time basis. The truth is the SEC knows – and the silence in the filed Complaint confirms – that there is no evidence to suggest Gentile needs to be enjoined at this time. If he is actually such a threat, how does the SEC defend its conduct over the past five years during which time it did not seek any injunction. Did the SEC willfully and knowingly expose the public to the danger of Gentile for a full five years? Of course not. The Commission does not believe he poses an actual threat going forward – it seeks the injunctions to penalize him for the conduct alleged to have occurred last decade.

Given these facts, it is clear that the relief sought by the SEC could not possibly serve a pure remedial function, or at the very least, any remedial function would be an afterthought to its

primary purpose: punishing Gentile.[10] It is not disputed that individuals who receive an injunction or bar in the securities field are tarnished in a way that all but precludes their participation in the field at all; indeed, this is precisely the reason the SEC seeks the injunctions. *See, e.g.*, *SEC v. Microtune, Inc.*, 783 F. Supp. 2d 867, 885 (N.D. Tex. 2011) ("The Court finds that injunctive relief and officer-and-director bars in this case are properly construed as penalties as a matter of law, as it is clear that these remedies would have significant collateral consequences...[and] neither remedy addresses past harm caused by the Defendants, and neither remedy is focused on preventing future harm due to the low likelihood that [the defendants] would engage in similar behavior in the future."). Gentile himself, in pre-submission filings with this court, has demonstrated the extent to which he has been penalized and suffered from an erroneous public announcement that the SEC already obtained an injunction against him.  (Ford Dec. ¶ 15, Ex. 11)

        In sum, the Complaint fails to allege, because it cannot, any pattern of securities violations, or any conduct less than nine years old, that reasonably suggests Gentile poses an imminent threat to the public. Rather it alleges isolated incidents that occurred almost a decade ago involving a lawyer who repeatedly assured Gentile that their conduct did not violate the securities laws. Moreover, given Gentile's work as a cooperator for the DOJ and SEC in

---

[10] That the SEC is continuing to litigate this case in the manner that it is, even after *Kokesh* was decided, strongly supports Gentile's argument that the primary purpose of the claims is to punish Gentile. The SEC's decision to improperly list his home address in the Complaint, given his status as a cooperator, supports this assertion. Given the *Kokesh* and *Gabelli* decisions, it is not legitimately disputed that the SEC is out of time with respect to civil penalties and disgorgement for all conduct pre-dating – at the very least seven years and 19 days ago (assuming the validity of the tolling agreements). As such, if the Commission were actually only seeking remedial measures it would voluntarily dismiss the claims that are clearly precluded and have been found to be pure punishment by the Supreme Court, even if it intends to still put forth arguments regarding these injunctions.

numerous cases involving penny stocks – and his cooperation in this field now being a matter of public record – there is virtually no chance of him committing the harm these injunctions or penny stock bar purport to seek to prevent in the future. Plainly, Gentile's involvement in penny stocks is far behind him. These past five years have sufficiently dissuaded him from wanting to return to that particular field without the need for any injunction or bar. If this court imposes any injunction against Gentile, including one that barred him from the penny stock field, the only practical effect would be to severely tarnish his reputation, and greatly interfere with his ability to work within the securities field in general. In other words, the sole result of any injunction or industry bar would be to punish Gentile. Without argument these sanctions would "in part" punish him. The injunctive remedies sought by the SEC – just like the civil penalties and disgorgement – are subject the § 2462 five-year statute of limitations, and are time-barred.

C.    Enjoining Gentile from participating in an area of the securities industry is punitive, not equitable.

It is well settled that industry bars are punitive and not remedial. *See, e.g.*, *Proffitt v. F.D.I.C.*, 200 F.3d 855, 861 (D.C. Cir. 2000) (injunction/industry bar barring individual from banking industry considered punitive and subject to statute of limitations); *SEC v. Microtune, Inc.*, 783 F. Supp. 2d 867, 885-86 (N.D. Tex. 2011) (officer/director bar punitive as a matter of law). Obviously an industry bar is sought here for the purpose of penalizing Gentile for a violation of public law, and to deter both him and others from engaging in any misconduct. Even if the Commission could argue that its purpose in seeking a penny-stock bar is partially to protect the public, *Kokesh* makes clear that when any purpose of the sanction is punitive it is subject to the five-year limitation period even if another purpose is arguably equitable, noting that "[a] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can

22

only be explained as also serving either retributive or deterrent purposes, is punishment . . ."

*Kokesh*, 137 S.Ct. at 1643.

