**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

SECURITIES AND EXCHANGE COMMISSION,

              Plaintiff,

      v.

GUY GENTILE,

              Defendant.

No. 2:16 Civ. 01619 (JLL)(JAD)

---

### Memorandum of Law in Support of Defendant Guy Gentile's Motion to Dismiss the Amended Complaint

FORD O'BRIEN LLP
575 Fifth Avenue, 17th Floor
New York, New York 10017
212.858.0040

*Attorneys for Defendant Guy Gentile*

October 27, 2017

**Table of Contents**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS .................................................................................................. 3

    Background .................................................................................................................. 3

    The Amended Complaint's Additional Allegations ........................................... 5

ARGUMENT ...................................................................................................................... 8

    I.    Legal Standard on Motion to Dismiss ................................................. 8

    II.    The Complaint Must Be Dismissed Because All Claims Are Barred by the Statute of Limitations Under Section 2462 ........................................ 9

        A.    Obey-the-law injunctions are punitive – at least in part – as a matter of law ............................................................................ 11

        B.    Penny stock bars are punitive as a matter of law ...................... 14

    III.    The SEC is Precluded From Obtaining Equitable Relief on Claims That It Previously Withdrew Admitting They Were Time-Barred as Confirmed by The Concurrent Remedy Doctrine ............................... 16

    IV.    The SEC Failed To Allege an Actual and Imminent Violation of the Securities Laws Which is an Essential Predicate to Obtaining Forward-Looking Remedial Injunctive Relief .......................................... 19

CONCLUSION ................................................................................................................. 23

## Table of Authorities

### Cases

*Algrant v. Evergreen Valley Nurseries Ltd. P'ship*,
   126 F.3d 178 (3d Cir. 1997) ................................................................ 17

*Am. Bus. Ass'n v. Slater*,
   231 F.3d 1 (D.C. Cir. 2000) ................................................................ 11

*Austin v. United States*,
   509 U.S. 602 (1993) ................................................................ 11

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969) ................................................................ 18

*Cope v. Anderson*,
   331 U.S. 461 (1947) ................................................................ 17

*de la Fuente v. F.D.I.C.*,
   332 F.3d 1208 (9th Cir. 2003) ................................................................ 15

*Fed. Election Comm'n v. Williams*,
   104 F.3d 237 (9th Cir. 1996) ................................................................ 17, 18

*Gabelli v. SEC*,
   568 U.S. 442 (2013) ................................................................ 11, 14, 19

*Glob. Cmty. Monitor v. Mammoth Pac., L.P.*,
   230 F. Supp. 3d 1235 (E.D. Cal. 2017) ................................................................ 18

*Handelman v. State of New Jersey*,
   2016 WL 3691976 (D.N.J. July 12, 2016) ................................................................ 9

*In re Reserve Fund Secs. & Derivative Litig.*,
   2013 WL 5432334 (S.D.N.Y. Sept. 30, 2013) ................................................................ 21

*Int'l Union, United Auto. Aerospace & Agr. Implement Workers v. Amerace Corp.*,
   740 F. Supp. 1072 (D.N.J. 1990) ................................................................ 19

*Jama Corp. v. Gupta*,
   2008 WL 627410 (M.D. Pa. Mar. 4, 2008) ................................................................ 20

*Johnson v. SEC*,
   87 F.3d 484 (D.C. Cir. 1996) ................................................................ 11, 12, 15, 16

*Kokesh v. S.E.C.*,
   137 S.Ct. 1635 (2017) ................................................................ passim

*Kowalsky v. Deutsche Bank Nat'l Trust Co.*,
   2015 WL 5770523 (D.N.J. Sept. 30, 2015) ................................................................ 9

*Kunkle v. Naugle*,
   2015 WL 7756197 (E.D. Pa. Dec. 2, 2015) ................................................................ 20, 22

*McCormick v. Kline*,
  670 F. App'x 764 (3d Cir. 2016) ........................................................... 20, 22

*Meeker v. Lehigh Valley R. Co.*,
  236 U.S. 412 (1915) ............................................................................... 10, 12

*Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*,
  502 F.3d 1316 (11th Cir. 2007) ..................................................................... 19

*Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*,
  2005 WL 5165704 (E.D. Tenn. Mar. 11, 2005) .......................................... 18

*Nemkov v. O'Hare Chicago Corp.*,
  592 F.2d 351 (7th Cir. 1979) ......................................................................... 19

*Primepoint, L.L.C. v. PrimePay, Inc.*,
  401 F. App'x 663 (3d Cir. 2010) ........................................................... 21, 23

*Proffitt v. F.D.I.C.*,
  200 F.3d 855 (D.C. Cir. 2000) ....................................................................... 15

*Russell v. Todd*,
  309 U.S. 280 (1940) ....................................................................................... 17

*Saad v. SEC*,
  2017 WL 4557511 (D.C. Cir. Oct. 13, 2017) ........................................ 11, 16

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014) ........................................................................ 8, 9

*SEC v. Bartek*,
  484 Fed. App'x 949 (5th Cir. 2012) ............................................................. 12

*SEC v. Collyard*,
  861 F.3d 760 (8th Cir. 2017) ......................................................................... 11

*SEC v. Dubovoy*,
  No. 15 Civ. 6076, 2016 WL 5745099 (D.N.J. Sept. 29, 2016) ................... 8

*SEC v. Kearns*,
  691 F. Supp. 2d 601 (D.N.J. 2010) ................................................................ 8

*SEC v. Monarch*,
  608 F.2d 938 (2d Cir. 1979) ......................................................................... 21

*SEC v. Torr*,
  87 F.2d 446 (2d Cir. 1937) ........................................................................... 21

*SEC v. Tourre*,
  4 F. Supp. 3d 579 (S.D.N.Y. 2014) ............................................................... 21

*SEC v. Warren*,
  583 F.2d 115 (3d Cir 1978) ........................................................................... 13

*SEC v. Wheeler*,
  56 F. Supp. 3d 241 (W.D.N.Y. 2014) ........................................................... 22

*Smith v. Township of Warren*,
  2016 WL 7409952 (D.N.J. Dec. 22, 2016) .......................................................... 8

*United States v. Gentile*,
  235 F. Supp. 3d 649 (D.N.J. Jan. 30, 2017) ................................................... 4, 6

