UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

----------------------------------------------------------------------- x

SECURITIES AND EXCHANGE COMMISSION,   :

                                        :

                Plaintiff,           :       16 Civ. 1619 (JLL) (JAD)

                                          :

     -against-                   :

                                          :

GUY GENTILE,                      :

                                          :

                Defendant.      :

----------------------------------------------------------------------- x


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

SECURITIES AND EXCHANGE
COMMISSION
    Nancy A. Brown
    Simona K. Suh
    Jorge G. Tenreiro
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-9145 (Tenreiro)
tenreiroj@sec.gov

Attorneys for Plaintiff

November 17, 2017

## TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................................................... iii

Preliminary Statement .................................................................................................... 1

RELEVANT FACTS........................................................................................................ 2

    A.  Defendant's Participation in the Two Stock Manipulation Schemes........................... 2

        1.  Guy Gentile................................................................................................ 2

        2.  The RVNG Scheme................................................................................... 2

        3.  The KYUS Scheme................................................................................... 4

    B.  The Parallel Criminal Action Against Defendant.................................................. 6

    C.  Since His Work as an FBI Cooperator Ended, Defendant Has Publicly Denied
        Any Wrongdoing, Called Himself a Victim of Government Overreach, and
        Announced Plans to Expand His Securities Industry Involvement............................ 7

    D.  Procedural History of the Instant Action.............................................................. 7

ARGUMENT .................................................................................................................... 8

I.   THE AMENDED COMPLAINT ADEQUATELY STATES A CLAIM FOR RELIEF
    AGAINST DEFENDANT.......................................................................................... 8

    A.  The Amended Complaint Sufficiently Alleges Facts That,
        If Proved, Would Entitle the Commission to Injunctive ...................................... 9

    B.  The Statute of Limitations Defense Cannot Be Resolved on
        Defendant's Motion To Dismiss ...................................................................... 15

    C.  Defendant's Motion to Dismiss Should Be Denied Because
        the Commission Seeks Remedial, Not Punitive, Relief ...................................... 17

    D.  A Penny Stock Bar, Properly Entered, Is Also Remedial Because
        It Seeks to Protect the Investing Public, and the Amended Complaint
        Alleges Facts Sufficient to Warrant the Entry of a Bar ...................................... 21

i

II. THE CONCURRENT REMEDIES DOCTRINE IS INAPPLICABLE ..................................... 24

    A.  Under Controlling Third Circuit Authority, the Concurrent
        Remedies Doctrine Does Not Apply Where the Relief Sought
        at Equity Is Not Available at Law, Even Where Both Prayers
        for Relief Arise from the Same Set of Facts ........................................................... 25

    B.  Even in Those Circuits That Interpret the Doctrine Differently
        from the Third Circuit, Courts Refuse to Apply the Doctrine to
        Bar Equitable Claims Brought by the Government ................................................. 27

CONCLUSION.................................................................................................................. 30

TABLE OF AUTHORITIES

Page

CASES

Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 126 F.3d 178 (3d Cir. 1997) ........................... 26-27

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ...................................................................... 8

Barnes v. Am. Tobacco Co., 161 F.3d 127 (3d Cir. 1998) ............................................ 26

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) .......................................................... 8

Cope v. Anderson, 331 U.S. 461 (1947) ........................................................... 25, 29, 30

Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114 (3d Cir. 2013) .................... 8

De La Fuente II v. FDIC, 332 F.3d 1208 (9th Cir. 2003) ................................................ 16

FEC v. Christian Coalition, 965 F. Supp. 66 (D.D.C. 1997) .......................................... 27

FEC v. Williams, 104 F.3d 237 (9th Cir. 1996) .......................................................... 29

Foodtown v. Sigma Mktg. Sys., Inc., 518 F. Supp. 485 (D.N.J. 1980) ............................... 26-27

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ............................................... 8

Gruca v. U.S. Steel Corp., 495 F.2d 1252 (3d Cir. 1974) ................................. 25-26, 27, 29, 30

In re Reserve Fund Secs. and Deriv. Litig., No. 09 Civ. 4346 (PGG),
    2013 WL 5432334 (S.D.N.Y. Sept. 30, 2013) .................................................... 14

Johnson v. SEC, 87 F.3d 484 (D.C. Cir. 1996) .................................................... 16, 20

Kokesh v. SEC, 137 S. Ct. 1635 (2017) ........................................................ passim

Meadows v. SEC, 119 F.3d 1219 (5th Cir. 1997) ...................................................... 17

Nat'l Parks and Conservation Ass'n, Inc. v. TVA, 2005 WL 5165704
    (E.D. Tenn. Mar. 11, 2005), rev'd and remanded, 480 F.3d 410 (6th Cir. 2007) ................... 28

Nat'l Parks and Conservation Ass'n, Inc. v. TVA, 502 F.3d 1316 (11th Cir. 2007) .................... 28

Nemkov v. O'Hare Chicago Corp., 592 F.2d 351, 355 (7th Cir. 1979) ................................ 28

**Page**

N.J. v. Reliant Energy Mid-Atl. Power Holdings, LLC, No. 07 Civ. 5298,
  2009 WL 3234438 (E.D. Pa. Sept. 30, 2009) ..........................................................26

Proffitt v. FDIC, 200 F.3d 855 (D.C. Cir. 2000) .........................................................16

Riordan v. SEC, 627 F.3d 1230 (D.C. Cir. 2010) ....................................................16-17

Russell v. Todd, 309 U.S. 280 (1940) ......................................................25, 26, 27, 29

Saad v. SEC, 873 F.3d 297 (D.C. Cir. 2017) .................................... 19-20, 22-23

SEC v. Alexander, 115 F. Supp. 3d 1071 (N.D. Cal. 2015) .......................................10

SEC v. Bankosky, 716 F.3d 45 (2d Cir. 2013) ...........................................................23

SEC v. Bartek, 484 F. App'x 949 (5th Cir. 2012) .....................................................16

SEC v. Becker, No. 09 Civ. 5707 (SAS), 2010 WL 2710613 (S.D.N.Y. July 8, 2010) .......................23

SEC v. BIH Corp., No. 10 Civ. 0577, 2014 WL 7499053 (M.D. Fla. Dec. 12, 2014) ...........................13

SEC v. Bonastia, 614 F.2d 908 (3d Cir. 1980) ................................................9, 13, 15, 18

SEC v. Brown, 740 F. Supp. 2d 148 (D.D.C. 2010) ......................................................22

SEC v. Caserta, 75 F. Supp. 2d 79 (E.D.N.Y. 1999) ...................................................22

SEC v. Clay Capital Mgmt., LLC, No. 11 Civ. 5020 (DMC)(JBC),
  2013 WL 5946989 (D.N.J. Nov. 6, 2013) .............................................................12

SEC v. Collyard, 861 F.3d 760 (8th Cir. 2017) ...............................1, 9, 16, 18-19

SEC v. Cole, No. 12 Civ. 8167 (RJS), 2014 WL 4723306 (S.D.N.Y. Sept. 22, 2014),
  aff'd, 661 F. App'x 52 (2d Cir. 2016) ...............................................................23

SEC v. Cooper, 142 F. Supp. 3d 302 (D.N.J. 2015) ....................................................18

SEC v. Desai, 145 F. Supp. 3d 329 (D.N.J. 2015), aff'd, 672 F. App'x 201 (3d Cir. 2016),
  cert. denied Desai v. SEC, 137 S. Ct. 2229 (2017) ...............................................10

SEC v. DiBella, No. 04 Civ. 1342, 2008 WL 6965807 (D. Conn. Mar. 13, 2008),
  aff'd, 587 F.3d 553 (2d Cir. 2009) ...................................................................14

SEC v. Fehn, 97 F.3d 1276 (9th Cir. 1996) ..............................................................13

iv

Page

SEC v. Fisher, No. 07 Civ. 4483, 2008 WL 2062699 (N.D. Ill. May 13, 2008).....................15

SEC v. Gabelli, 653 F.3d 49 (2d Cir. 2011), rev'd on other grounds, 568 U.S. 442 (2013).................15

SEC v. Gallagher, 87 Civ. 3904, 1989 WL 95252 (E.D. Pa. 1989).........................................29

SEC v. Gann, 565 F.3d 932 (5th Cir. 2009)..............................................................................12

SEC v. Geswein, No. 10 Civ. 1235, 2011 WL 4565861 (N.D. Ohio Sept. 29, 2011)...........................15

SEC v. Graham, 823 F.3d 1357 (11th Cir. 2016)..................................................................18-19

SEC v. Gunn, No. 08 Civ. 1013 WL 3359465 (N.D. Tex. Aug. 25, 2010)............................................11

SEC v. Holschuh, 694 F.2d 130 (7th Cir. 1982) ....................................................................11

SEC v. Jammin Java Corp., No. 15 Civ. 8921,
    2017 WL 4286180 (C.D. Cal. Sept. 14, 2017)...................................................................13

SEC v. Johnson, 652 F. Supp. 2d 29 (D.D.C. 2009) ........................................................12-13

SEC v. Johnson, No. 02 Civ. 5490 (GEB), 2004 WL 5561799 (D.N.J. Aug. 27, 2004),
    aff'd in relevant part, 174 F. App'x 111 (3d Cir. 2006) ...................................................21

SEC v. Landberg, 836 F. Supp. 2d 148 (S.D.N.Y. 2011)......................................................15

SEC v. Life Partners Holdings, Inc., 854 F.3d 765 (5th Cir. 2017)......................................13

SEC v. Mapp, No. 16 Civ. 0246, 2017 WL 5177960 (E.D. Tex. Nov. 8, 2017) .....................19

SEC v. Mercury Interactive, LLC, No. 07 Civ. 2822 (RS),
    2008 WL 4544443 (N.D. Cal. Sept. 30, 2008) ................................................................29

SEC v. Monarch, 608 F. 2d 938 (2d Cir. 1979)......................................................................14