**III.   The Tolling Agreements Are Invalid Because They Were Obtained by Either Fraud or Making Material Misrepresentations to Gentile in Violation of His Due Process Rights**

Even if this court were to conclude that the Commission satisfied federal pleading standards and the Complaint alleges on its face that Gentile violated the securities law violations in 2009 and 2010 – which it plainly does not – the case should nevertheless be dismissed as time-barred because the tolling agreements are invalid for several reasons. The tolling agreements, it now appears, were procured by deceiving Gentile into believing that he was signing an agreement for alleged conduct that was about to run past its limitations period in July 2012 (RVNG purportedly ended in 2007), but which the SEC appears to now claim extended to 2010.

Gentile signed the tolling agreements on the express understanding that, as the AUSA candidly admitted to Judge Linares, and as Judge Linares found in his decision, Gentile's alleged conduct ended in 2008.  Four years later, the Commission appears to want to make an entirely different allegation than those discussed at the time Gentile signed the agreement. Should this court conclude that the Commission properly pleaded that Gentile's alleged conduct in the KYUS scheme extended to 2010, and the government's prior representations to Judge Linares do not act as a bar to now arguing for a later date, that means Gentile did not knowingly and voluntarily execute any of the tolling agreements he signed with the SEC.  *See United States v. Levine*, 658 F.2d 113, 124 (3d Cir. 1981) (waivers involve a relinquishment of important rights and must be "informed by an understanding of the consequences of the waiver"); *see also United States v. Gentile*, --- F. Supp. 3d ----, 2017 WL 424907, at *2-3 (D.N.J. Jan. 30, 2017).

23

SEC staff attorneys were also present at the August 14, 2014 meeting with the DOJ and Gentile that was discussed at length in Judge Linares' decision, when Gentile announced that he would not sign any additional tolling agreements with the DOJ or the SEC because he wanted everything to be over by June 30, 2015, the date everyone believed to be the five year mark (excluding arguably tolled time) from the end of any alleged misconduct. (Ford Dec. ¶ 13, Ex. 9, ¶ 17)  Judge Linares has already found that Gentile's assertion that "he would not have signed waivers if at any time, he thought or was advised that the statute of limitations was six years" to be "credible since it seems to be buttressed by the fact that he expressed to his attorneys and the Government that he wanted to assure this case would be resolved on or before June 30, 2015; the date that the twice-extended five-year statute of limitations would have expired. Therefore it appears that repose after this date was important to Defendant. In fact, in an August 2014 meeting Defendant refused to sign a third tolling waiver, further exhibiting that he sought to have the matter resolved by June 30, 2015, the date he, as well as the Government, thought the twice-extended five-year statute of limitations would have expired." *Gentile*, 2017 WL 424907 at *3.

These conclusions, which have already been made and are now the law of the case, must be applied to the SEC tolling agreements, in the same manner they were applied to the DOJ tolling agreements.  As with the DOJ, no one from the SEC informed Gentile that he was mistaken in believing that the case would have to be resolved by June 30, 2015 because they believed he was engaged in conduct that extended to 2010.  (*Id.*) There is no meaningful difference between the government failing to inform Gentile at this meeting that it believed the statute of limitations was six years (and not five years) and the government not telling Gentile that it believed the statute of limitations began running in 2010, not June 2008 as he was previously led to believe. The results of the government's conduct in this regard must be the

same. Just as with the DOJ, Gentile, in fact refused to sign additional tolling agreements with the SEC in the fall of 2014, because just like with the DOJ, he wanted everything to be over by June 30, 2015 – the date he had been led to believe by the government was the expiration of all relevant statute of limitations, including for all penalties under section 2462. (*Id*.) Accordingly, as Judge Linares found with respect to the tolling waivers from the DOJ, Gentile "unknowingly executed" the tolling agreements. *Gentile*, 2017 WL 424907, at *3.

Second, Gentile signed the tolling agreements with the belief that he was doing so as part of a cooperation agreement that he had entered into with the SEC – because the SEC told him that it was agreeing to enter into a cooperation agreement with him before he signed them. The SEC has since informed Gentile that it never entered into a cooperation agreement with him. Ford Dec. ¶ 14, Ex. 10) The Commission's recent assertion that it never entered into a cooperation agreement with Gentile strongly suggests the tolling agreements were procured in violation of Gentile's due process rights. Indeed, SEC staff attorneys appear to have misled Gentile to believe that he had entered into a cooperation agreement with the Commission that obligated him to sign tolling agreements, but instead they were just using him as a cooperator while tricking him into thinking he had entered into a cooperation agreement. Like the tolling agreements Judge Linares found invalid in the related criminal case, the tolling agreements here are invalid because Gentile did not have an understanding of what rights he was signing away based on the SEC misleading him with respect to his understanding of the scope of the conduct for which he was cooperating, and his mistaken belief that the SEC had agreed to enter into a cooperation agreement with him – based on SEC staff attorneys explicitly telling him they were entering into a cooperation agreement with him which required him to sign tolling agreements.