*United States v. Luminant Generation Co., LLC*,
  2015 WL 5009378 (N.D. Tex. Aug. 21, 2015) ................................................. 18

*United States v. Rodman*,
  519 F.2d 1058 (1st Cir. 1975) ............................................................................ 24

*United States v. Telluride, Co.*,
  146 F.3d 1241 (10th Cir. 1998) .................................................................. 10, 12

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953) ............................................................................................ 21

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) ............................................................................................ 21

*Westinghouse Elec. Corp. v. Franklin*,
  993 F.2d 349 (3d Cir. 1993) .............................................................................. 17

## **Regulations**

12 U.S.C. § 2462 ......................................................................................................... 9

15 U.S.C. § 77t(b) ..................................................................................................... 20

15 U.S.C. § 78u(d)(1) ............................................................................................... 20

15 U.S.C. § 80b-9 ..................................................................................................... 20

28 U.S.C. § 2462 ................................................................................................. passim

Guy Gentile respectfully submits this memorandum of law in support of his motion to dismiss the Securities and Exchange Commission's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

After ten years, this case distills to a single question: has the SEC filed the Amended Complaint against Guy Gentile in an attempt, or with the effect, to punish him – even just a little bit? If so, the Amended Complaint must be dismissed under the Supreme Court's recent decision in *Kokesh* because it "cannot fairly be said *solely* to serve a remedial purpose."

The Amended Complaint does not plausibly allege that the SEC's sole purpose and effect is to protect the investing public from future violations of the securities laws by Gentile, as he is neither currently nor on the cusp of violating the securities laws, nor is there any plausible likelihood that he will do so if not immediately enjoined. Of course, the Amended Complaint does not seek to remediate anything by restoring the *status quo ante* or compensating alleged victims. The relief sought here is punitive – it does not solely serve a remedial purpose – and the SEC's action is therefore barred by the statute of limitations.

Equally fatal, the Amended Complaint alleges five claims, violations of Sections 5(a), 5(c), 17(b), and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, based on alleged conduct from 2007 and 2008. But the SEC already acknowledged to this Court that these exact five claims based on the same conduct are barred by the statute of limitations when it withdrew its prayer for the relief of disgorgement and civil money penalties on each of these five claims. The SEC's assertion that it can continue to prosecute Gentile because "[t]he Commission's prayer for injunctive relief is a remedy, not a separate claim" is legally defective, because there is no remedy without a claim. Indeed, because

1

of the lack of clarity of the SEC's original complaint combined with its withdrawal of all five claims asserted therein, this Court directed "the SEC to clarify exactly which allegations and claims are still viable."  In response, the SEC decided instead to attempt to revive the same exact five claims that it previously withdrew as time barred, stemming from the same exact factual allegations based on decade-old allegations, but now asserting they are "equitable." This is precisely what *Kokesh* ruled was impermissible. Sections 5(a), 5(c), 17(b), and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder only have one statute of limitations, five years – and those five years have passed. The SEC cannot now use these same stale claims to form the predicate of an injunction because there is no timely violation that can be alleged.

The Amended Complaint is premised only on allegations of securities law violations allegedly occurring a decade ago, in 2007 and 2008, with a handful of more recent allegations of lawful speech – like an Instagram comment and statements by Gentile quoted in recent news articles about his intention to expand a lawful securities business – tacked on in a few sparse paragraphs. But these new "allegations" indisputably do not make out a violation of any law, securities or otherwise. Were these acts actually an indicator that Gentile *is violating or about to violate* any securities law, the SEC surely would have stepped in at some time *over the past decade* to seek to enjoin him. It did not do so because there is nothing to enjoin. Instead, the new "allegations" of his recent speech make clear the Commission's desperate attempt to make time-barred claims appear timely in seeking – once again – to punish Gentile.

This time, however, the SEC isn't even pretending to seek any compensation or remediation for alleged wrongdoing. Instead, it merely seeks to single Gentile out to be formally ordered to obey-the-law under the threat of contempt of court, and subject him to an industry bar.

Yet courts have consistently held that an industry bar is a penalty and not remedial at all.  Indeed, the former SEC Commissioner publicly pronounced that an industry bar "is intended to be" punitive by "requiring a significant change in the individual's career."[1]  Moreover, an injunction would punish Gentile by labeling him a wrongdoer, stripping him of his due process and procedural rights to fully defend himself against future allegations, and undermining his ability to make a living: in short, the precise definition of a penal sanction.  Such penalties "cannot fairly be said *solely* to serve a remedial purpose."

As such, the Amended Complaint should be dismissed as (a) untimely because the proposed relief – an industry bar and an obey-the-law injunction – are not "solely" remedial and thus are untimely as explained by the Supreme Court's precedents in *Gabelli* and *Kokesh*; (b) time barred because the SEC has already withdrawn all five claims asserted in the Amended Complaint as outside the statute of limitations, acknowledging that all of its potential legal relief is stale, thus triggering the concurrent remedy doctrine; and (c) failing to allege conduct warranting an injunction because Gentile is not alleged to be currently violating the securities laws or about to.

## STATEMENT OF FACTS

**Background**

On March 23, 2016, the SEC filed a complaint (Dkt. #1) against Gentile alleging involvement in schemes allegedly occurring in 2007 and 2008, before the mortgage crises that led to the last great recession, and around the time the iPhone was first introduced. In its

---

[1]  Luis Aguilar, Comm'r, SEC, Taking a No-Nonsense Approach to Enforcing the Federal Securities Laws (Oct. 18, 2012), available at http://www.sec.gov/News/Speech/Detail/Speech/1365171491510 (industry bars are "one of the sanctions that [defendants] fear the most, which is what precisely makes it one of the most effective sanctions available.  For that deterrence to exist, potential fraudsters need to know the Commission is willing to impose this sanction.").

Complaint, the SEC did not allege that Gentile engaged in any conduct that violated any securities laws after June 2008, nor could it. The Court, which had already dismissed a related criminal case against Gentile as the corresponding statute of limitations had run, *see United States v. Gentile*, 235 F. Supp. 3d 649 (D.N.J. Jan. 30, 2017), stayed the SEC's case (Dkt. #24) pending the Supreme Court's then-forthcoming decision in *Kokesh v. SEC*. *Kokesh* was decided on June 5, 2017. The Supreme Court reminded the SEC, again, that it may not pursue stale allegations merely by repackaging the relief sought as "equitable" disgorgement and that the federal statute of limitations, 28 U.S.C. § 2462, does not categorically exclude so-called "equitable" relief. 137 S.Ct. 1635 (2017).