SEC v. Northeastern Fin. Corp., 268 F. Supp. 412 (D.N.J. 1967) ...............................14, 29

SEC v. Power, 525 F. Supp. 2d 415 (S.D.N.Y. 2007) ...........................................................15

SEC v. Quinlan, 373 F. App'x 581 (6th Cir. 2010)...........................................................16, 19

SEC v. Radius Capital Corp., No. 11 Civ. 0116,
    2015 WL 1781567 (M.D. Fla. Apr. 20, 2015) ..................................................................12

v

**Page**

*SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993) ........................................................ 17-18

*SEC v. Saltsman*, No. 07 Civ. 4370 (NGG), 2016 WL 4136829 (E.D.N.Y. Aug. 8, 2016) ............ 15, 19

*SEC v. Savino*, No. 01 Civ. 2438 (GBD), 2006 WL 375074 (S.D.N.Y. Feb. 16, 2006)
    aff'd in relevant part, 208 F. App'x 18 (2d Cir. 2006) ........................................ 12

*SEC v. Shapiro*, 494 F.2d 1301 (2d Cir. 1974) ..................................................... 13

*SEC v. Straub*, No. 11 Civ. 9645 (RJS), 2016 WL 5793398 (S.D.N.Y. Sept. 30, 2016) ............. 15, 19

*SEC v. Torr*, 87 F.2d 446 (2d Cir. 1937) ........................................................... 14

*SEC v. Tourre*, 4 F. Supp. 3d 579 (S.D.N.Y. 2014) ................................................. 14

*SEC v. U.S. Environmental, Inc.*, No. 94 Civ. 6608 (PKL),
    2003 WL 21697891 (S.D.N.Y. July 21, 2003), aff'd, 114 F. App'x 426 (2d Cir. 2004) ............... 12

*SEC v. Verdiramo*, 890 F. Supp. 2d 257 (S.D.N.Y. 2011) ..................................... 10-11, 13-14

*SEC v. Warren*, 583 F.2d 115 (3d Cir. 1978) ....................................................... 20

*SEC v. Wey*, 246 F. Supp. 3d 894 (S.D.N.Y. 2017) .............................................. 15, 19

*SEC v. Wyly*, 950 F. Supp. 2d 547 (S.D.N.Y. 2013) ............................................. 15, 20

*Sierra Club v. Duke Energy Ind., Inc.*, No. 08 Civ. 0437,
    2010 WL 3667002 (S.D. Ind. Sept. 20, 2010) ................................................... 28

*Sierra Club v. Okl. Gas and Elec. Co.*, 816 F.3d 666 (10th Cir. 2016) ............................ 28

*Tri-Dam v. Schediwy*, No. 11 Civ. 1141, 2011 WL 6692587 (AWI) (E.D. Cal. Dec. 21, 2011) .......... 29

*United States v. Am. Elec. Power Serv. Corp.*, 136 F. Supp. 2d 808 (S.D. Ohio 2001) .............. 28

*United States v. Banks*, 115 F.3d 916 (11th Cir. 1997) ............................................ 28

*United States v. Halper*, 490 U.S. 435 (1989) .................................................... 20

*United States v. Luminant Generation Co., LLC*, No. 13 Civ. 3236, 2015 WL 5009378
    (N.D. Tex. Aug. 21, 2015), appeal docketed, No. 17-10235 (5th Cir. Mar. 1, 2017) ............... 28

*United States v. Telluride*, 146 F.3d 1241 (10th Cir. 1998) ....................................... 28

vi

Page

United States v. US Steel Corp., 966 F. Supp. 2d 801 (N.D. Ind. 2013)............................28-29

United States v. Whited & Wheless, 246 U.S. 552 (1918) ........................................25

Westinghouse Elec. Corp. v. Franklin, 993 F.2d 349 (3d Cir. 1993)..............................27

**STATUTES AND RULES**

Securities Act of 1933

    Section 5, 15 U.S.C. § 77e.............................................................7

    Section 17(a), 15 U.S.C. § 77q(a)....................................................8

    Section 17(b), 15 U.S.C. § 77q(b)....................................................8

    Section 20(b), 15 U.S.C. § 77t(b)....................................................8

    Section 20(g), 15 U.S.C. § 77t(g)..................................................8, 21

Securities Exchange Act of 1934

    Section 3(a)(51), 15 U.S.C. § 78c(a)(51) ............................................21

        Rule 3a51-1, 17 C.F.R. § 240.3a51-1 .............................................21

    Section 10(b), 15 U.S.C. § 78j(b).....................................................8

        Rule 10b-5, 17 C.F.R. § 240.10b-5................................................8

        Section 21(d)(1), 15 U.S.C. § 78u(d)(1) ..........................................8

        Section 21(d)(5), 15 U.S.C. § 78u(d)(5) ..........................................8

        Section 21(d)(6)(A), 15 U.S.C. § 78u(d)(6)(A).................................8, 21

28 U.S.C. § 2462.......................................................................passim

Fed. R. Civ. P. 12(b)(6) .................................................................8

**OTHER AUTHORITIES**

1 Pomeroy's Equity Jurisprudence §§ 136, 138 (5th ed. 1941) .............................26

<u>Page</u>

H.R. Rep. 98-355, <u>reprinted in</u> 1984 U.S.C.C.A.N. 2274 ......................................................... 17

H.R. Rep. 100-910, <u>reprinted in</u> 1988 U.S.C.C.A.N. 6043 ....................................................... 17

H.R. Rep. 101-617, <u>reprinted in</u> 1990 U.S.C.C.A.N. 1408 ...................................................... 21

S. Rep. 107-205 (2002) ............................................................................................................ 21

Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this Memorandum of Law in opposition to the motion of Defendant Guy Gentile to dismiss the Amended Complaint.

## Preliminary Statement

The Amended Complaint (DE 47 ("Am. Compl.")) details Defendant's participation in two highly profitable unregistered penny stock manipulation, fraudulent promotion, and unlawful distribution schemes that began in 2007. It also includes allegations supporting a finding that there is a reasonable likelihood that, unless enjoined, Defendant will engage in further violations in the future, and, therefore, that an injunction is necessary for the protection of investors.

Defendant does not challenge the sufficiency of the allegations to establish securities fraud and other alleged violations. Rather, he challenges the Court's power to enjoin him, arguing that any injunction here would be punitive and therefore barred by the five year statute of limitations set by 28 U.S.C. § 2462 under the Supreme Court's decision in Kokesh v. SEC, 137 S. Ct. 1635 (2017). But that argument is doomed by the novel and erroneous premise on which it rests: that all injunctions are punitive. As the Eighth Circuit has now confirmed in SEC v. Collyard, 861 F.3d 760 (8th Cir. 2017), nothing in Kokesh supports Defendant's contention, and properly-entered injunctions are not subject to Section 2462's time limits.

Both before and after Kokesh, courts have been uniform in holding that injunctions are not punitive where there is a threat of future violations and public investors need protection. In this Circuit, courts considering Commission-sought injunctions uniformly assess specified evidentiary factors to predict the threat of future misconduct, including the defendant's scienter and acknowledgement of responsibility. Because that assessment cannot be done on the pleadings, Defendant's motion papers include not a single citation to any case in this or any other Circuit that has dismissed a Commission prayer for injunctive relief on the pleadings based on Section 2462.

Defendant's alternative argument that the "concurrent remedies" doctrine forecloses the Commission from seeking injunctive relief is similarly unfounded. Controlling Third Circuit authority rejects the application of the doctrine to cases where, as here, a party seeks equitable relief that procures a different remedy from the legal remedies that it might have pursued. Even where courts in other circuits have entertained the doctrine to bar injunctive claims asserted by private parties, those courts have rejected its application to injunctive relief sought by the Government.

Defendant's Motion to Dismiss the Commission's Amended Complaint on statute of limitations grounds should be denied.[1]

## RELEVANT FACTS

### A.  Defendant's Participation in the Two Stock Manipulation Schemes

#### 1.  Guy Gentile

Defendant Guy Gentile has been the principal of multiple securities-related businesses since prior to 2007. At the time of the conduct alleged in the Amended Complaint, Defendant owned a Commission-registered broker-dealer located in New York State. (Am. Compl. ¶ 14.) In 2011, Defendant founded a Bahamas-based online brokerage firm, a firm he continues to operate and expand. (Id.)

#### 2.  The RVNG Scheme

In 2007, two penny stock promoters, Mike Taxon and Itamar Cohen, invited Defendant to participate in a scheme to manipulate the stock of Raven Gold Corporation ("RVNG"). Defendant, along with Taxon and Cohen, engaged in a fraudulent stock promotion campaign, whereby they manipulated the market to create the false impression of liquidity and active interest in

---

[1] "MTD at ___" refers to citations to Defendant's Memorandum of Law in Support of his Motion to Dismiss, dated October 27, 2017. (DE 50.)

RVNG stock, and then sold their shares into the inflated market in an unregistered and unlawful distribution.  (Id. ¶¶ 25-49.)

To create an attractive – but fake – price and volume history for investors researching the stock, and to disguise their connection to the trading, in June and July 2007, Defendant traded RVNG stock between various brokerage accounts which were held in the names of brokerage firms where he, Taxon, and Cohen had or controlled accounts.  (Id. ¶¶ 2-5, 26-31.)  The three amplified the false appearance of increased liquidity and market interest by offering acquaintances and promoters free blocks of RVNG as kick-backs for open market purchases of the stock.  (Id. ¶ 31.)

Defendant also drove up the price of RVNG stock through the creation and distribution of a false and misleading eight-page glossy "newsletter" touting RVNG stock (the "RVNG Mailer") that was distributed in mid-July 2007.  The RVNG Mailer purported to have been published by "Stock Trend Report," a fictional entity created by Defendant and his collaborators to disguise their involvement, that falsely heralded the company's appearance in various respected news publications, as if it had been the subject of legitimate and independent reporting.  In reality, the only appearance of the stock in publications had been in equally misleading paid advertisements prepared and placed by Defendant and Taxon and Cohen.  (Id. ¶¶ 4, 32-35.)