IV.     **The SEC Cannot Obtain Injunctive Relief Because it has Failed to State a Claim and the Relief Sought Lacks Requisite Specificity**

A.      <u>The Complaint fails to allege any facts entitling the SEC to injunctive relief.</u>

In addition to the time bar, the SEC also cannot obtain injunctive relief because it has failed to allege actual and imminent, forward-looking harm requiring protection of an injunction and the relief sought lacks the requisite specificity required by Rule 65. In its Complaint, the Commission asserts five causes of action and demands injunctive relief as a remedy for Gentile's alleged violation thereof. The SEC cannot, however, obtain such relief because it has not pleaded any ongoing or future conduct that must be enjoined – nor could it. A mere statutory violation, of course, does not entitle the Commission to automatic injunctive relief. *See, e.g.*, *Int'l Union, United Auto. Aerospace & Agr. Implement Workers v. Amerace Corp.*, 740 F. Supp. 1072, 1086 (D.N.J. 1990) ("Injunctive relief cannot automatically be granted upon a finding of statutory violation."). Instead, "[i]njunctive relief is forward-looking." *Jama Corp. v. Gupta*, 2008 WL 627410, at *2 (M.D. Pa. Mar. 4, 2008). "To establish standing for a forward-looking injunction, a party must show a threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical." *Kunkle v. Naugle*, 2015 WL 7756197, at *7 (E.D. Pa. Dec. 2, 2015), *aff'd*, 660 F. App'x 132 (3d Cir. 2016); *see also, e.g.*, *McCormick v. Kline*, 670 F. App'x 764, 765 (3d Cir. 2016) ("Absent a real and immediate threat of future injury by the defendant, injunctive relief is not an appropriate remedy").

The statutory securities laws track these equitable principles. In this case, each of the five "claims" for injunctive relief rely on the authority granted to the SEC pursuant to 15 U.S.C. § 77t(b) and 15 U.S.C. § 78u(d)(1). First, Section 77t(b) permits: "Whenever it shall appear to the Commission that any person *is engaged or about to engage* in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, or of any rule or

regulation prescribed under the authority thereof, the commission may…bring an action…to enjoin such acts of practices…" (emphasis added). Similarly, Section 78u(d)(1) permits: "Whenever it shall appear to the Commission that any person *is engaged or is about to engage* in acts or practices constituting a violation of any provision of this chapter, the rules of regulations thereunder…it may…bring an action…to enjoin such acts or practices…" (emphasis added). Accordingly, for injunctive relief to survive a motion to dismiss, the SEC must allege that Gentile is engaging in prohibited acts or practices or at least allege facts sufficient to "support any reasonable inference that [he is] about to engage" in prohibited acts or practices "at the time the suit was brought or at the time the injunction was made effective." *S.E.C. v. Torr*, 87 F.2d 446, 450 (2d Cir. 1937) (reversing grant of injunction under 15 U.S.C. §§ 77t(b) and 78u where defendants were not engaging in prohibited acts and "circumstances fail to support any reasonable inference that they were about to engage in any at the time the suit was brought"); *see also S.E.C. v. Secure Capital Funding Corp.*, 2013 WL 3286234, at *8 (D.N.J. June 28, 2013) ("The decision on whether to grant injunctive relief 'is based on a determination of whether there is a reasonable likelihood that the defendants, if not enjoined, will again engage in the illegal conduct.'") (*quoting S.E.C. v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980)); *S.E.C. v. Tourre*, 4 F. Supp. 3d 579, 598 (S.D.N.Y. 2014) (denying SEC request for injunctive relief where four years had elapsed between prohibited conduct, because no reasonable likelihood of future violation); *In re Reserve Fund Secs. & Derivative Litigation*, 2013 WL 5432334, at *22-23 (S.D.N.Y. Sept. 30, 2013) (concluding permanent injunction not warranted where infractions were "isolated occurrences" that had occurred "decades" ago).

Moreover, in order to sufficiently make a showing of the need for injunctive relief, the SEC must satisfy the heightened federal fraud pleading standards, which mandate that the claim

is at a minimum "plausible" and sets forth sufficient factual allegations to outline the elements of the claim, and does not require this Court to accept "conclusory allegations" or to make unwarranted inferences.  *See, e.g.*, *McCormick*, 670 F. App'x at 765 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) in requiring a demand for injunctive relief to be properly pleaded).