Notwithstanding the Supreme Court's decision, the SEC elected to proceed with its time-barred Complaint. Faced with Gentile's motion to dismiss (Dkt. #34), the SEC abandoned nearly all of the relief it sought, and instead attempted to cling to the proclaimed "equitable" relief of an industry bar and obey-the-law injunction. *See* Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion To Dismiss, July 21, 2017 (Dkt. #38). And even though the SEC acknowledged that all five claims in the Complaint were time-barred, it asserted that "[t]he Commission's prayer for injunctive relief is a remedy, not a separate claim." *Id.* at 25. Thus, it sought a remedy for claims that it acknowledged were barred by the applicable statute of limitations.

Following complete briefing, on September 18, 2017, the Court issued an order terminating the motion to dismiss and permitting the SEC to file an amended complaint "in a manner that is consistent with this Court's Opinion and Order." (Opinion & Order, Sept. 18, 2017 (Dkt. #46 at 4)). Specifically, the Court found that "[T]he SEC seeks to proceed in this case based upon claims and factual allegations that: (a) have been withdrawn; (b) are not asserted

4

in the complaint, and are being raised for the first time in response to the motion to dismiss; or (c) are *hopelessly intertwined* with the claims and allegations that have been withdrawn." *Id.* ¶ 7 (emphasis added). The Court further found that: "As a result, the Court is being asked to engage in the task of addressing a motion that has been made pursuant to Rule 12(b)(6) to dismiss a complaint for failure to state a claim but the Court does not have the benefit of a straightforward complaint to refer to in determining whether a claim has been stated." *Id.* ¶ 8.

The SEC thereafter filed an "Amended" Complaint (Dkt. #46), which is actually the *identical* complaint, which merely deleted the requested relief of disgorgement and civil money penalty and adds a few short paragraphs of anecdotal speech such as press quotes, a reply comment on an Instagram post, and an email devoid of its context. *Id.* ¶¶ 79-85.

**The Amended Complaint's Additional Allegations**

In its only factual departure from the time-barred original Complaint, the Amended Complaint includes several short paragraphs of lawful speech. Specifically, the Amended Complaint attempts to support injunctive relief by alleging that Gentile is engaged or is about to engage in a securities violation by alleging (1) an article based on an interview where Gentile is quoted as saying he "did nothing wrong"; (2) an article in which Gentile is quoted as describing the instant action as a "witch hunt"; and (3) a one-off reply to a random comment on an Instagram post.[2] In addition, the SEC makes four additional allegations, which supposedly suggest Gentile is engaged or about to engage in a securities law violation: that Gentile (1) "has not offered any assurances that he will not violate the securities laws in the future; (2) "maintains an active presence in the securities industry"; (3) "has demonstrated contempt for securities regulators and the importance of enforcement of the securities laws," citing an April 26, 2017

---

[2] The SEC appears here to be relying on an interaction with an anonymous Instagram account "general_bob_lee," which employs a photo mash-up of Osama Bin Laden and George W. Bush as its profile photo and is apparently named for the commander of the southern separatist army.

email to Nancy Brown, an SEC attorney; and (4) "no longer believ[es] that he is being closely supervised by the FBI." Am. Cmplt. ¶¶ 79–84.

      With respect to the email to Ms. Brown, it was sent in frustration after she filed a letter with this Court on April 26, 2017 (in connection with its request to lift a discovery stay), that argued that the SEC's case was not time-barred and represented that "the Commission's Complaint alleges that at least one of Gentile's manipulation and unregistered offering schemes continued into 2010." (Dkt. #18 at pg. 5). In this letter, the SEC also asserted that: "Gentile long ago admitted his guilt for the conduct alleged in this case when he agreed to cooperate with the Government after his arrest in 2012." *Id.*

      These two assertions were patently untrue. The SEC later retracted its false assertion that Gentile's acts continued into 2010. (Dkt. #37.) And its assertion that Gentile had admitted *guilt* is contrary to the undisputed record in this case. Indeed, the SEC supports this statement with a citation to the Government's Memorandum of Law filed in the related criminal case, but nowhere in that brief does the government say Gentile admitted "guilt," rather the AUSA wrote that Gentile "admitted his involvement." (Dkt. #37, Brown Dec. Ex. K.) But as the SEC knows from its review of wiretaps that Gentile initiated as part of his cooperation, during his conversations with lawyer Adam Gottbetter, Gottbetter consistently told Gentile that neither he nor Gentile committed any crimes or did anything wrong because Gottbetter understood the law and knew how to stay inside of it. (16-cr-00155 JLL, US v. Gentile, Dkt. #14 ¶ 6.) The SEC declined to charge Gottbetter with any substantive securities law violation related to the alleged KYUS scheme. (16-cr-00155 JLL, US v. Gentile, Dkt. #14, Ex. E.)

      More significantly, the SEC's assertions to the Court in this regard were based on Gentile's statements from the proffer sessions that he had with the AUSAs, all of which were

made explicitly under the protection of fully executed proffer agreements (Ford Declaration Ex. 1). On their face, these agreements preclude the government from using those statements except in limited circumstances. And the use exceptions certainly did *not* include the SEC (mis)using his purported statements in the letter it sent to the Court.

Gentile sent an email expressing his frustration about the false statements in the SEC's letter. The email read in full:

> Dear Nancy,
>
>> Is this the thanks I get for helping the SEC for over 3 years and putting my life and my families life in danger?
>>
>> You should be ashamed of yourself, lying to a Federal Judge is just Nasty.
>>
>> When I'm done exposing the corruption and your Office's fowl play, you'll be lucking if Starbucks hires you!

(Dkt. #37 Brown Dec. at Ex. V).

The email has been characterized in the Amended Complaint as an indicator that Gentile has "demonstrated contempt for securities regulators and the importance of enforcement of the securities laws." (Am. Cmplt. Dkt.#47 ¶83)  But read in its entirety and in context, it is undeniable that the email is proof of nothing more than Gentile's justifiable frustration with a specific securities regulator's material misrepresentations and improper use of a proffer statement to this Court. That singular email cannot legitimately be used to suggest Gentile has a contempt for either securities regulators in general or the securities laws, let alone that Gentile is likely to violate them. His respect for the securities laws and assurances against knowingly violating them are demonstrated by his three years of full time cooperation with the DOJ and SEC.