The RVNG Mailer also touted the stock's performance, citing its "remarkable uptrend so far," and attributing it to the company's strong business prospects.  But it failed to disclose that a substantial portion of the touted market activity consisted of the manipulative trades Defendant and Taxon and Cohen had executed to create an attractive price and volume history.  The mailer also stated that there was "high market demand for RVNG by institutional investors," when no such demand existed.  Defendant knew, or was reckless in not knowing, that all of these materially false and misleading statements were false.  (Id. ¶¶ 4, 36-37.)

Defendant also worked with individuals who controlled RVNG to coordinate the timing and number of press releases issued by the company – thirteen in June and July 2007 – designed to support the fiction that RVNG's business prospects were strong.  (Id. ¶¶ 45-46.)

As a result of these actions, Defendant successfully manipulated the market for RVNG stock.  Prior to May 31, 2007, RVNG traded at prices not exceeding $0.80 per share and with minimal volume.  Starting on May 31, 2007, the daily price and volume of trading went up dramatically, only to decline as soon as the fraudulent promotion was complete.  (Id. ¶ 47.)

Taxon and Cohen have pled guilty to parallel criminal charges arising out of their conduct in the RVNG scheme, and await sentencing.  (Id. ¶¶ 73-74; see also United States v. Taxon, 15 Cr. 249 (JLL) (D.N.J.) (DE 3); United States v. Cohen, 15 Cr. 248 (JLL) (D.N.J.) (DE 3).)

      3.    **The KYUS Scheme**

In the summer of 2007, Defendant was recruited to participate in a second fraudulent stock promotion campaign involving the stock of Kentucky USA Energy, Inc. ("KYUS") by two men who controlled KYUS, Adam S. Gottbetter, a New York microcap securities and transactional lawyer, and his business partner, Samuel DelPresto.[2]  To perpetrate the scheme, Defendant, Taxon, Cohen, Gottbetter and DelPresto bought the KYUS shell company in October 2007, transferring 75% of KYUS's purportedly unrestricted stock to accounts in the names of four brokerage firms of Defendant, Taxon, and Cohen (the "nominee accounts"), and the remaining 25% to Gottbetter and DelPresto.  By using nominee accounts, Defendant again sought to obscure his connection to the stock.  (Am. Compl. ¶¶ 53, 55, 57-59.)

---

[2] Notwithstanding promises in his Motion to Dismiss that Gottbetter will provide exculpatory evidence with respect to the KYUS scheme (MTD at 6), there is no allegation in the Amended Complaint that Gottbetter had any involvement in Defendant's RVNG scheme.

In November 2007, Defendant and Taxon and Cohen began "building the chart" for KYUS stock, i.e., fabricating an attractive price and volume history for the stock. Among other things, Defendant executed trades between the nominee accounts and other accounts he controlled, including those in the names of his family members. He also convinced penny stock traders he knew to buy KYUS stock in the open market. As a result, on many days between late 2007 and May 2008, most, if not all of the market activity in KYUS was generated by accounts controlled by Defendant and his collaborators, creating the false appearance of demand for KYUS stock and gradually inflating its price. (Id. ¶¶ 7, 60-63.)

In or about May 2008, Defendant took the lead role in creating and distributing an eight-page promotional mailer touting KYUS (the "KYUS Mailer"). The KYUS Mailer was distributed under the fake name "Global Investor Watch," and falsely represented that it had been funded by a fictional entity. In fact, Defendant funded the KYUS Mailer with proceeds from selling his and Taxon and Cohen's allotments of KYUS stock. It also pointed to KYUS's seemingly attractive recent stock price history, but did not disclose that it was Defendant's and his collaborators' manipulative trading that produced the positive stock price movement. (Id. ¶¶ 64-65.)

The manipulation and fraudulent promotion of KYUS stock were successful, as the stock price rose and the volume increased after the KYUS Mailer was disseminated. By the end of May 2008, Defendant had sold millions of KYUS shares and, with his assistance, Gottbetter and DelPresto continued selling their KYUS stock through November 2010. (Id. ¶¶ 66-68.)

As part of the parallel criminal actions against them, Taxon and Cohen both pled guilty to their roles in the KYUS schemes. (Id. ¶¶ 73-74.) Gottbetter settled the Commission's charges against him arising from his KYUS scheme participation (among other misconduct) in SEC v. Gottbetter, et al., 15 Civ. 3528 (JLL) (D.N.J.), consenting, without admitting or denying the SEC's

allegations, to the entry of a judgment that permanently enjoined him from future violations of specified federal securities laws, imposed a penny stock bar, and ordered him to pay disgorgement of more than $4 million in unlawful gains. (Am. Compl. ¶ 77.)[3] DelPresto, charged criminally for his role in different pump-and-dump schemes in United States v. DelPresto, 15 Cr. 631 (JLL) (D.N.J.), has entered a plea agreement covering his conduct in the KYUS scheme. (Id. ¶ 78.)

**B.      The Parallel Criminal Action Against Defendant**

The FBI arrested Defendant for his part in the RVNG and KYUS schemes on July 13, 2012. Defendant admitted his involvement and agreed to cooperate with the United States Attorney's Office for the District of New Jersey ("USAO") and the Commission in connection with investigations of other fraudulent penny stock schemes. (Am. Compl. ¶ 71; see also United States v. Gentile, 16 Cr. 155 (JLL) (D.N.J.) (the "Parallel Criminal Action") (DE 19) (Memorandum of Law in Opposition to Defendant Guy Gentile's Motion to Dismiss the Indictment, at 5).) On March 23, 2016, with Defendant unable to persuade the USAO to drop criminal charges against him, and his cooperation at an end, the Grand Jury returned an indictment charging Defendant with various criminal securities law violations arising out of the manipulations of RVNG and KYUS. On January 30, 2017, this Court granted Defendant's motion to dismiss the indictment on statute of limitations grounds. (Am. Compl. ¶ 72.)

---

[3] Gottbetter also pled guilty to criminal charges arising out of his participation in two other pump-and-dump schemes, was sentenced to a prison term of 18 months, one year of supervised release, a $60,000 fine, and ordered to forfeit $344,966.55. (Am. Compl. ¶ 76; see also United States v. Gottbetter, 14 Cr. 467 (JLL) (D.N.J.).)

C.   **Since His Work as an FBI Cooperator Ended, Defendant Has Publicly Denied Any Wrongdoing, Called Himself a Victim of Government Overreach, and Announced Plans to Expand His Securities Industry Involvement**

Following the dismissal of the Parallel Criminal Action, and with FBI oversight at an end, Defendant has made several public pronouncements disclaiming any culpability for his participation in either of the RVNG or KYUS schemes.  For example, in an interview with BloombergBusinessweek about the circumstances that led to Defendant's arrest in 2012, Defendant claimed he "did nothing wrong."  Defendant has also declared on social media platforms that he "never scammed anyone!"  (Am. Compl. ¶ 80.)

Defendant has also boasted of his plans to expand his broker-dealer, announcing plans to increase staff by 60 to 80 employees by year-end 2017, targeting 30 per cent growth, and reactivating "stalled" expansion plans.  In February 2017, Gentile was quoted as predicting that his firm "will be the largest broker dealer in [the Bahamas] within six months."  (Id. ¶¶ 14, 82.)

Defendant has also demonstrated contempt for the regulatory and enforcement authority of the Commission, and called himself the victim of a Commission "witch hunt." (Id. ¶ 80.)  After Commission counsel submitted its April 26, 2017 letter to the Court (DE 18) confirming the Commission's intention to pursue its claims against Defendant, Defendant sent an email to Commission counsel, copying his own attorney as well as members of the press, threatening to render her unable to continue her employment as a lawyer.  (Id. ¶ 83.)

D.   **Procedural History of the Instant Action**

The Commission brought this action on March 23, 2016, the same day as the Parallel Criminal Action was filed. (DE 1.)  Defendant moved to dismiss the Complaint (DE 34), and the Court directed the Commission to file an amended complaint.  (DE 46 at ¶ 10.)  The Commission filed an Amended Complaint on October 6, 2017, charging Defendant with violations of Sections 5,

17(a), and 17(b) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities

Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 thereunder.  The Amended Complaint

seeks an injunction, pursuant to Securities Act Section 20(b) and Exchange Act Section 21(d),

against Defendant's further violations of the charged provisions, and a penny stock bar pursuant to

Securities Act Section 20(g) and Exchange Act Section 21(d)(6)(A).  (Am. Compl. ¶¶ 8-10.)[4]

Defendant renewed his motion to dismiss. (DE 50.)

<u>ARGUMENT</u>

Movants seeking dismissal of a complaint for failure to state a claim under Fed. R. Civ. P.

12(b)(6) bear a heavy burden.  "[T]o survive a motion to dismiss, a complaint merely has to state a

'plausible claim for relief.'"  <u>Covington v. Int'l Ass'n of Approved Basketball Officials</u>, 710 F.3d 114,

118 (3d Cir. 2013) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009)).  "Even post-[<u>Bell Atl. Corp.</u>

<u>v. Twombly</u>, 550 U.S. 544 (2007)], it has been noted that a plaintiff is not required to establish the

elements of a <u>prima facie</u> case but instead, need only put forth allegations that 'raise a reasonable

expectation that discovery will reveal evidence of the necessary element.'"  <u>Fowler v. UPMC</u>

<u>Shadyside</u>, 578 F.3d 203, 213 (3d Cir. 2009) (citation omitted).