Here, the Complaint fails to set forth any facts suggesting that Gentile is engaged or is about to engage in any prohibited conduct at the time the Complaint was filed.  Indeed, since the Complaint was filed fifteen months ago, and Gentile has not engaged in any securities laws violations, any such allegation would have been disproven by now in any event.  Accordingly, aside from whether section 2462 precludes an injunction at this time, the SEC failed to plead sufficient facts entitling it to this relief.

B.      The injunctions sought lack requisite specificity under FRCP 65.

Finally, the SEC's proposed injunctive relief must also be denied because the Third Circuit precludes judges from issuing the broad and generic "obey the law" injunctions like the ones sought here. Federal Rule of Civil Procedure 65(d) requires that every injunction "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." A generic "obey the law" injunction does not begin to meet this standard.  Following the rule – which is clearly written to protect due process concerns – the Third Circuit has held that "[b]road, nonspecific language that merely enjoins a party to obey the law … does not give the restrained party fair notice of what conduct will risk contempt." *Louis W. Epstein Family P'ship v. Kmart Corp.,* 13 F.3d 762, 771 (3d Cir. 1994). Indeed, Rule 65 is "no mere technicality," and requires an injunction "framed so that those enjoined know exactly what conduct the court has prohibited and what steps they must take to conform their conduct to the law." *S.E.C. v. Smyth*,

at 1233 n.14 (11th Cir. 2005) (rejecting "obey the law" injunction and noting that such an injunction "unacceptably conflicts with a defendant's constitutional rights"). The court in *S.E.C. v. Sky Way Global, LLC*, 710 F. Supp. 2d 1274, 1280-81 (M.D. Fla. 2010), explained succinctly the constitutional issues and separation of powers issues raised by "obey the law" injunctions, and concluded they are impermissible because a defendant may be found guilty of contempt for violating a law without any of the procedural safeguards afforded by criminal procedure and the Constitution.

It is for these reasons that courts routinely reject the SEC's attempts to impose "obey the law" injunctions on individuals. *See S.E.C. v. Smyth*, 420 F.3d at 1233 n.14 ("This court has held repeatedly that 'obey the law injunctions' are unenforceable"); *S.E.C. v. Sky Way Global*, 710 F. Supp. 2d at 1274 ("the Commission's widespread practice of procuring an obey-the-law injunction as a component of resolving litigation is legally flawed and practically mischievous"); *S.E.C. v. Graham*, 823 F.3d 1357, 1362 n.2 (11th Cir. 2016) (restating that "obey-the-law" injunctions are unenforceable); *Hines v. Nichols*, 2016 WL 3460220, at *2 (M.D. Ga. May 18, 2016) ("the Court cannot issue a general injunction barring any Defendant from violating the law at some point in the future"); *Payne v. Travenol Laboratories*, 565 F.2d 895, 898 (5th Cir. 1978) ("Such 'obey the law' injunctions cannot be sustained."); *Daniels v. Woodbury County, Iowa*, 742 F.2d 1128, 1134 (8th Cir. 1984) ("an injunction that does little or nothing more than order the defendants to obey the law is not specific enough").

Here, the Complaint fails to specify what conduct the SEC seeks to enjoin. Rather, each of the five "claims" merely sets forth laws that an injunction would require Gentile to obey. This is precisely the sort of "obey the law" injunction the Third Circuit has held cannot be sustained and which federal courts have explained time and again violates the constitutional rights of

defendants, such as Gentile here, and separation of powers by placing defendants, such as Gentile here, at risk of a contempt hearing without any of the due process or procedural safeguards to which he is entitled under both the criminal law and for securities violations. The reason for the SEC's failure to set forth *any* act or acts to be restrained or required is because, as explained more fully above, the inference that there is a substantial likelihood that Gentile will violate the securities law is, simply put, not supported by any evidence. Gentile, after voluntarily, deliberately, and conclusively walking away from whatever conduct he was allegedly part of nearly a decade ago, became an active and effective cooperator working with the SEC, USAO, and other governmental agencies. During this time, Gentile has operated lawful and successful businesses, gotten involved in civic and charitable endeavors and become a model citizen. Under such circumstances, the SEC appears remiss to actually allege in their five "claims" what it is seeking to enjoin, and instead sets forth a series of blanket "obey the law" injunctions, which this Circuit does not recognize. The claims cannot survive a Rule 12(b)(6) motion to dismiss.

## CONCLUSION

For the foregoing reasons, Gentile respectfully requests that this court dismiss the Complaint in its entirety, with prejudice.

Dated: June 30, 2017

_____
Adam C. Ford, Esq.
Adam Pollock, Esq.
Ford O'Brien LLP
85 Broad Street
New York, New York 10004
Tel: (212) 858-0040
Email: aford@fordobrien.com
*Attorneys for Defendant Guy Gentile*