Finally, the Amended Complaint alleges that all of Gentile's alleged co-conspirators – whom he cooperated against – have all pleaded guilty and have been appropriately punished. The obvious import of this revision is to notify this Court that others have been punished for the conduct Gentile is alleged to have had some involvement in, and therefore he should also be punished, even if only by way of an obey-the-law injunction and an industry ban.

## ARGUMENT

### I. Legal Standard on Motion to Dismiss

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *SEC v. Kearns*, 691 F. Supp. 2d 601, 608 (D.N.J. 2010) (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)); *accord SEC v. Dubovoy*, No. 15 Civ. 6076, 2016 WL 5745099, at *3 (D.N.J. Sept. 29, 2016). "'While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *SEC v. Kearns*, 691 F. Supp. 2d at 608 (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

While technically the FRCP requires a defendant to plead an affirmative defense based on a statute of limitations in the answer, the Third Circuit permits defendants to raise a statute of limitations defense by a Rule 12(b)(6) motion, if "the time alleged in the statement of claim shows that the cause of action has not been brought within the statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *Smith v. Township of Warren*, 2016 WL 7409952, at *12 (D.N.J. Dec. 22, 2016). In other words, where the statute of limitations bar to bringing the claim is "apparent on the face of the complaint," a court may properly dismiss the claim under Rule 12(b)(6). *Id.*

Courts routinely dismiss cases on statute of limitations grounds on a motion to dismiss where a plaintiff has affirmatively "pleaded himself out of court."  *See, e.g.*, *Handelman v. State of New Jersey*, 2016 WL 3691976, at *6-7 (D.N.J. July 12, 2016) ("Plaintiff has affirmatively pleaded that there are no timely allegations" in the complaint); *Kowalsky v. Deutsche Bank Nat'l Trust Co.*, 2015 WL 5770523, at *6 (D.N.J. Sept. 30, 2015) ("Looking only to the dates in the Complaint and matters of public record, the Court finds that Plaintiff's claims…are facially time barred by the applicable statute of limitations."). In doing so, a court may properly rely on documents that are "integral to or explicitly relied upon in the complaint" or matters of public record without converting the motion to dismiss into a motion for summary judgment. *Schmidt*, 770 F.3d at 249. Indeed, "the justification for the integral documents exceptions is that it is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to his complaint." *Id.* at 250.

## II.   The Complaint Must Be Dismissed Because All Claims Are Barred by the Statute of Limitations Under Section 2462

Because allegations that Gentile's conduct violated the securities laws end in 2008, and the SEC did not file the instant action until March 2016, the Amended Complaint must be dismissed as time-barred under 12 U.S.C. § 2462's five-year statute of limitations.[3]

The obey-the law injunction and penny stock industry bar sought by the SEC in this case are subject to a five-year statute of limitations. Based on its plain language, Section 2462 applies to monetary and non-monetary penalties.  Section 2462 provides:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding
> for the enforcement of any civil fine, *penalty*, or forfeiture, *pecuniary or*

---

[3] Gentile signed six tolling agreements extending the limitations period by a total of two years and 55 days.  Even assuming the validity of the tolling agreements, the SEC had until roughly September 2015 to file a timely complaint.

9

> *otherwise*, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462 (emphasis added).

To be clear, § 2462 places a five-year time limit on *both* pecuniary and non-pecuniary penalties, such as injunctions and industry bars sought by the SEC. By its plain language, Section 2462 applies to "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, *pecuniary or otherwise*." The statute's reach covers non-pecuniary penalties and forfeitures, including injunctions and industry bars because "pecuniary or otherwise" modifies the word "penalty." This is confirmed by reference to the statute's predecessor, Rev. Stat. § 1047, Comp. Stat. 1913, § 1712, which originally imposed a five-year statute of limitations on any "suit or prosecution for a penalty or forfeiture, pecuniary or otherwise…" *See Meeker v. Lehigh Valley R. Co.*, 236 U.S. 412, 423 (1915) ("The words 'penalty or forfeiture' in this section refer to something imposed in a punitive way for an infraction of a public law…"). Even before *Kokesh*, Circuit Courts, including the Tenth Circuit, following Supreme Court precedent, thoroughly analyzed the legislative history and statutory construction of § 2462, setting forth in a detailed analysis why § 2462 clearly applies to non-pecuniary penalties. *United States v. Telluride, Co.*, 146 F.3d 1241, 1245 (10th Cir. 1998) ("Based on this construction, we view 'pecuniary or otherwise' as modifying both the terms penalty and forfeiture.").

Indeed, the Supreme Court in *Kokesh* relied on case law going back nearly 150 years in finding that under § 2462, a "penalty" is a "punishment, *whether corporal or pecuniary*," and whether "*pecuniary or otherwise*." *Kokesh*, 137 S.Ct. at 1642 (emphasis added). Accordingly, the only possible reading of *Kokesh* is that the definition of "penalty" under § 2462 includes non-pecuniary penalties, such as punitive injunctions (and industry bars – which have always been

considered penalties). *See also Johnson v. SEC*, 87 F.3d 484, 488 (D.C. Cir. 1996) (finding Section 2462's definition of penalty includes non-pecuniary penalties based on *Meeker*).

### A.  Obey-the-law injunctions are punitive – at least in part – as a matter of law

In *Kokesh*, the Supreme Court set forth a straightforward two-part test for determining whether relief constitutes a "penalty" under Section 2462, and thus is subject to a five-year statute of limitations. To make the determination, courts must consider: (1) whether the SEC seeks to impose the relief sought "as a consequence of violating a public law"; and (2) whether the relief sought is "imposed for punitive purposes."  *Kokesh*, 137 S.Ct. at 1643.  As *Kokesh* further clarified, injunctions and industry bars must be considered penalties even if the objective is only partly to penalize and partly equitable: "[a] civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment….."  *Kokesh*, 137 S.Ct. at 1645 (emphasis original).  *See also Am. Bus. Ass'n v. Slater*, 231 F.3d 1, 7 (D.C. Cir. 2000) ("[A] penalty [is] any sanction that goes *beyond* remedying the damage caused to the harmed parties by the defendant's action" and "a sanction is a penalty even if only one of its various objectives is to punish wrongful conduct; that is, if it serves *in part* to punish.") (*quoting Austin v. United States*, 509 U.S. 602, 610 (1993)) (emphasis original).