I.    **THE AMENDED COMPLAINT ADEQUATELY STATES A CLAIM FOR
RELIEF AGAINST DEFENDANT**

Defendant's Motion to Dismiss is directed not to the sufficiency of the allegations in the

Amended Complaint to state a claim of securities fraud, but to whether the injunctive relief sought is

time-barred by 28 U.S.C. § 2462.  However, since properly entered injunctions are not "penalties"

within the meaning of Section 2462, they are not subject to its five year statute of limitations.  This is

_____

[4] The Commission also seeks the Court's entry of whatever additional relief it deems appropriate and
just (Am. Compl., Prayer for Relief (III)), and pursuant to Section 21(d)(5) of the Exchange Act, the
Court is statutorily empowered to provide "any equitable relief that may be appropriate or necessary
for the benefit of investors."  (<u>See</u> Am. Compl. ¶ 10; 15 U.S.C. § 78u(d)(5).)

apparent from the plain language of Section 2462, from Congress's recognition in the securities laws that injunctions and civil penalties are discrete and independent remedies, and from numerous decisions holding that Section 2462 does not limit a court's authority to issue an injunction to protect the investing public.

Defendant seeks to derive a contrary rule from Kokesh, which held that disgorgement is a penalty for the purposes of Section 2462.  But as the Eighth Circuit explained in Collyard, 861 F.3d at 764, a properly imposed injunction is designed to protect the public, not to punish, and thus is not a "penalty" within the meaning of Section 2462 under Kokesh.  Defendant's remaining arguments about the Commission's entitlement to injunctive relief in this case provide no basis for dismissing the Commission's request for injunctions at the pleading stage.

## A. The Amended Complaint Sufficiently Alleges Facts That, If Proved, Would Entitle the Commission to Injunctive Relief

Under controlling Third Circuit precedent, to determine whether an injunction is appropriate to protect against future harm to investors, the Court must analyze five factual factors:

> [T]he degree of scienter involved on the part of the defendant, the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, the sincerity of his assurances against future violations, and the likelihood, because of defendant's professional occupation, that future violations might occur.

SEC v. Bonastia, 614 F.2d 908, 912 (3d Cir. 1980).  No one factor is determinative.  Id. at 913.[5]

Because the Amended Complaint contains numerous plausible allegations of facts supporting each of the relevant factors that, if established, support a remedial injunction in this case, Defendant's Motion to Dismiss should be denied.

---

[5] Bonastia is the controlling framework for assessing whether to impose injunctions in Commission cases in this Circuit.  Defendant wrongly contends that the Commission must allege "imminent injury," (MTD at 20), a factor that appears nowhere in Bonastia, nor any of the securities cases in this District.

**The degree of scienter involved on the part of the defendant.**  The Complaint alleges that Gentile placed manipulative trades between accounts he controlled (or had others place such trades) to create a false appearance of liquidity, market depth and demand for both RVNG and KYUS.  (Am. Compl. ¶¶ 3, 5, 7, 30-31, 61-63.)  It further alleges that he held the shares in offshore accounts and/or in accounts titled in the names of nominee brokerage firms, to disguise his connection to the trading.  (Id. ¶¶ 28, 59.)[6]  The Complaint also alleges that Gentile authored and published under fake names fraudulent glossy mailers touting each stock's rosy prospects (id. ¶¶ 32-42, 64-65), and, in the case of RVNG, placed paid advertisements containing the same false claims as the mailer in multiple major publications.  (Id. ¶¶ 43-44.)

**The isolated or recurrent nature of the infraction.**  The Complaint alleges two separate manipulative schemes, extending from 2007, when Defendant first joined the RVNG pump and dump scheme, through the 2010 sales of KYUS stock by Gentile's confederate, Gottbetter.  (Id. ¶¶ 25, 68.)  Courts have held that even single schemes, perpetrated over shorter periods of time, satisfy the "recurrent" factor.  E.g., Desai, 145 F. Supp. 3d at 332, 337 (deception of only five investors "between June 2009 and May 2010" in a single scheme); SEC v. Alexander, 115 F. Supp. 3d 1071, 1086 (N.D. Cal. 2015) (single scheme that spanned less than two years and impacted dozens of investors was recurrent, not isolated, conduct).  Even where the defendant participated in only one unregistered offering, involving only 19 sales over a seven month period, a court has

---

[6] Similar evidence of concealment of defendant's fraud while it is ongoing has been held to be sufficient evidence of scienter to establish this factor of the injunction analysis.  E.g., SEC v. Desai, 145 F. Supp. 3d 329, 337 (D.N.J. 2015), aff'd, 672 F. App'x 201 (3d Cir. 2016), cert. denied Desai v. SEC, 137 S. Ct. 2229 (2017) (entering injunction against defendant who had attempted to conceal wrongdoing from investors, and holding that his "effort to mask his violations of federal securities law demonstrates a high degree of scienter").

deemed that the conduct was "not isolated" and "indicate[d] a likelihood of future violations." <u>SEC v. Verdiramo</u>, 890 F. Supp. 2d 257, 275 (S.D.N.Y. 2011).

**The defendant's recognition of the wrongful nature of his conduct and the sincerity of his assurances against future violations.** The Complaint alleges that Defendant, far from recognizing the wrongful nature of his conduct, has publicly denied wrongdoing in connection with the allegations asserted in the Amended Complaint by, for example, telling a <u>BloombergBusinessweek</u> reporter that he "did nothing wrong," by labeling the Commission action a "witch hunt," and by declaring on Instagram "I never scammed anyone!" (Am. Compl. ¶ 80.)[7] The Complaint also alleges that Defendant has not made any assurances that he will not violate the law. (<u>Id.</u> ¶ 81.)

**The likelihood, because of defendant's professional occupation, that future violations might occur.** The Defendant has been employed in the securities industry since prior to his misconduct alleged in this Complaint. (<u>Id.</u> ¶ 14.) He founded a US-based and Commission-registered broker-dealer, to which he maintains an affiliation. (<u>Id.</u>) Today, he is the principal of a Bahamas-based online brokerage firm, opened in 2011. (<u>Id.</u>) His recent public statements indicate that with the dismissal of the Parallel Criminal Action, he intends to redouble his efforts to increase his presence in the industry, including by expanding his broker-dealer and attempting to become the largest such entity in the Bahamas. (<u>Id.</u> ¶¶ 14, 82.)

---

[7] This is in stark contradiction to Defendant's apparent admissions of guilt to the USAO when he was arrested in 2012 and agreed to cooperate (<u>United States v. Gentile</u>, 16 Cr. 155 (JLL) (D.N.J.) (DE 18) (USAO Memorandum of Law in Opposition to Defendant Guy Gentile's Motion to Dismiss the Indictment, Sept. 23, 2016), at 5), and indicates that whatever recognition of wrongdoing Defendant once professed, he has reversed course. Courts view such shifting positions on the facts as meriting an injunction. <u>E.g.</u>, <u>SEC v. Gunn</u>, No. 08 Civ. 1013, 2010 WL 3359465, at *6 (N.D. Tex. Aug. 25, 2010) ("if a defendant is dishonest, exhibits a lack of candor, or offers inconsistent testimony during the course of the action, an injunction is more likely to be warranted") (citing <u>SEC v. Holschuh</u>, 694 F.2d 130, 145 (7th Cir. 1982)).

Courts have not hesitated to enter injunctive relief against securities professionals like Gentile, finding that defendants' current occupation in the industry makes future misconduct more likely. SEC v. Gann, 565 F.3d 932, 940 (5th Cir. 2009) (defendant who had violated the securities laws in trading mutual funds merited an injunction because his continued employment as a stock broker will provide him with "opportunities for future infractions," regardless of his voluntary cessation of mutual fund trading); SEC v. Radius Capital Corp., No. 11 Civ. 0116, 2015 WL 1781567, at *2 (M.D. Fla. Apr. 20, 2015) (defendant's continued employment in real estate industry made his future violations in fraudulent offering of mortgage-backed securities more likely); SEC v. Savino, No. 01 Civ. 2438 (GBD), 2006 WL 375074, at *17 (S.D.N.Y. Feb. 16, 2006) (because the "business of trading in securities is one in which opportunities for dishonesty are of constant recurrence and ever present," defendant's occupation as a licensed securities professional put him in a position to engage in further fraudulent conduct and warranted the imposition of a permanent injunction) (quotations omitted), aff'd in relevant part, 208 F. App'x 18 (2d Cir. 2006); SEC v. U.S. Environmental, Inc., No. 94 Civ. 6608 (PKL), 2003 WL 21697891, at *25 (S.D.N.Y. July 21, 2003) (defendants' continued employment in securities industry contributed to the need for an injunction, given their opportunities to commit further violations), aff'd, 114 F. App'x 426 (2d Cir. 2004). In a more recent case from this district, the court found that the defendant's prior role as a corporate executive – even though he was not currently so employed – provided him with sufficient opportunity to return to the business world and repeat his insider trading and therefore warranted an injunction. SEC v. Clay Capital Mgmt., LLC, No. 11 Civ. 5020 (DMC) (JBC), 2013 WL 5946989, at *5 (D.N.J. Nov. 6, 2013).[8]

---

[8] In assessing this factor, courts are often persuaded that the youth of the defendant adds to the need for an injunction. E.g., SEC v. Johnson, 652 F. Supp. 2d 29, 32 (D.D.C. 2009) (imposing

12

Some courts add a factor to those dictated by <u>Bonastia</u> – the passage of time since the

infraction without further violations – a factor which Defendant highlights in his submission.

(MTD at 21-22.)  But, as the Fifth Circuit held most recently, "cessation of the violations does not

preclude a finding of reasonable likelihood of future violations, as it does not establish a lack of

opportunities for future violations." <u>SEC v. Life Partners Holdings, Inc.</u>, 854 F.3d 765, 784 (5th Cir.