In light of *Kokesh*, and the Supreme Court's earlier decision in *Gabelli v. SEC*, 568 U.S. 442 (2013), any assertion that Section 2462 has no applicability to injunctions is unsupportable, and has been rejected by the two circuit courts to consider the question post-*Kokesh*.  *See Saad v. SEC*, 2017 WL 4557511, at *6 (D.C. Cir. Oct. 13, 2017) (Kavanaugh, J. concurring) ("After the Supreme Court's decision in *Kokesh*, in other words, our precedents characterizing expulsions or suspensions as remedial are no longer good law."); *SEC v. Collyard*, 861 F.3d 760 (8th Cir.

2017) ("Just as disgorgement's 'equitable' label does not exempt it from being a § 2462 'penalty,' inunction's 'equitable' label does not exempt it from being a § 2462 'penalty.'").

*Kokesh* clearly rejected prior district and appellate court decisions that previously held that injunctions are always remedial. *See Kokesh*, 137 S. Ct. at 1644 ("… we have emphasized 'the fact that sanctions frequently serve more than one purpose…A civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term."); s*ee also Johnson*, 87 F.3d at 492 (Section 2462's five-year statute of limitations applies to SEC proceedings which seek to censure and suspend a securities supervisor); *SEC v. Bartek*, 484 Fed. App'x 949, 957 (5th Cir. 2012) ("Based on the severity and permanent nature of the [lifetime ban against the Defendants], the district court did not error [sic] in denying the SEC's request on grounds that the remedies are punitive, and are thus subject to § 2462's time limitations"); *but see Telluride Co.*, 146 F.3d at 1241 (relying on *Meeker,* 236 U.S. 412 (1915), to find that an injunction may constitute a penalty, but that specific injunction which sought solely to "restore only the wetlands damaged by [defendant's] acts to the status quo" was equitable).

Each of the five "claims" alleged in the Amended Complaint seek to enjoin Gentile from violating certain provisions of the securities law, thus plainly satisfying the first *Kokesh* inquiry. With respect to the second inquiry, there too, the relief is being sought for "punitive purposes" as that term is universally understood, *i.e.*, to deter the defendant and the others, and to sanction and impose punitive burdens on the defendant.  There is no allegation in (or plausible reading of) the Amended Complaint that the injunction is intended solely to compensate alleged victims or restore the *status quo ante*. Indeed, the SEC does not actually seek to enjoin Gentile from

specific conduct related to an ongoing, imminent, or even likely securities violation, but rather seeks to punish Gentile through a broad and generic "obey the law" injunctions so as to label him a wrongdoer, curtail his employment opportunities, and remove his due process protections by exposing him to a future contempt charge.

Following the Supreme Court's guidance in *Kokesh*, there can be no question that *such* "obey the law" injunctions are punitive at least in part *as a matter of law*, and thus subject to Section 2462's five year statute of limitations. The Third Circuit has previously recognized the sort of "obey the law" injunctions the SEC seeks here as punitive because they do not actually enjoin specific conduct, but rather aim to deter and punish violations of the law by stripping individuals of the constitutional and procedural rights to defend against SEC allegations of wrongdoing.  As the Third Circuit found in *SEC v. Warren*:

> In effect, the injunction merely requires defendants "to obey the law" in the future when obtaining loans for the purchase of margin securities, a requirement with which they must comply regardless of the injunction. Dissolution of the injunction decree removes the possibility of contempt proceedings in the event of a future violation; the right to prosecute criminally or proceed civilly still exists.

583 F.2d 115, 121 (3d Cir 1978).

Indeed, since "obey the law" injunctions seek to deter securities violations, *Kokesh* expressly places them within the purview of Section 2462, because they are intended at least "in part" to punish.  *See Kokesh*, 137 S. Ct. at 1643 ("Sanctions imposed for the purpose of deterring infractions of public laws are inherently punitive because 'deterrence [is] not [a] legitimate nonpunitive governmental objectiv[e].'") (*quoting Bell v. Wolfish*, 441 U.S. 520, 539, n.20 (1979)); *see also id.* ("Deterrence…has traditionally been viewed as a goal of punishment") (*quoting U.S. v. Bajakajian*, 524 U.S. 321, 329 (1998)). But "obey the law" injunctions, while serving no recognizable "equitable" purpose because the securities statutes themselves already

address the exact conduct being enjoined, go even further in punishing defendants by labeling defendants as wrongdoers, undermining defendants' ability to make a living in their chosen profession, subjecting defendants to potential criminal contempt for alleged securities violations without adequate procedural and constitutional safeguards, and seeking to deter defendants and other individuals from securities violations.

Not surprisingly, "obey the law" injunctions, as opposed to injunctions seeking to restrain specific conduct related to an actual ongoing or imminent securities violation, have for many years been part of the SEC's toolbox of penalties imposed to punish securities laws violators, along with fines, disgorgement, and declaratory judgments. The Supreme Court's recent pronouncements in *Gabelli* and *Kokesh* make clear, however, that the SEC may not bring stale claims against individuals merely by labeling clearly punitive "remedies" as "equitable."[4] These guidelines, combined with the Supreme Court's directive that the relief sought by the SEC that seeks even only "in part" to punish a defendant, make the conclusion unavoidable that "obey the law" injunctions are penalties *as a matter of law*, and thus subject to Section 2462's five year limitations period.

### B.    Penny stock bars are punitive as a matter of law

Unlike injunctions, which pre-*Kokesh* had been found by some courts to be remedial under certain circumstances, courts have consistently held that industry bar injunctions, like the one sought here, are punitive, and, subject to Section 2462's five-year limitations period. S*ee de*

---

[4] Indeed, such a conclusion comports with *Gabelli's* reasoning that statutes of limitation are critical because they set "a fixed date when exposure to the specified Government enforcement efforts ends, advancing the basic policies of all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liability" and because they "promote justice by preventing surprises through the revival of all claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Gabelli*, 133 S. Ct. at 1221.