2017); <u>accord</u> <u>SEC v. Fehn</u>, 97 F.3d 1276, 1295 (9th Cir. 1996) ("the fact that the defendant is

currently complying with the securities laws does not preclude an injunction") (quotation omitted);

<u>SEC v. Shapiro</u>, 494 F.2d 1301, 1308 (2d Cir. 1974) ("'first offenders' are not immune from

injunctive relief").  Indeed, courts have held that injunctions are appropriate to prevent future

misconduct even as to defendants who have committed no violations in the interim, particularly

because, as <u>Bonastia</u> makes clear, 614 F.2d at 913, courts look to the totality of the circumstances

with no one factor being determinative.  <u>E.g.</u>, <u>SEC v. Jammin Java Corp.</u>, No. 15 Civ. 8921, 2017

WL 4286180, at *1 (C.D. Cal. Sept. 14, 2017) (imposing injunction even though violation was

defendant's first because other factors indicated that future violations are likely); <u>SEC v. BIH Corp.</u>,

No. 10 Civ. 0577, 2014 WL 7499053, at *3 (M.D. Fla. Dec. 12, 2014) (facts that six years had elapsed

since defendant's violations without further misconduct and that he assured that he would not

commit further violations were outweighed by the nature of his misconduct and refusal "to fully

recognize [its] wrongness"); <u>Verdiramo</u>, 890 F. Supp. 2d at 275-76 (rejecting defendants' claim that

an injunction was unnecessary because the violations occurred years prior with no misconduct in the

interim, and imposing injunctions in light of defendants' failures to acknowledge wrongdoing, the

high level of their scienter, and employment in areas that gave opportunities to commit future

---

injunction, court reasons that since defendant would be only 55-56 years old when released from

prison, "it is certainly possible for him to be involved in other business ventures").

violations); <u>SEC v. Northeastern Fin. Corp.</u>, 268 F. Supp. 412, 416 (D.N.J. 1967) (notwithstanding defendant's claim that he was no longer engaged in violative conduct, an injunction was necessary to prevent further violations given his level of participation in the scheme and desire to return to the securities industry).[9]

And, given that Defendant contends that he was subjected to 24/7 scrutiny by the FBI since his arrest (Am. Compl. ¶ 84), this factor has little significance to a prediction of likely recurrence here. Defendant's "clean record" in the interim is as likely owing to his claimed perception of FBI supervision as anything else. As the Second Circuit noted in <u>Torr</u>, on which Defendant relies (MTD at 21), "it is no sufficient answer to a motion for an injunction that the improper conduct repeated in the past has been discontinued when action to impose legal restraint is known or thought to be in the offing, . . . for the likelihood of a resumption of the acts is a continuing menace." <u>Torr</u>, 87 F.2d at 449-50 (citations omitted).

---

[9] The cases on which Defendant relies are inapposite. (MTD at 21-22.) In none was the defendant's clean record the sole basis for denying injunctive relief. Rather, in each, other factors supported the courts' conclusion that the Commission had not established that future misconduct was likely. <u>See, e.g.</u>, <u>SEC v. Torr</u>, 87 F.2d 446, 450 (2d Cir. 1937) (reversing grant of preliminary injunction where Commission had failed to establish that past conduct had been violative, let alone that future misconduct was likely to occur); <u>SEC v. Tourre</u>, 4 F. Supp. 3d 579, 598 (S.D.N.Y. 2014) (no evidence that defendant continued in the industry or had any intention of returning; court nonetheless retained jurisdiction to consider renewed request for injunction if he did return to the industry); <u>In re Reserve Fund Secs. and Deriv. Litig.</u>, 09 Civ. 4346 (PGG), 2013 WL 5432334, at *23 (S.D.N.Y. Sept. 30, 2013) (finding that defendants were "defunct entities" not reasonably likely to commit future violations); <u>SEC v. DiBella</u>, No. 04 Civ. 1342, 2008 WL 6965807, at *13 (D. Conn. Mar. 13, 2008) (defendant was not regularly employed in the securities industry and conduct occurred in a single scheme in a relatively short period of time), <u>aff'd</u>, 587 F.3d 553 (2d Cir. 2009). In one of the cases Defendant offers, <u>SEC v. Monarch</u>, 608 F. 2d 938, 943 (2d Cir. 1979) (MTD at 21), the court had already determined that the defendant had committed no violations at all, so its <u>dicta</u> on the propriety of injunctive relief had little to do with the defendant's compliance since he was charged.

**B.    The Statute of Limitations Defense Cannot Be Resolved on Defendant's Motion to Dismiss**

The Court cannot grant Defendant's motion to dismiss on statute of limitations grounds

because, in order to do so, the Court would need to make a factual finding that the injunction

sought is not remedial – i.e., that there is no risk of future harm against which it would protect – and

therefore that there is no need for an injunction.

At the motion to dismiss stage, analysis of the <u>Bonastia</u> factors is premature.  <u>SEC v. Gabelli</u>,

653 F.3d 49, 61 (2d Cir. 2011), <u>rev'd on other grounds</u>, 568 U.S. 442 (2013) (holding that it would be

"most unusual" to dismiss a prayer for injunctive relief as time-barred on a motion to dismiss, given

that the determination of the "likelihood of future violations is almost always a fact-specific

inquiry"); <u>SEC v. Wyly</u>, 950 F. Supp. 2d 547, 558 (S.D.N.Y. 2013) (rejecting statute of limitations

claim on summary judgment as premature, ruling "the statute of limitations question merges with

the substantive requirements for obtaining an injunction under the securities laws – if the

substantive claim is viable, then it is, by definition, not subject to a statute of limitations"); <u>SEC v.</u>

<u>Straub</u>, No. 11 Civ. 9645 (RJS), 2016 WL 5793398, at *14-15 (S.D.N.Y. Sept. 30, 2016) (same).[10]

---

[10] <u>Accord</u> <u>SEC v. Wey</u>, 246 F. Supp. 3d 894, 935 (S.D.N.Y. 2017) (refusing to dismiss claim for injunctive relief and noting defendant's failure to cite any authority for dismissing injunctive relief claim at motion to dismiss stage); <u>SEC v. Saltsman</u>, No. 07 Civ. 4370 (NGG), 2016 WL 4136829, at *29 & n.19 (E.D.N.Y. Aug. 2, 2016) (holding that Commission's allegation of recurrence is sufficient to withstand motion to dismiss injunctive relief on statute of limitations grounds); <u>SEC v. Landberg</u>, 836 F. Supp. 2d 148, 158 (S.D.N.Y. 2011) (where complaint "sufficiently pled a reasonable likelihood of recurrence" by alleging repeated and knowing violative conduct, motion to dismiss injunctive relief claim would be denied); <u>SEC v. Fisher</u>, 07 Civ. 4483, 2008 WL 2062699, at *8 (N.D. Ill. May 13, 2008) (ruling defendant's motion to dismiss claims for injunction and officer and director bar on § 2462 grounds premature without benefit of full evidentiary record); <u>SEC v. Power</u>, 525 F. Supp. 2d 415, 427 (S.D.N.Y. 2007) (denying motion to dismiss where Commission alleged likelihood of recurrence by alleging repeated multiple violations over a period of several years and that, unless enjoined, defendant would continue such conduct); <u>cf.</u> <u>SEC v. Geswein</u>, 10 Civ. 1235, 2011 WL 4565861, at *2 (N.D. Ohio Sept. 29, 2011) (denying motion to dismiss injunction claim, holding that "Section 2462 does not apply").

Defendant cites no authority for dismissal of a claim for injunctive relief at this stage of the proceedings.  Instead, he points to cases decided on full evidentiary records – on motions for summary judgment or disposition, or after an evidentiary hearing – that concluded that insufficient evidence of future harm had been established.  See SEC v. Bartek, 484 F. App'x 949, 957 (5th Cir. 2012) (MTD at 12) (affirming grant of summary judgment where there was no evidence that injunction addressed "the prevention of future harm in light of the minimal likelihood of similar conduct in the future"); Johnson v. SEC, 87 F.3d 484, 489 (D.C. Cir. 1996) (MTD at 12, 15) (following administrative evidentiary hearing, reversing cease-and-desist order on grounds that Commission failed to assess risk of harm to investing public); Proffitt v. FDIC, 200 F.3d 855, 859, 861-62 (D.C. Cir. 2000) (MTD at 15) (holding that administrative bar order under banking regulations, entered on summary disposition, was barred by Section 2462 because FDIC focused solely on petitioner's past conduct and had not analyzed petitioner's current risk to the public).[11]

None of these cases supports Defendant's proposition that an injunction is categorically punitive.  See Collyard, 861 F.3d at 764 (reading cases like Bartek as examples of decisions that "conduct fact-intensive analyses to determine whether a particular injunction goes beyond remedying past injuries or preventing present dangers"); SEC v. Quinlan, 373 F. App'x 581, 587 (6th Cir. 2010) (similar).  In other cases these same circuits have concluded that orders like the injunctive relief against future violations requested here are "purely remedial and preventative" and "not a 'penalty.' . . .  They simply require[d] [the defendant] not to violate the relevant securities laws in the future."  Riordan v. SEC, 627 F.3d 1230, 1234-35 (D.C. Cir. 2010) (holding that Section 2462 was

---

[11] Defendant also cites De La Fuente II v. FDIC, 332 F.3d 1208, 1219 (9th Cir. 2003) (MTD at 15). That decision involved the review of an administrative order that banned the respondent from the banking industry after a full evidentiary hearing and not on a motion to dismiss.  And while it apparently accepted, without analysis, the conclusion in Proffitt, id. at 1219, it also remanded the matter for administrative determination of appropriate sanctions.

inapplicable to cease-and-desist order); see also Meadows v. SEC, 119 F.3d 1219, 1228 & n.20 (5th

Cir. 1997) (concluding that cease-and-desist order was not punitive); cf. SEC v. Rind, 991 F.2d 1491-

93 (9th Cir. 1993) (Section 2462 does not apply to SEC injunctive actions).

## C.     Defendant's Motion to Dismiss Should Be Denied Because the Commission Seeks Remedial, Not Punitive, Relief

Section 2462's limitations period does not apply to the injunctive relief the Commission

seeks here.  Indeed, the text of 28 U.S.C. § 2462 makes no reference to injunctions at all.