*la Fuente v. F.D.I.C.*, 332 F.3d 1208, 1219 (9th Cir. 2003) (order seeking removal from banking constitutes a penalty under § 2462 subject to five-year statute of limitations); *Proffitt v. F.D.I.C.*, 200 F.3d 855, 861 (D.C. Cir. 2000) (expulsion of defendant from banking industry constituted civil penalty although it had dual effect of protecting public and punishing defendant as "manifested by the fact that the FDIC did not act for more than six years after Proffitt's misdeeds"); *Johnson v. SEC*, 87 F.3d 484, 491 (D.C. Cir. 1996) (vacating industry suspension under § 2462 because it was not "directed toward correcting or undoing the effects" of defendant's conduct, but that the "putatively civil or regulatory sanction is in actuality a back-door form of punishment…").

*Johnson v. SEC* is instructive here.  There, the court held that "the sanctions imposed by the SEC – censure and a six-month suspension – clearly resemble punishment in the ordinary sense of the word."   87 F.3d at 488.  The *Johnson* court recognized that industry bars have historically been classified as penalties, citing in a footnote the long history of jurisprudence considering the suspension or revocation of a professional license as a penalty.[5] In light of this historical record, the unavoidable conclusion is that "… the term 'penalty,' for the past two centuries, has been commonly used by legislators and courts in describing license suspensions and revocations."  *Id.* at 488 n.6.  *Johnson* noted that "the SEC's bare assertion that 'history and common understanding' support its contrary position simply does not hold true."  *Id.*

The industry bar the SEC currently seeks against Gentile provides no benefit to victims of alleged past securities violations, nor does it purport to do so.  The allegations in the Amended

---

[5] "There is substantial evidence that Congress and the courts have long considered the suspension or revocation of a professional license as a penalty. " *Johnson*, 87 F.3d at 488 n.6 (collecting cases and statutes since 1799 concluding that industry bars are penalties).

Complaint do not plausibly allege that the SEC seeks a penny stock bar to compensate victims, restore the *status quo ante*, or to remedy any past harm, but rather that it seeks the penny stock bar, at least in part, to punish Gentile for conduct allegedly occurring nearly a decade ago. *See Johnson*, 87 F.3d at 491 n.11 ("It is clearly possible for a sanction to be 'remedial' in the sense that its purpose is to protect the public, *yet not be 'remedial' because it imposes punishment going beyond the harm inflicted by the defendant*.") (emphasis added). Without any remedial purpose for imposing an industry bar, it is absolutely clear post-*Kokesh* that industry bars are punitive as a matter of law. Indeed, as Judge Kavanaugh noted in *Saad*, in concurrence:

> My fundamental problem with this line of cases is that the term "remedial" makes little sense when describing the expulsion or suspension of a securities broker. Like other punitive sanctions, expulsion and suspension may deter others and will necessarily deter and prevent the wrongdoer from further wrongdoing. Expulsion and suspension may thereby protect the investing public. But expulsion and suspension do not provide a remedy to the victim. Under any common understanding of the term "remedial," expulsion and suspension of a securities broker are not remedial. Rather, expulsion and suspension are punitive.

*Saad*, 2017 WL 4557511, at *6. This sentiment mimics the public statements made by the SEC that these types of sanctions are intended to punish. Thus, all five claims in the Amended Complaint seeking a penny stock bar are time-barred.

## III.   The SEC is Precluded From Obtaining Equitable Relief on Claims That It Previously Withdrew Admitting They Were Time-Barred as Confirmed by The Concurrent Remedy Doctrine

Claims one through five of the Amended Complaint are identical to claims one through five of the original Complaint, all of which the SEC withdrew as time-barred. It appears that notwithstanding its voluntary withdrawal of all five claims, the SEC now attempts to revive these same claims stemming from the same allegations of factual conduct by styling them as "equitable." Of course, this is improper because Sections 5(a), 5(c), 17(b), and 17(a) of the Securities Act, and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder only have one

statute of limitations – five years. Accordingly, there can be no underlying securities violation of any of these Sections based on alleged conduct from 2008 to support any injunction.

The prohibition on a plaintiff's attempt to plead around statute of limitations by renaming the requested relief as "equitable" when the legal claims are time-barred is well settled. As such, the SEC's demand for injunctive relief would be barred even if the SEC did not already withdraw these claims (admitting they were time-barred) by the concurrent remedy doctrine, which holds that where the underlying legal claims are time barred, courts must decline to grant equitable relief. *See Cope v. Anderson*, 331 U.S. 461, 464 (1947) ("equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy"); *Russell v. Todd*, 309 U.S. 280, 289 (1940) ("when the [equity] jurisdiction of the federal court is concurrent with that of law, or the suit is brought in aid of a legal right, equity will withhold its remedy if the legal right is barred by the local statute of limitations."). The Third Circuit has affirmed this principle in the context of private securities law claims, providing for statutory, as opposed to equitable, remedies. *See Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 356-57 (3d Cir. 1993); *see also Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, 184-85 (3d Cir. 1997) ("when plaintiffs' claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment relief in an independent suit essentially predicated upon the same cause of action.").

Other circuits have extended this doctrine to bar injunctive remedies where no underlying claim remains pursuant to Section 2462's five-year statute of limitations. *See, e.g., Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) ("because the claim for injunctive relief

is connected to the claim for legal relief, the statute of limitations applies to both");[6] *United States v. Luminant Generation Co., LLC*, 2015 WL 5009378, at *7 (N.D. Tex. Aug. 21, 2015) ("because Plaintiff's legal claims are barred by the statute of limitations, its claims for equitable relief are also barred under the concurrent remedies doctrine."); *Nat'l Parks Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 2005 WL 5165704, at *9 (E.D. Tenn. Mar. 11, 2005) ("Because this Court has already determined that plaintiffs' claim for civil penalties is clearly time-barred, the plaintiffs should not be permitted to avoid the statute of limitations by seeking declaratory or injunctive relief."), *rev'd on other grounds and remanded,* 480 F.3d 410 (6th Cir. 2007).

While some courts have concluded that a so-called "government exception" applies to the concurrent remedies doctrine, this exception does not apply here, because the SEC has failed to allege any *ongoing* conduct that violates the securities laws, but rather only alleges recent speech that it apparently disagrees with.[7] Since Gentile is currently in full compliance with the law and has no intention of ever not being so, the SEC need not do anything to bring him into compliance with any law. Moreover, the Supreme Court's decisions in *Gabelli* and *Kokesh* roundly reject the theory that the SEC should have unlimited time in which to act.