If Congress had intended Section 2462 to apply to requests for injunctions, it would have

included that additional term in the statute's text.

To the contrary, the history of the securities laws confirms that Congress has always

understood that properly entered injunctions are not penalties within the meaning of Section 2462.

When it first authorized the Commission to obtain civil money penalties in 1984, Congress noted

that the principal remedy available to the Commission until then was "an injunction against further

violations of the securities laws," which serves "only a remedial function and does not penalize a

defendant for the illegal conduct."  H.R. Rep. 98-355 at *7-*8, reprinted in 1984 U.S.C.C.A.N. 2274,

2280-81; accord H.R. Rep. 100-910 at *11, reprinted in 1988 U.S.C.C.A.N. 6043, 6048.

Kokesh's holding that disgorgement is subject to Section 2462 even though the statute does

not mention that remedy does not require a different analysis.  In holding that Section 2462 applies

to disgorgement, the Court in Kokesh noted that this remedy was not explicitly set forth in the

federal securities laws and was developed by courts.  See Kokesh, 137 S. Ct. at 1640.  In contrast,

Congress has indisputably authorized the Commission to seek injunctive relief since its

establishment, and Congress's decision not to "impos[e] an explicit time limit on Commission

enforcement actions" (while subjecting private litigants to multiple statutes of limitations) therefore

"must be interpreted as deliberate" with respect to injunctions.  Rind, 991 F.2d at 1490.

17

Nor can the word "penalty" in Section 2462 be read to include appropriate injunctive relief. As the Third Circuit long ago explained, "[t]he purpose of injunctive relief is not to punish the violator, but to deter him from committing future infractions of the securities laws." Bonastia, 614 F.2d at 912.  In fact, because an injunction by definition cannot be used to punish, it does not make sense (particularly at the pleading stage) to ask whether a request for an injunction is a penalty subject to Section 2462.  A court has no authority to impose a "punitive injunction" regardless of whether it is sought five years, five days, or five minutes after a violation, not because of anything in Section 2462, but because equity does not allow it.

The analysis courts must use before imposing an injunction confirms this long-held understanding.  In that determination, courts "make[] a prediction of the likelihood of future violations based on an assessment of the totality of the circumstances surrounding the particular defendant and the past violations that were committed." Bonastia, 614 F.2d at 912.  Accord SEC v. Cooper, 142 F. Supp. 3d 302, 319 (D.N.J. 2015) (applying Bonastia factors to determine that there was a reasonable likelihood that defendant will violate the securities laws in the future, warranting injunctive relief).  If the Court enters an injunction, it has necessarily predicted the likelihood of future violations and the need to protect the investing public from future harm.

For that very reason, the only post-Kokesh decision to have addressed Section 2462's applicability to injunctions rejected Defendant's position.  In Collyard, the Eighth Circuit held that an injunction, based on "evidence of a likelihood to violate" the law, and sought to protect the public "prospectively from [defendant's] harmful conduct," was remedial and not subject to Section 2462.  Collyard, 861 F.3d at 764.[12]  In so ruling, the court disagreed with Defendant's argument

---

[12] Collyard follows a long line of pre-Kokesh authority that held Section 2462 inapplicable to Commission-sought injunctive relief.  E.g., SEC v. Graham, 823 F.3d 1357, 1362 (11th Cir. 2016) (concluding that although disgorgement is subject to Section 2462, injunctions are not, because

(MTD at 12-13) that an injunction is always punitive because of its deterrent effect.  Indeed, the

Supreme Court's equitable jurisprudence has long held that "the classic description of injunctive

relief" is that "[t]he historic injunctive process was designed to deter, not to punish."  Id. (internal

quotation marks omitted).  Kokesh did not purport to upset this understanding.

> Moreover, the deterrent impact of disgorgement and injunctions differ in key respects:

> [The injunction] is not imposed "for the purpose of punishment" or to "deter others
> from offending in like manner." . . . [T]rue, the injunction will likely deter
> [Defendant].  But the deterrent purpose of SEC disgorgement differs from the
> deterrent effect of this injunction.  First, "[t]he primary purpose of disgorgement
> orders is to deter violations of the securities laws." . . . By contrast, deterrence is an
> "incidental effect" of this injunction, not its primary purpose. . . . Second, SEC
> disgorgement helps to generally "deter <u>others</u> from offending in like manner." <u>See</u>
> [Kokesh], 137 S. Ct. at 1638 (emphasis added). By contrast, this injunction – non-
> pecuniary and requiring only obedience with the law – likely does little to deter
> people other than [defendant].

Collyard, 861 F.3d at 764-65. (citations omitted).  Accord SEC v. Mapp, No. 16 Civ. 0246, 2017 WL

5177960, at *5 & n.3 (E.D. Tex. Nov. 8, 2017) (in denying defendant's motion for summary

judgment urging that the injunction sought was barred by Section 2462, court points to the wealth

of precedent holding injunctions not subject to Section 2462 and to defendant's failure to present

evidence of the "low likelihood that [he] would engage in similar harmful behavior in the future").[13]

---

"injunctions are equitable, forward-looking remedies and not penalties within the meaning of
§ 2462"); Quinlan, 373 F. App'x at 587-88 (based on findings of risk to investing public from risk of
recurrence of wrongful conduct, injunction was remedial, rather than punitive); Wey, 246 F. Supp.
3d at 935 (Section 2462 does not apply to injunctions sought to "protect the public from future
harm") (quotations omitted); Straub, 2016 WL 5793398, at *14 ("if the SEC is entitled to injunctive
relief here, that relief would not be covered by Section 2462"); Saltsman, 2016 WL 4136829, at *29
(because injunctions are "forward looking," they are not penalties subject to Section 2462).

[13] Defendant's reliance on Saad v. SEC, 873 F.3d 297 (D.C. Cir. 2017) (MTD at 11) is misplaced
since that case merely remanded the question of "the relevance – if any – of the Supreme Court's
recent decision in" Kokesh to that respondent's claim that his lifetime FINRA bar was
impermissibly punitive. Id. at 304. Indeed, Judge Millett, writing separately to concur dubitante,
rejected defendants' claim that only sanctions that compensate victims or return the parties to the

That an injunction may have some consequence to Defendant and his reputation does not render the relief punitive, as Defendant insists.  (MTD at 13-14.)  Whether a sanction is punitive is an objective test, "not measured from the subjective perspective of the accused (which would render virtually every sanction a penalty)."  Johnson, 87 F.3d at 488.  The touchstone of injunctive relief is the need to protect public investors from future violations.  Thus, while Defendant might find the sanctions sought here – injunction and penny stock bar – "disagreeable . . . as the Supreme Court has pointed out, 'even remedial sanctions carry the sting of punishment'" from the perspective of the enjoined party.  Id. (quoting United States v. Halper, 490 U.S. 435, 447 n.7 (1989)).  So long as the "primary purpose" of the injunction is not to penalize, but to protect against future harm as it is here, it is not punitive, regardless of the defendant's perception of its punitive effect.  Wyly, 950 F. Supp. 2d at 558.  Nothing in SEC v. Warren, 583 F.2d 115, 121 (3d Cir. 1978) (MTD at 13) – which held that the district court acted within its discretion in vacating a properly entered 10 year old injunction – is to the contrary.  The Warren injunction was vacated based in part on a change in circumstances in the intervening ten years and on the district court's factual finding that there was "very little likelihood" of future violations.  Id. (noting that defendant had committed "a single isolated offense in an esoteric area of the law," the violation "'came more from inadvertence than studied intent,'" and that defendant "voluntarily" "repa[id]" amounts in issue).  In fact, far from determining that Commission-sought injunctions are "punitive," (MTD at 13), the Third Circuit actually confirmed their utility in effecting compliance with the securities laws: "[W]e . . . express our awareness of the importance of injunctions in enforcing the Act, and, in consequence, they are not to be lightly vacated."  Id. at 122.

---

status quo ante are exempt from Section 2462 under Kokesh, as Defendant argues here (MTD at 12).  Saad, 873 F.3d at 311-12.

D.   A Penny Stock Bar, Properly Entered, Is Also Remedial Because It Seeks to Protect the Investing Public, and the Amended Complaint Alleges Facts Sufficient to Warrant Entry of a Bar

Defendant addresses the injunctive relief the Commission seeks in the same breath as the penny stock bar, calling both punitive.  But, like injunctions, properly imposed penny stock bars are intended to protect the investing public from future harm, and are therefore remedial, not punitive.  E.g., SEC v. Johnson, No. 02 Civ. 5490 (GEB), 2004 WL 5561799, at *4 (D.N.J. Aug. 27, 2004) ("In order to protect the investing public from future fraud on the part of Johnson, this Court will permanently prohibit Johnson from offering penny stock."), aff'd in relevant part, 174 F. App'x 111 (3d Cir. 2006).  Congress highlighted that remedial purpose in enacting the penny stock bar, identifying the need to "protect investors from unscrupulous practices in the penny stock market," H.R. Rep. 101-617, reprinted in 1990 U.S.C.C.A.N. 1408, 1428 – an area Congress recognized as rife with "fraud and manipulation of investors."  Id. at 1409.  Thus, Section 20(g)(1) of the Securities Act and Section 21(d)(6)(A) of the Exchange Act now provide:

> In any proceeding . . . against any person participating in, or, at the time of the alleged misconduct who was participating in, an offering of penny stock, the court may prohibit that person from participating in an offering of penny stock, conditionally or unconditionally, and permanently or for such period of time as the court shall determine.