---

[6] The SEC, in its earlier sur-reply, *see* Dkt. #42 at 2-3, advances the remarkable position that the Ninth Circuit's decision in *FEC v. Williams* "misconstrued," "incorrectly rephrased," and "incorrectly stated" controlling Supreme Court precedent. The Ninth Circuit, however, was *correct* to place time limits on government action.  Indeed, the *Williams* precedent continues to be followed to this day.  *See, e.g., Glob. Cmty. Monitor v. Mammoth Pac., L.P.*, 230 F. Supp. 3d 1235, 1244 (E.D. Cal. 2017) ("The Ninth Circuit's ruling [in *Williams*] is instructive here, and there is no doubt that the claim for injunctive relief is connected to any claim Plaintiffs could have asserted for legal relief. … Accordingly, 28 U.S.C. § 2462's five-year statute of limitations applies to Plaintiffs' claims for injunctive relief.").

[7] Any attempt by the SEC to punish or otherwise sanction Gentile based on his lawful speech is plainly unconstitutional. *See U.S.* Const. amend I; *see, e.g., Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969) ("A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments. It sweeps within its condemnation speech which our Constitution has immunized from governmental control.").

Consequently, the SEC can no longer evade the application of the concurrent remedy doctrine simply by using "labels" or by opportunistically choosing a remedy. *See, e.g.*, *Nemkov v. O'Hare Chicago Corp.*, 592 F.2d 351, 355 (7th Cir. 1979) ("since the plaintiffs could have sought relief at law, the statute of limitations applied. Equitable jurisdiction is concurrent even though plaintiff chooses to forego damages and to seek only equitable relief. … Therefore, if an action at law for damages would be barred, so too is the action in equity."); *Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1326 (11th Cir. 2007) ("where a party's legal remedies are time-barred, that party's concurrent equitable claims generally are barred under the concurrent remedy doctrine"). As the Supreme Court explained in *Gabelli*, the SEC doesn't need – and shouldn't get – extra years in which to act. *See Gabelli*, 568 U.S. at 451-52. Thus, the concurrent remedy doctrine serves as an apt bar to SEC attempts at disguising its lawsuit as "equitable" merely to try to gain an unlimited time frame in which to act on alleged conduct dating back a decade. Since, as the SEC admits, Section 2462 bars all five claims sought by the SEC against Gentile, the Court should dismiss the concurrent "remedies" that it seeks for the same alleged conduct.

**IV.    The SEC Failed To Allege an Actual and Imminent Violation of the Securities Laws Which is an Essential Predicate to Obtaining Forward-Looking Remedial Injunctive Relief**

The SEC also cannot obtain injunctive relief because it has failed to allege actual and imminent, forward-looking harm requiring protection of an injunction. In its Amended Complaint, the Commission asserts five causes of action and demands injunctive relief as a remedy for Gentile's alleged violation thereof. The SEC cannot, however, obtain such relief because it has not pleaded any ongoing or future conduct that must be enjoined – nor could it.

A mere statutory violation, of course, does not require injunctive relief. *See, e.g.*, *Int'l Union, United Auto. Aerospace & Agr. Implement Workers v. Amerace Corp.*, 740 F. Supp.

19

1072, 1086 (D.N.J. 1990) ("Injunctive relief cannot automatically be granted upon a finding of statutory violation.").  Instead, "[i]njunctive relief is forward-looking."  *Jama Corp. v. Gupta*, 2008 WL 627410, at *2 (M.D. Pa. Mar. 4, 2008).  "To establish standing for a forward-looking injunction, a party must show a threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical."  *Kunkle v. Naugle*, 2015 WL 7756197, at *7 (E.D. Pa. Dec. 2, 2015), *aff'd*, 660 F. App'x 132 (3d Cir. 2016).  *See also, e.g.*, *McCormick v. Kline*, 670 F. App'x 764, 765 (3d Cir. 2016) ("Absent a real and immediate threat of future injury by the defendant, injunctive relief is not an appropriate remedy").

The statutory securities laws track these equitable principles.  In this case, each of the five "claims" for injunctive relief rely on the authority granted to the SEC pursuant to 15 U.S.C. § 77t(b) and 15 U.S.C. § 78u(d)(1).  First, Section 77t(b) permits: "Whenever it shall appear to the Commission that any person *is engaged or about to engage* in any acts or practices which constitute or will constitute a violation of the provisions of this subchapter, or of any rule or regulation prescribed under the authority thereof, the commission may…bring an action…to enjoin such acts of practices…"  (emphasis added).  Similarly, Section 78u(d)(1) permits: "Whenever it shall appear to the Commission that any person *is engaged or is about to engage* in acts or practices constituting a violation of any provision of this chapter, the rules of regulations thereunder….it may…bring an action…to enjoin such acts or practices…"  (emphasis added).[8]

---

[8] *Compare with* 15 U.S.C. § 80b-9 ("Whenever is shall appear to the SEC that any person *has engaged*, is engaged, or is about to engage…") (emphasis added). Had Congress intended to authorize the SEC to seek injunctions for past conduct under the provisions relied upon in this case, clearly it would have included the "has engaged" language – contained in the Advisor's Act – in the Securities Act and Exchange Act.

20

Accordingly, for injunctive relief to survive a motion to dismiss, the SEC must allege that Gentile is engaging in prohibited acts or practices or at least allege facts sufficient to "support any reasonable inference that [he is] about to engage" in prohibited acts or practices "at the time the suit was brought or at the time the injunction was made effective." *See SEC v. Torr*, 87 F.2d 446, 450 (2d Cir. 1937) (reversing grant of injunction under 15 U.S.C. §§ 77t(b) and 78u where defendants were not engaging in prohibited acts and "circumstances fail to support any reasonable inference that they were about to engage in any at the time the suit was brought"); *SEC v. Tourre*, 4 F. Supp. 3d 579, 598 (S.D.N.Y. 2014) (denying SEC request for injunctive relief where four years had elapsed between prohibited conduct, because no reasonable likelihood of future violation); *In re Reserve Fund Secs. & Derivative Litig.*, 2013 WL 5432334, at *22-23 (S.D.N.Y. Sept. 30, 2013) (concluding permanent injunction not warranted where infractions were "isolated occurrences" that had occurred "decades" ago).