15 U.S.C. § 77t(g)(1), 15 U.S.C. § 78u(d)(6)(A).[14]

---

[14] Congress first provided for the remedy of a penny stock bar as part of the Penny Stock Reform Act of 1990, authorizing the Commission to impose that relief in its administrative proceedings.  See Exchange Act Section 15(b)(6)(A), 15 U.S.C. § 78o(b)(6)(A).  In 2002, as part of the Sarbanes-Oxley Act, Congress expanded the Commission's authority to explicitly permit the Commission to seek the relief in district court proceedings.  See S. Rep. 107-205, at 41 (2002).  The authority to seek penny stock bars in district court proceedings is codified at Securities Act Section 20(g), 15 U.S.C. § 77t(g) and Exchange Act Section 21(d)(6), 15 U.S.C. § 78u(d)(6).  The Amended Complaint alleges that both RVNG and KYUS were "penny stocks," as defined in Section 3(a)(51) of the Exchange Act, 15 U.S.C. § 78c(a)(51), and Rule 3a51-1 thereunder, 17 C.F.R. § 240.3a51-1. (Am. Compl. ¶¶ 15, 16.)

As with injunctions, and again consistent with Congress' understanding, courts have held

that the similar remedy of officer and director bars is remedial and not categorically subject to

Section 2462's statute of limitations. E.g., SEC v. Brown, 740 F. Supp. 2d 148, 157 (D.D.C. 2010)

(denying motion to dismiss on statute of limitations grounds because officer and director bar (and

permanent injunction against future violations) sought not a penalty but remedial relief necessary to

prevent future harm to the public); SEC v. Caserta, 75 F. Supp. 2d 79, 89 (E.D.N.Y. 1999) (denying

defendant's motion to dismiss officer and director bar claims under Section 2462 where plaintiff

may establish that the bar's purpose was to "prevent [defendant] from harming other companies or

the securities market in the future").

Nor does Kokesh's holding provide any reason to disturb this analysis. The bar remedy is

prospective and not pecuniary, making Kokesh's deterrence versus compensating-the-investor

dichotomy inapplicable. And, as with injunctions, there can be no dispute that the principal purpose

of the remedy is to "prevent [defendant] from harming other[s] . . . or the securities market."

Caserta, 75 F. Supp. 2d at 89.[15]

After Kokesh, no court has ruled on whether a penny stock bar is a penalty subject to the

limitations of Section 2462. Defendant points to one of the concurring opinions in Saad, 873 F.3d

at 304, in which Judge Kavanaugh stated his view that an industry bar imposed in an administrative

disciplinary proceeding could be punitive after Kokesh. As Saad makes plain, however, Judge

Kavanaugh's views were his own. Judge Millett, who also wrote separately, expressly disagreed with

Judge Kavanaugh's views. In her estimation, "nothing in Kokesh 'effectively overrules' or

_____

[15] Defendant cites to former Commissioner Aguilar's remarks from 2012, and claims he
"pronounced that an industry bar 'is intended to be' punitive." (MTD at 3.) He did not. See
www.sec.gov/News/Speech/Detail/Speech/1365171491510. Indeed, in that same speech, the
Commissioner emphasized the prospective nature of industry bars: "Bars are an invaluable tool.
One of the most important things that the SEC can do to proactively protect investors and the
market is to make sure that bad actors are prevented from doing future harm."

'eviscerates'" D.C. Circuit precedent holding that industry bars are remedial and not punitive, id. at 310, because "the Supreme Court has ruled time and again that such 'occupational debarment' is a 'nonpunitive' sanction." Id. at 308-09 (collecting cases). Judge Millett further noted that "a disciplinary sanction that is 'purely remedial and preventative' but not compensatory—such as a general order to cease-and-desist violating the securities laws—is 'not a 'penalty' or 'forfeiture' within the meaning of 28 U.S.C. § 2462." Id. at 311 (citation omitted). Accordingly, Saad, at most, leaves the law with respect to the nature of the penny stock bar unchanged.

Moreover, like injunctions, the determination of whether a penny stock bar should be imposed is fact-specific, requiring an analysis of similar factors and cannot be done on a motion to dismiss. These considerations include: "'(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation, and (6) the likelihood that misconduct will recur.'" SEC v. Cole, No. 12 Civ. 8167 (RJS), 2014 WL 4723306, at *7-8 (S.D.N.Y. Sept. 22, 2014), aff'd, 661 F. App'x 52 (2d Cir. 2016) (quoting SEC v. Bankosky, 716 F.3d 45, 48 (2d Cir. 2013) and noting that the factors are the same as those analyzed to assess the propriety of an officer and director bar). With respect to the "recurrence" factor, courts typically review the same factors to predict the likelihood of future misconduct that support the need for a permanent injunction against further violations of the securities laws. E.g., SEC v. Becker, No. 09 Civ. 5707 (SAS), 2010 WL 2710613, at *2 (S.D.N.Y. July 8, 2010) (applying factors and determining that three penny stock offerings made the defendants "repeat offenders," and given that they were in their forties, had spent their careers in the industry, and refused to accept responsibility, they were likely to repeat their violative conduct).

The Amended Complaint pleads facts that support the imposition of a penny stock bar. The Amended Complaint alleges that Defendant played a central role in two separate and highly lucrative pump and dump schemes that involved repeated manipulative trading and the publication and distribution of false and misleading promotional materials. (Am. Compl. ¶¶ 1, 30-44; 49; 60-68.) It alleges that Defendant had a high degree of scienter because he understood that he was engaged in a scheme to artificially inflate both companies' share prices for the purpose of capturing that gain in a massive sell-off (id. ¶¶ 25-28, 57-59), because the manipulative trading was arranged or controlled by him (id. ¶¶ 30-31, 61-63), and because he knew, or was reckless in not knowing, that the promotional materials for each scheme contained false and misleading claims (id. ¶¶ 32-42, 64-65). It alleges that Defendant and his cohorts generated $15 million in gross proceeds from the schemes. (Id. ¶¶ 49, 67.) And it alleges that Defendant is currently presented with daily opportunities to commit further violations of the securities laws given the broker-dealer he runs and his plan to expand its operations. (Id. ¶¶ 14, 82.)

## II.   THE CONCURRENT REMEDIES DOCTRINE IS INAPPLICABLE

Binding Third Circuit precedent makes the concurrent remedies doctrine inapplicable to this case, and Defendant's argument that the Commission is attempting "to plead around statute of limitations by renaming the requested relief as 'equitable'" (MTD at 17) is meritless. The injunctive remedies the Commission seeks are solely available in equity. They are not concurrently available in law and equity. Thus a statute of limitations that bars monetary remedies is inapplicable to simultaneously available injunctive relief.

A.     **Under Controlling Third Circuit Authority, the Concurrent Remedies Doctrine Does Not Apply Where the Relief Sought at Equity Is Not Available at Law, Even Where Both Prayers for Relief Arise from the Same Set of Facts**

When a remedy (like an injunction) is solely available in equity, the court exercises its exclusive equity jurisdiction in awarding such relief irrespective of whether other relief available at law is barred. See Russell v. Todd, 309 U.S. 280, 289 (1940).  "This doctrine, that where there are two remedies for the protection of a right one may be barred and the other not, is no novelty in the law." United States v. Whited & Wheless, 246 U.S. 552, 564 (1918).  As an exception to this general principle, the so-called concurrent remedy rule precludes a court from using its equity jurisdiction to issue legal remedies that are barred by a statute of limitations. See Cope v. Anderson, 331 U.S. 461, 464 (1947) ("equity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy").  The term "concurrent" in Cope relates to the very limited circumstance where equity had jurisdiction – concurrent with a court at law – to award the same remedies at law.  Cope merely held that if a party was barred from obtaining a remedy at law because of a statute of limitations, that party was barred from obtaining that same relief in a court of equity.[16]

As the Third Circuit held in Gruca v. U.S. Steel Corp., 495 F.2d 1252, 1257-58 (3d Cir. 1974), where the complaint seeks an injunction as well as monetary relief, the court does not exercise concurrent jurisdiction in awarding equitable relief:

> [A]lthough plaintiff's demand for legal and equitable relief arises out of the same factual complex, it does not necessarily follows that the jurisdiction of equity is 'concurrent' with that of law, as that word is used in Russell v. Todd.  By seeking to

---

[16] In Cope, the receiver of a failed national bank brought an action in equity for monetary relief, seeking to enforce the assessed liability of the bank's stockholders pursuant to the National Bank Act.  Although the receiver could have brought multiple suits at law against each individual stockholder, he was permitted to bring a single action in equity that consolidated the claims against all of the stockholders. 331 U.S. at 463.  The Court concluded in Cope that this "concurrent" equitable proceeding should not be permitted to proceed because the statute of limitations would bar the same relief if sought in separate legal actions against the individuals. Id. at 464.

rely on the facts giving rise to plaintiff's claim rather than focusing on the nature of the relief sought, defendant's argument misses the mark of the issue before us. Although equity jurisdiction is concurrent with that at law when a remedy is available in both legal and equitable forms, the Supreme Court has made it clear that 'in the federal courts equity has always acted only when legal remedies were inadequate . . .' and 'the expansion of adequate legal remedies provided by the Declaratory Judgment Act and the Federal Rules necessarily affects the scope of equity.' Beacon Theatres, Inc. v. Westover, supra, 359 U.S. at 509, 79 S. Ct. at 956. Here, plaintiff seeks to have his job seniority dates changed. An order to change the dates cannot be achieved by a remedy at law. It requires a decree in equity. Thus, jurisdiction is not concurrent.

Gruca relies on the Supreme Court's decision in Russell v. Todd, 309 U.S. at 289, which explains the rule as grounded in the history of the different remedies available at law and equity: "[W]here the equity jurisdiction is exclusive and is not exercised in aid or support of a legal right, . . . statutes of limitations barring actions at law are inapplicable. . . ." And it is black letter law that equity's exclusive jurisdiction includes remedies "of a kind which are peculiar to equity courts, such as reformation, cancellation, injunction." 1 Pomeroy's Equity Jurisprudence § 136, at 186 and § 138, at 189 (5th ed. 1941). In this case, as in Russell v. Todd, "the equity jurisdiction is exclusive" because the remedy sought – an injunction – is not available at law. The "statutes of limitations barring actions at law are [therefore] inapplicable." 309 U.S. at 289. Accordingly, the Third Circuit rejected the argument Defendant makes here that "since plaintiff's legal and equitable remedies are predicated upon the same factual complex, they are 'concurrent'." Gruca, 495 F.2d at 1257-58.