As the Supreme Court has explained, "Where the illegal conduct has ceased, the party seeking the injunction bears the burden of proving 'that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Primepoint, L.L.C. v. PrimePay, Inc.*, 401 F. App'x 663, 664 (3d Cir. 2010) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Here, the alleged conduct ceased nine years ago, and all the Amended Complaint alleges is that "Gentile's ongoing involvement in the securities industry will present him with daily opportunities to violate the securities laws again." This *mere possibility* is not concrete or particularized, and therefore not enough. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("…a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of the law."); *SEC v. Monarch*, 608 F.2d 938, 943 (2d Cir. 1979) (finding injunction inappropriate where

judgment entered "more than seven years after the alleged violations, and "[a]t oral argument, the SEC conceded that at no time during those seven years did it attempt to expedite the requested injunctive relief").

Here, the Amended Complaint fails to set forth any facts suggesting that Gentile is engaged or is about to engage in any prohibited conduct at the time the Complaint was filed – 18 months ago, or now.  At best, the Amended Complaint alleges (1) a violation of the securities laws ten years ago, (2) Gentile's speech that the government apparently believes does not show sufficient deference and respect for the government's laws, and (3) an (admittedly ill-advised) email to an SEC staff attorney in response to that attorney writing a letter to the Court containing false statements. These allegations plainly fail to "show a threat of suffering injury in fact that is concrete and particularized" or that "the threat [is] actual and imminent"; rather, they are "conjectural or hypothetical."  The Third Circuit precludes imposing any injunction under these circumstances. *See Kunkle,* 2015 WL 7756197, at *7, *aff'd*, 660 F. App'x 132 (3d Cir. 2016); *McCormick*, 670 F. App'x at 765 ("Absent a real and immediate threat of future injury by the defendant, injunctive relief is not an appropriate remedy").

Moreover, the Amended Complaint concerns alleged penny stock conduct from 2007 to 2008. The relief sought here, an injunction against violating several securities laws not specifically related to the alleged conduct, does not relate in any way to the allegations in the Amended Complaint such that any credible argument could be made that the injunction is purely remedial. Allegations of unspecified future violations of securities laws, because Gentile will supposedly be presented "daily" with the opportunity to violate these unspecified laws, are too vague to suggest plausibly a "cognizant danger of recurrent violation." *SEC v. Wheeler*, 56 F.

Supp. 3d 241, 248 (W.D.N.Y. 2014) ("To issue a permanent injunction against a presumably

law-abiding entity for hypothetical future violations amounts to redundancy with the law.").[9]

Indeed, the SEC filed its complaint against Gentile 18 months ago, and makes no

allegations that Gentile has engaged in any securities laws violation since that time. Any such

allegation that he is about to knowingly and intentionally violate the securities laws as originally

alleged has been disproved by now in any event.

## CONCLUSION

The SEC continues to prosecute this case for the purpose of punishing Gentile – not for

purely remedial purposes. The SEC has repeatedly clawed to try to bring the case within the five

year statute of limitations by any means possible, including, *inter alia,* (a) submitting a letter to

the Court falsely asserting that Gentile's alleged conduct extended until 2010, an allegation the

SEC shortly thereafter acknowledged was false and withdrew; (b) filing an affidavit in support of

the SEC's opposition to Gentile's motion to dismiss stating that no cooperation agreement

existed between Gentile and the SEC in the face of three years of demonstrated cooperation

between Gentile and the SEC pursuant to an oral agreement; (c) improperly using Gentile's

statements proffered by Gentile (pursuant to cooperation agreements with both the DOJ and

---

[9] This court may take judicial notice of the AUSA's acknowledgments in the criminal matter, that at all times during his cooperation Gentile was fully truthful, honest, and law-abiding. This Court can also take judicial notice of the fact that a precondition to Gentile cooperating with the DOJ and SEC for three years was that he first fully and truthfully answer all questioned posed to him by both agencies, and agreed to not violate any laws, securities or otherwise during the time of his cooperation. Consistent with office policy and practice, the government was explicit in its instructions given to Gentile in July 2012 prior to his cooperation that if Gentile provided an untruthful answer to any question asked, or if he violated any laws, including securities, during the time of his cooperation, the cooperation agreement would be off, and he would be immediately prosecuted. His continued cooperation for three years with both the DOJ and SEC, and the AUSA's acknowledgments in front of this Court during the criminal proceedings that he was at all time since his arrest in 2012 he has been honest, truthful, and law abiding are relevant here. As such, the Amended Complaint could also be dismissed as "moot," because there is no "cognizable danger of recurrent violation." *See Primepoint L.L.C.*, 401 F. App'x at 664.

SEC) in violation of his proffer agreement which preclude the use of such statements in this manner; and (d) attempting an end run around the stay imposed by this Court by issuing subpoenas pursuant to a different "investigation" out of the SEC's Miami office – initiated three years ago, around the time Gentile told the government he no longer wanted to cooperate with them (an investigation which continues to this day as the SEC has informed this Court). The questionable conduct by the SEC combined with the good faith and three years of active and successful cooperation that Gentile provided the government, along with its concomitant negative effects on his life including the disintegration of his marriage and eventual divorce, losing his restaurant business, and the negative effects on his mental condition which were more fully described in other filings with this Court, demonstrates that he has suffered significant penalties over these past five years. The SEC's desire to impose more is no longer permitted. Dismissal here is warranted.[10]  For the foregoing reasons, Gentile respectfully requests that this Court dismiss the Amended Complaint in its entirety, with prejudice.

Dated: October 27, 2017

_____

Adam C. Ford, Esq.
Adam Pollock, Esq.
Ford O'Brien LLP
575 Fifth Avenue, 17th Floor
New York, New York 10017
Tel: (212) 858-0040
Email: aford@fordobrien.com
*Attorneys for Defendant Guy Gentile*

---

[10] *See United States v. Rodman*, 519 F.2d 1058, 1059-60 (1st Cir. 1975) (dismissing indictment where defendant "induced to give statements to the SEC" who then failed "to comply with what the district court found to be its agreement").  Gentile's three years of documented cooperation with the SEC, pursuant to an oral cooperation agreement, followed by the SEC's disavowal of any such agreement is the type of conduct that resulted in the dismissal in *Rodman*.