Courts since Gruca have continued to follow its rule and have repeatedly concluded that equitable and legal remedies are not "concurrent" if they provide for different relief.[17] Algrant v.

---

[17] See, e.g., Barnes v. Am. Tobacco Co., 161 F.3d 127, 151 (3d Cir. 1998) (holding claim for medical monitoring fund was not separate equitable relief, but a claim for "money damages" that was time-barred as a legal remedy); N.J. v. Reliant Energy Mid-Atl. Power Holdings, LLC, No. 07 Civ. 5298, 2009 WL 3234438, at *12 (E.D. Pa. Sept. 30, 2009)(citing Gruca, holding that Section 2462 would not bar claim for injunctive relief because "[e]quity jurisdiction is not concurrent where a legal remedy cannot achieve the purpose sought to be achieved by an equitable remedy"); Foodtown v. Sigma Mktg. Sys., Inc., 518 F. Supp. 485, 490-91 (D.N.J. 1980) (citing Gruca and observing that

26

Evergreen Valley Nurseries Ltd. P'ship, 126 F.3d 178, 184-85 (3d Cir. 1997) (MTD at 17) is consistent with Gruca and offers Defendant no support.  In that case, plaintiffs – obligors on allegedly fraudulently issued notes – attempted to escape a one year statute of limitations by casting their private cause of action as one for a declaratory judgment rather than the time-barred rescission relief otherwise available.  Id. at 181.  As in Gruca, the Court analyzed whether plaintiff's legal remedies were inadequate – that is, whether the requested declaratory judgment would provide relief that the plaintiffs could not have obtained through timely filed rescission claims – and concluded that because both remedies would have relieved the plaintiffs from their obligation to pay back the notes, "plaintiffs' claims could have been resolved by available timely legal remedies."  Id.  On that determination, the Court ruled that the remedies were concurrent and barred plaintiffs' equitable claims for declaratory relief because they were barred by the statute of limitations from obtaining rescission.  Id. at 181-82.[18]

**B.**     **Even in Those Circuits That Interpret the Doctrine Differently from the Third Circuit, Courts Refuse to Apply the Doctrine to Bar Equitable Claims Brought by the Government**

         In seeking to bar the Commission's prayer for injunctive relief on the basis of the concurrent remedies doctrine, Defendant asks this Court to ignore Gruca and its progeny in favor of out-of-

---

plaintiff's equitable claim of unjust enrichment cannot be dismissed based on a statute of limitations applicable to legal claims for monetary relief until the court can properly determine whether the legal and equitable remedies are in fact concurrent, or whether the "equitable relief is needed to make the plaintiff whole"); see also FEC v. Christian Coalition, 965 F. Supp. 66, 70-72 (D.D.C. 1997) (properly construing the principles of Russell, finding that Section 2462 does not bar the government's claim for the equitable remedy of an injunction).

[18] The same is true of Westinghouse Elec. Corp. v. Franklin, 993 F.2d 349, 356-57 (3d Cir. 1993), on which Defendant also relies.  (MTD at 17.)  There, the plaintiffs sought rescission of a purchase of securities, but the Court held that where a statute of limitations existed that governed "similar equitable claims" to rescission, the action for equitable relief would be governed by that same statute.  Id.  The Commission's equitable prayer for injunctive relief here is not similar to any remedy barred by Section 2462.

Circuit authority that interprets the concurrent remedies doctrine differently. (MTD at 17-18.)[19] But even courts in those Circuits have rejected their own broader concurrent remedies rule and held it inapplicable to Government enforcement actions like the Commission's action here.

For example, in United States v. Banks, 115 F.3d 916, 919 (11th Cir. 1997), the court refused to bar the Government's claims for injunctive relief where its claim for civil penalties was barred by Section 2462, holding that under the traditional canon of construction applying limitations periods strictly in favor of the Government, "the concurrent remedy rule cannot properly be invoked against the government when it seeks equitable relief in its official enforcement capacity." Id. The Tenth Circuit concurs. See Sierra Club v. Okl. Gas and Elec. Co., 816 F.3d 666, 676 (10th Cir. 2016) ("[T]he concurrent remedy doctrine does not apply to the government."); United States v. Telluride, 146 F.3d 1241, 1248 (10th Cir. 1998) (the "concurrent remedy rule" does not apply to "a suit by the United States in its governmental capacity"); see also Sierra Club v. Duke Energy Ind., Inc., No. 08 Civ. 0437, 2010 WL 3667002, at * 10, n. 18 (S.D. Ind. Sept. 20, 2010) ("It is well-established that the concurrent remedy doctrine does not apply to suits brought by the United States in its official enforcement capacity.").[20] And Defendant's response to this weight of authority – that the

---

[19] In making his case, Defendant even offers a Texas District Court decision that is currently on appeal. (MTD at 18 citing United States v. Luminant Generation Co., LLC, No. 13 Civ. 3236, 2015 WL 5009378, at *7 (N.D. Tex. Aug. 21, 2015), appeal docketed, No. 17-10235 (5th Cir. Mar. 1, 2017).)

[20] For that reason, alone, Defendant's reliance on Nat'l Parks and Conservation Ass'n, Inc. v. TVA, 2005 WL 5165704 (E.D. Tenn. Mar. 11, 2005), rev'd and remanded, 480 F.3d 410 (6th Cir. 2007) (MTD at 18); Nemkov v. O'Hare Chicago Corp., 592 F.2d 351, 355 (7th Cir. 1979) (MTD at 19), and Nat'l Parks and Conservation Ass'n, Inc. v. TVA, 502 F.3d 1316 (11th Cir. 2007) (MTD at 19) – all cases brought by private plaintiffs – is misplaced. As noted above, the Eleventh Circuit squarely rejected the applicability of concurrent remedies doctrine to government claims in Banks. 115 F.3d at 919. While there is no Circuit-level authority on this issue in the Sixth and Seventh Circuits, district courts there also have recognized the exception to the doctrine for actions brought by the government. E.g., United States v. Am. Elec. Power Serv. Corp., 136 F. Supp. 2d 808, 811 (S.D. Ohio 2001); United States v. US Steel Corp., 966 F. Supp. 2d 801, 814 (N.D. Ind. 2013).

Government must show "ongoing conduct" to avail itself of this rule (MTD at 18) – is unsupported by any citation to legal authority and, as discussed above, would contravene the well-established precedent in this Circuit granting injunctive relief when the nature of the prior violations, and other factors, demonstrate a likelihood of future violations, even where illegal conduct has ceased. SEC v. Gallagher, No. 87 Civ. 3904, 1989 WL 95252, at *10 (E.D. Pa. 1989) ("[C]ourts have recognized that when other factors indicate a likelihood of future violations, an injunction is appropriate even if the defendant ceased illegal activity before the SEC filed suit."); Northeastern Fin. Corp., 268 F. Supp. at 414, 416 (same).

Against this weight of precedent in this Circuit and others, Defendant urges this Court to adopt the Ninth Circuit's singular interpretation of the concurrent remedies doctrine in FEC v. Williams, 104 F.3d 237 (9th Cir. 1996) (MTD at 17-18). But that case is not controlling, relies on a misreading of Supreme Court authority, and has been distinguished by later Ninth Circuit district court decisions on facts similar to those here.[21] Moreover, Williams' holding that "because the claim for injunctive relief is connected to the claim for legal relief, the statute of limitations applies to both," 104 F.3d at 240, was a reading of Cope and Russell explicitly rejected by the Third Circuit in Gruca, 495 F.2d at 1257-58 ("[A]lthough plaintiff's demand for legal and equitable relief arises out of the same factual complex, it does not necessarily follow that the jurisdiction of equity is 'concurrent' with that of law, as that word is used in Russell v. Todd.").

---

[21] See SEC v. Mercury Interactive, LLC, No. 07 Civ. 2822 (RS), 2008 WL 4544443, at *4 (N.D. Cal. Sept. 30, 2008) ("Williams was not an SEC enforcement action, but rather a suit brought by the Federal Election Commission seeking civil penalties and equitable relief for campaign violations."); see also Tri-Dam v. Schediwy, No. 11 Civ. 1141 (AWI), 2011 WL 6692587, at *6 (E.D. Cal. Dec. 21, 2011) (holding that Williams did not bar claim for injunctive relief where plaintiff was not seeking pecuniary relief).

Given the Third Circuit's long-held rule that <u>Cope</u> does not apply to injunctions, and the weight of authority refusing to apply <u>Cope</u>'s principle to enforcement actions, the Court should not use this case as the first to depart from <u>Gruca</u>.

## <u>CONCLUSION</u>[22]

For the reasons set forth above, the Commission respectfully requests that the Court deny Defendant Guy Gentile's motion to dismiss the Complaint.

Dated:        New York, New York
              November 17, 2017


_____
Nancy A. Brown
Simona K. Suh
Jorge G. Tenreiro
SECURITIES AND EXCHANGE
COMMISSION
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-9145 (Tenreiro)
tenreiroj@sec.gov

---

[22] The Commission does not address here Defendant's many unsupported and readily refuted factual assertions, such as when the Miami Regional Office of the Commission initiated its ongoing investigation of Defendant's operation of his broker-dealer, and the scope of that investigation. (<u>See, e.g.</u>, MTD at 6, 23-24.) None of them is appropriately considered on this Motion to Dismiss.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Plaintiff's Memorandum of Law in Opposition to

Defendant's Motion to Dismiss, dated November 17, 2017, to be served on Defendant by emailing

a copy of the same to Defendant's counsel, Adam Ford, at <u>aford@fordobrien.com</u>, this 17th day of

November 2017.

_____
Nancy A. Brown