PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1242
_____

SECURITIES AND EXCHANGE COMMISSION,
Appellant

v.

GUY GENTILE
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:16-cv-01619)
District Judge: Honorable Jose L. Linares
_____

Argued November 6, 2018
Before: HARDIMAN, KRAUSE, and GREENBERG, *Circuit
Judges*.

(Opinion Filed:  September 26, 2019)

Daniel Staroselsky [Argued]
Sarah Prins
United States Securities & Exchange Commission
100 F Street, N.E.

Washington, D.C. 20549
             *Counsel for Appellant*

Adam C. Ford [Argued]
Ford O'Brien LLP
575 Fifth Avenue
17th Floor
New York, NY 10017
             *Counsel for Appellee*

———————

OPINION OF THE COURT

———————

HARDIMAN, *Circuit Judge*.

        A five-year statute of limitations applies to any "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." 28 U.S.C. § 2462. In *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), the Supreme Court held that "[d]isgorgement in the securities-enforcement context" is a "penalty" subject to that five-year limitations period. *Id.* at 1639. At issue in this appeal are two different remedies sought by the SEC: an injunction against further violations of certain securities laws and an injunction barring participation in the penny stock industry. The District Court held that those remedies—like the disgorgement remedy at issue in *Kokesh*—were penalties. We see these questions of first impression differently and hold that because 15 U.S.C. § 78u(d) does not permit the issuance of punitive injunctions, the injunctions at issue do not fall within the reach of § 2462. We will vacate the District Court's order dismissing the Commission's enforcement action and remand the case for the

District Court to decide whether the injunctions sought are permitted under § 78u(d).

I[1]

Appellant Guy Gentile, the owner of an upstate New York broker-dealer, was involved in two pump-and-dump schemes to manipulate penny stocks[2] from 2007 to 2008. In both schemes, Gentile promoted and "manipulated the market for . . . stock by placing trades and trade orders that created the false appearance of liquidity, market depth, and demand for the stock." Am. Compl. ¶ 3, No. 2:16-cv-01619 (D.N.J. Oct. 6, 2017), ECF No. 47 (Complaint); *see id.* ¶ 7.

---

[1] The District Court had jurisdiction under sections 20(b) and 22(a) of the Securities Act (15 U.S.C. §§ 77t(b) and 77v(a)), sections 21(d) and 27 of the Exchange Act (15 U.S.C. §§ 78u(d) and 78aa), and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the District Court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). We accept the Commission's well-pleaded allegations as true, construe them in the light most favorable to the Commission, and draw all reasonable inferences from those allegations in the Commission's favor. *Davis v. Wells Fargo*, 824 F.3d 333, 341, 351 (3d Cir. 2016).

[2] "Penny stocks are low-priced, high-risk equity securities for which there is frequently no well-developed market." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 175 n.14 (3d Cir. 2001), *as amended* (Oct. 16, 2001) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 914 n.1 (3d Cir. 1992)).

The United States Attorney's Office for the District of New Jersey filed a sealed criminal complaint against Gentile in June 2012 and he was arrested a few weeks later. Gentile agreed to cooperate against his confederates, but the deal fell apart in 2016 after the Government rejected Gentile's demand for a non-felony disposition. *United States v. Gentile*, 235 F. Supp. 3d 649, 651 (D.N.J. 2017). A grand jury indicted Gentile, but the District Court dismissed the indictment as untimely. *Id.* at 656.

Gentile "maintains an active presence in the securities industry" as the CEO of a Bahamas-based brokerage and the beneficial owner of a broker-dealer. Compl. ¶ 82. Since his criminal charges were dismissed, he has expressed an intention to expand that brokerage and hire new employees. *Id.* ¶ 14 (alleging Gentile announced plans to "increas[e] staff by 60 to 80 employees by year-end 2017, target[] 30 per cent growth, and reactivat[e] 'stalled' expansion plans"). And he has been quite candid about his view of the Commission's enforcement action. He called it a "witch hunt," and stated in the news and on social media that he "did nothing wrong" and "never scammed anyone." *Id.* ¶ 80.

The Commission disagrees. In this civil enforcement action, filed eight years after Gentile's involvement in the second scheme, it alleges violations of several provisions of the Securities and Exchange Acts.[3] It initially sought: (1) an

---

[3] Section 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a), (c); section 17(b) of the Securities Act, 15 U.S.C. § 77q(b); section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); and section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5.

injunction prohibiting Gentile from violating those provisions in the future; (2) disgorgement of wrongful profits; (3) civil money penalties; and (4) an order barring him from the penny stock industry. Following *Kokesh*, the Commission dropped its requests for disgorgement and penalties. That left only its requests for an "obey-the-law" injunction and a prohibition on Gentile's participation in penny-stock offerings. *SEC v. Gentile*, No. 2:16-cv-01619, 2017 WL 6371301, at *1 (D.N.J. Dec. 13, 2017).

The District Court granted Gentile's motion to dismiss. *Id.* at *4. Applying *Kokesh*, the Court found that the remedies the Commission sought were penalties under § 2462. *Id.* at *3–4. And because Gentile's illegal activity ceased in 2008, *id.* at *1, the Court dismissed the case as untimely.

In holding the obey-the-law injunction was a penalty, the Court first noted that the injunction would not require Gentile to do anything the public at large is not already obliged to do, but it would stigmatize him. Nor would the injunction restore the status quo ante or compensate any victim of Gentile's schemes. Similarly, the Court found the penny stock bar would punish Gentile by "restrict[ing] [his] business structure and methodology, *in perpetuity*," without benefitting any victim or remediating the schemes' effects. *Id.* at *4. Though it "underst[ood] [the Commission's] desire to protect the public from predatory conduct," the Court could not conclude "that, under the limited set of facts currently before it, the requested injunctions are anything more than a penalty." *Id.* The Commission filed this appeal.

II

The default federal statute of limitations requires that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise," be brought within five years of the claim's accrual. 28 U.S.C. § 2462. In *Kokesh*, the Supreme Court held disgorgement, "as it is applied in SEC enforcement proceedings, operates as a penalty under § 2462." 137 S. Ct. at 1645. The Court defined a "penalty" as a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its laws." *Id.* at 1642 (alteration in original) (quoting *Huntington v. Attrill*, 146 U.S. 657, 667 (1892)). The Court's definition of "penalty" was informed by two principles. First, whether a sanction is a penalty turns in part on whether the wrongdoing it targets was perpetrated against the public, rather than an individual. *Id.* Second, "a pecuniary sanction operates as a penalty only if it is sought 'for the purpose of punishment, and to deter others from offending in like manner'—as opposed to compensating a victim for his loss." *Id.* (quoting *Huntington*, 146 U.S. at 668).

The Court held SEC disgorgement "readily" satisfies these criteria because (1) it is imposed for violations of public laws; (2) it is imposed for punitive purposes; and (3) in many cases the disgorged money is not used to compensate victims. *Id.* at 1643–44. The Commission protested that disgorgement sometimes does compensate victims, but the Court was unpersuaded. While "sanctions frequently serve more than one purpose," a "civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." *Id.* at 1645 (quoting *Austin v. United States*, 509 U.S. 602, 610, 621 (1993)).

6

According to Gentile, the Supreme Court's definition of "penalty" applies equally to injunctions prohibiting future lawbreaking and participation in penny stock offerings. There is no question the Commission's action is to enforce what *Kokesh* described as "public laws." *Id.* at 1643; *see SEC v. Teo*, 746 F.3d 90, 101–02 (3d Cir. 2014). So this case turns on whether the remedies the Commission seeks are imposed for punitive reasons.

### III

Both remedies are found in 15 U.S.C. § 78u(d).[4] The Commission's general authority to seek injunctions against ongoing or threatened violations, § 78u(d)(1), states:

> Whenever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this chapter, [or] the rules or regulations thereunder . . . it may in its discretion bring an action in [district court] to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond.

---

[4] The Commission has parallel injunction and penny-stock bar authority under the Securities Act. *See* 15 U.S.C. § 77t(b), (g). Those provisions are materially indistinguishable from the Exchange Act provisions we set forth below, and our analysis applies equally to them.

Section 78u(d)(1) injunctions that simply reference or restate the text of statutory prohibitions are called "obey-the-law" injunctions.

The Commission's authority to seek a penny-stock industry bar is found in § 78u(d)(6)(A):

> In any proceeding under paragraph (1) against any person participating in, or, at the time of the alleged misconduct who was participating in, an offering of penny stock, the court may prohibit that person from participating in an offering of penny stock, conditionally or unconditionally, and permanently or for such period of time as the court shall determine.

Paragraph (6) does not use the word "enjoin" like paragraph (1) does, so first we must determine whether § 78u(d)(6) penny-stock industry bars are a species of injunction. Several considerations convince us they are.

First, take the text. Section 78u(d)(6) authorizes a court to "prohibit" a defendant from participating in penny stock offerings. Just like a typical injunction, this is a judicial order "to refrain from doing a particular thing . . . . which operates as a restraint upon the party in the exercise of his real or supposed rights." 2 Joseph Story, Commentaries on Equity Jurisprudence § 861, at 154 (1836). It is "wholly preventive, prohibitory, or protective," 4 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 1337, at 3206 (4th ed. 1919), and it "directs the conduct of a party . . . with the backing of [the court's] full coercive powers." *Nken v. Holder*, 556 U.S. 418, 428 (2009) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

8

The statute's structure also suggests the penny stock bar is injunctive. It is only "in a[] proceeding [for an injunction under § 78u(d)(1)]" that the statute empowers courts to issue the bar. Consistent with that close relation, courts use similar factors to decide whether to issue both industry bars and obey-the-law injunctions. *See SEC v. Kahlon*, 873 F.3d 500, 506–07 (5th Cir. 2017) (per curiam). *Compare SEC v. Bonastia*, 614 F.2d 908, 912 (3d Cir. 1980), *with SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995). And paragraph (6), like paragraph (1), bespeaks equitable discretion. *See* 15 U.S.C. § 78u(d)(6)(A) ("[T]he court *may* prohibit that person from participating in an offering of penny stock, *conditionally or unconditionally*, and permanently *or for such period of time as the court shall determine*." (emphases added)). Because it can be sought only "[i]n a[] proceeding under paragraph (1)," *id.*, a district court may impose a penny stock bar only "upon a proper showing," *id.* § 78u(d)(1). Thus, like paragraph (1), paragraph (6) contemplates injunctive relief's "nice adjustment and reconciliation between the public interest and private needs," *Aaron v. SEC*, 446 U.S. 680, 701 (1980) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)).

Finally, at least two courts of appeals have acknowledged that these court-ordered industry bars are injunctive. *See Kahlon*, 873 F.3d at 508 (penny stock bar); *Patel*, 61 F.3d at 141 (director-and-officer bar). That makes sense, since courts have also reasoned that the statutory D&O bar authority merely codifies courts' preexisting power to include these bars in injunctions. *See SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 & n.8 (9th Cir. 1998); *SEC v. Posner*, 16 F.3d 520, 521 (2d Cir. 1994). For all these reasons, we hold § 78u(d)(6) penny-stock industry bars are injunctive in nature.

9

IV

We next consider the question whether properly issued and framed § 78u(d)(1) and (6) injunctions can be penalties subject to the statute of limitations. We look first to the equitable principles governing injunctions, before turning to the text and history of the Commission's authority to seek them.

A

The federal courts' equity jurisdiction mirrors that of the High Court of Chancery in England in 1789, when Congress passed the first Judiciary Act. *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318 (1999). This does not mean, however, that equitable relief is strictly a common law matter. Innumerable acts of Congress explicitly provide for injunctions, and courts must account for the policy judgments exemplified by those statutes when exercising their equitable discretion. *See Hecht*, 321 U.S. at 331. But unless Congress clearly states an intention to the contrary, statutory injunctions are governed by the same "established principles" of equity that have developed over centuries of practice. *Weinberger*, 456 U.S. at 313; *see eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Hecht*, 321 U.S. at 329. This clear statement rule applies to regulatory statutes enforced by government agencies. *Hecht*, 321 U.S. at 329–30.

Gentile's argument that SEC injunctions are penalties, even when properly issued and framed, runs headlong into a core tenet of equity jurisprudence. "The historic injunctive process was designed to deter, not to punish." *Hecht*, 321 U.S. at 329. Or as one treatise put it, a court may not by injunction "interfere for purposes of punishment, or . . . compel persons

10

to do right" but may only "prevent them from doing wrong." 1 James L. High, A Treatise on the Law of Injunctions § 1, at 3 (4th ed. 1905). This principle is a corollary to the most basic rule of preventive injunctive relief—that the plaintiff must show a cognizable risk of future harm. *See United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952).

Besides being an element of Article III standing for prospective relief, the need to show risk of harm is also a traditional equitable requirement that applies to enforcement agencies pursuing statutory injunctions. *See United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); Douglas Laycock, Modern American Remedies 278 (4th ed. 2010); Gene R. Shreve, Federal Injunctions and the Public Interest, 51 Geo. Wash. L. Rev. 382, 405 (1983). Unless the agency shows a real threat of future harm, "there is in fact no lawful purpose to be served" by a preventive injunction. *SEC v. Torr*, 87 F.2d 446, 450 (2d Cir. 1937).

In *Kokesh*'s parlance, a preventive injunction unsupported by that showing could not "fairly be said *solely* to serve a remedial purpose," 137 S. Ct. at 1645 (quoting *Austin*, 509 U.S. at 621). *Cf. Conmar Prods. Corp. v. Universal Slide Fastener Co.*, 172 F.2d 150, 155–56 (2d Cir. 1949) (L. Hand, C.J.) (rejecting injunction that would not prevent harm and so "must rest upon the theory that it is a proper penalty for the [defendant's] wrong" because "we can find no support [for the injunction] in principle"). But a properly issued and framed injunction is "fairly" so described, because its "sole function . . . is to forestall future violations." *Or. State Med. Soc'y*, 343 U.S. at 333. We think this prevention principle most sharply distinguishes SEC injunctions from the disgorgement remedy at issue in *Kokesh*. *See SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 103 n.13 (2d Cir. 1978) (Friendly, J.) (holding that

even if the Commission fails "to show the likelihood of recurrence required to justify an injunction," courts may still impose disgorgement); Jayne W. Barnard, The SEC's Suspension and Bar Powers in Perspective, 76 Tul. L. Rev. 1253, 1258 (2002) ("All of these [SEC] injunctions except the disgorgement injunction depend on the government's ability to demonstrate that, in the absence of an injunction, there is a reasonable likelihood of future violations."). In short, injunctions may properly issue only to prevent harm—not to punish the defendant.

B

As we have explained, Congress must provide a clear statement to substantially depart from traditional equitable principles like that one. *See Hecht*, 321 U.S. at 329 ("We cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made."). We perceive no such intent in the text of § 78u(d)(1) and (6). And while this clear statement rule might suffice to decide the case, requiring all injunctions under § 78u(d)(1) and (6) to be preventive and thus bringing them out of the realm of penalties, we are mindful that the *Kokesh* Court analyzed how SEC disgorgement operates in practice.[5] So we also analyze the history and caselaw surrounding these provisions. That analysis reinforces our conclusion but also impels us to

---

[5] The disgorgement remedy addressed in *Kokesh* was not created by statute, *see* 137 S. Ct. at 1640, so there would have been nowhere to look for a clear statement of congressional intent to deviate from traditional equitable principles. *See infra* Part IV(B)(2).

reinforce the parameters within which an SEC injunction is properly issued and framed.

1

Once again, we start with the text. When the Commission believes a person "is engaged or is about to engage" in securities violations, it may bring a suit "to enjoin such acts or practices, and upon a proper showing a permanent or temporary injunction or restraining order shall be granted without bond." 15 U.S.C. § 78u(d)(1). If the suit is against a "person participating in, or, at the time of the alleged misconduct who was participating in, an offering of penny stock" and a "proper showing" has been made as to likelihood of future harm, the court may also "prohibit that person from participating in an offering of penny stock, conditionally or unconditionally, and permanently or for such period of time as the court shall determine." *Id.* § 78u(d)(1), (6)(A).

Nothing in either provision just quoted suggests Congress meant to depart from the rule that injunctions are issued to prevent harm rather than to punish past wrongdoing. Neither provision mentions retribution or general deterrence. *See Kokesh*, 137 S. Ct. at 1645; *cf. Tull v. United States*, 481 U.S. 412, 423 (1987) ("[A provision's] authorization of punishment to further retribution and deterrence clearly evidences that [it] reflects more than a concern to provide equitable relief."). Neither shows an intent—let alone a clear intent—that injunctions should issue automatically on a finding of past violations or without a proper showing of the likelihood of future harm. Each uses open-ended language that suggests traditional equitable discretion. *Compare* 15 U.S.C. § 78u(d)(1) ("[U]pon a proper showing . . . ."), *and id.* § 78u(d)(6)(A) ("[T]he court *may* prohibit that person from

participating in an offering of penny stock, *conditionally or unconditionally, and permanently or for such period of time as the court shall determine*." (emphases added)), *with Hecht*, 321 U.S. at 321–22, 329–30 (holding no clear intent to strip traditional discretion in statute that provided that an injunction or other order "shall be granted" "upon a showing . . . that [the defendant] has engaged or is about to engage in [prohibited] acts or practices"), *and id.* at 327 (noting distinction between "shall be granted" language and statutes, like § 78u(d)(1), that "provide that an injunction or restraining order shall be granted 'upon a proper showing'" (citations omitted)). In sum, "[a]bsent much clearer language than is found in the [Exchange Act], the entitlement of a plaintiff to an injunction thereunder remains subject to principles of equitable discretion." *SEC v. Tex. Gulf Sulphur Co.*, 401 F.2d 833, 868–69 (2d Cir. 1968) (en banc) (Friendly, J., concurring).

2

The history of the Commission's injunction authority leads to the same conclusion. "Prior to the labor injunctions of the late 1800's, injunctions were issued primarily in relatively narrow disputes over property." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 842 (1994) (Scalia, J., concurring). But that changed as more and more conduct came to be regulated by injunction through a rough analogy to public nuisance. *See* Comment, The Statutory Injunction as an Enforcement Weapon of Federal Agencies, 57 Yale L.J. 1023, 1024 n.5 (1948). Securities enforcement injunctions emerged as part of this expansion of American equity jurisprudence into public law enforcement. *See* Daniel J. Morrissey, SEC Injunctions, 68 Tenn. L. Rev. 427, 437–39 (2001).

14

Before Congress created the SEC, states authorized injunctive enforcement of laws that targeted "speculative schemes which have no more basis than so many feet of 'blue sky,'" *Hall v. Geiger-Jones Co.*, 242 U.S. 539, 550 (1917). Part of a new breed of statutory remedy, these injunctions were an extension of traditional equity "even less directly traceable to the remedial devices fashioned by the common law" than previous remedies that had "f[ound] a basic analogy in the common-law right of the state to abate and restrain public nuisances." Note, Statutory Extension of Injunctive Law Enforcement, 45 Harv. L. Rev. 1096, 1097, 1099 (1932). Those predecessor nuisance actions distinguished punishment from prevention. *See Eilenbecker v. Dist. Court of Plymouth Cty.*, 134 U.S. 31, 40 (1890) ("[I]t seems to us to be quite as wise to use the processes of the law and the powers of the court to prevent the evil, as to punish the offence as a crime after it has been committed."), *overruled in part on other grounds by Bloom v. Illinois*, 391 U.S. 194 (1968); *Mugler v. Kansas*, 123 U.S. 623, 672–73 (1887) ("In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction." (quoting 2 Story, *supra*, §§ 921–922)). And while statutory injunctions aimed at fraud on the public were an innovation, they too respected this fundamental distinction.

New York's Martin Act is perhaps the best-known example. That blue sky law empowered the state attorney general to seek information and commence actions in equity or criminal prosecutions. *See Dunham v. Ottinger*, 154 N.E. 298, 300 (N.Y. 1926). Injunction actions were meant to "stop[]" or "prevent" threatened violations, *id.*, while prosecutions were meant to "punish" them. *Id.* Other states sought to use the

injunctive process to "stop" and "suppress" securities fraud. *E.g.*, *Stevens v. Washington Loan Co.*, 152 A. 20, 23 (N.J. Ch. 1930). Then, responding to the 1929 stock market crash and the Great Depression, Congress entered the fray. *See SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 186 (1963). It enacted first the Securities Act of 1933 and then the Securities Exchange Act of 1934, which created the SEC.

At first the Commission had only one arrow in its quiver: injunctions against future violations of the securities laws.[6] *See Kokesh*, 137 S. Ct. at 1640. Much like those authorized by blue sky laws, SEC injunctions were "a classic example of modern utilization of traditional equity jurisdiction for the enforcement of a congressionally declared public policy administered by a regulatory agency established for that purpose." *SEC v. Advance Growth Capital Corp.*, 470 F.2d 40, 53 (7th Cir. 1972). For a time, courts were too quick to issue injunctions on modest showings of threatened harm. *See Commonwealth Chem.*, 574 F.2d at 99 ("It is fair to say that the current judicial attitude toward the issuance of injunctions on the basis of past violations at the SEC's request has become more circumspect than in earlier days."). But spurred by renewed attention to the statute's text and the harsh consequences of SEC injunctions, courts began taking a harder

_____

[6] Decades later, Congress granted the authority to seek penny stock bars. That authority came in 1990 as part of an amendment to the Exchange Act designed "to provide additional enforcement remedies for violations of [the securities] laws and to eliminate abuses in transactions in penny stocks, and for other purposes." Securities Enforcement Remedies and Penny Stock Reform Act of 1990, Pub. L. No. 101-429, 104 Stat. 931, 931 pmbl.

16

look at whether violators posed a real threat of recidivism. *See id.* at 99–100 (collecting cases).

Citing *Commonwealth Chemical* with approval, the Supreme Court said of SEC injunctions that "the proper exercise of equitable discretion is necessary to ensure a 'nice adjustment and reconciliation between the public interest and private needs.'" *Aaron*, 446 U.S. at 701 (quoting *Hecht*, 321 U.S. at 329). To merit an injunction based on threatened harm, "the Commission must establish a sufficient evidentiary predicate to show that such future violation may occur." *Id.* Our Court makes that determination based on factors including not merely the fact of a past violation, but more importantly "the degree of scienter involved [in the past violation], the isolated or recurrent nature of the infraction, the defendant's recognition of the wrongful nature of his conduct, [and] the sincerity of his assurances against future violations." *Bonastia*, 614 F.2d at 912.

Moreover, "in deciding whether to grant injunctive relief, a district court is called upon to assess all those considerations of fairness that have been the traditional concern of equity courts." *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1102 (2d Cir. 1972) (citing *Hecht*, 321 U.S. at 328–30). Those considerations include not only the need to protect the public where the circumstances of the offense and of the offender give rise to a substantial risk of future harm, *Bonastia*, 614 F.2d at 912, but also the stigma, humiliation, and loss of livelihood attendant to the imposition of the two injunctions sought here, whether temporary or permanent. So "the adverse effect of an injunction upon defendants is a factor to be considered by the district court in exercising its discretion." *Manor Nursing Ctrs.*, 458 F.2d at 1102; *see Aaron*, 446 U.S. at 703 (Burger, C.J., concurring) ("An [SEC]

17

injunction is a drastic remedy, not a mild prophylactic, and should not be obtained against one acting in good faith."); *SEC v. Warren*, 583 F.2d 115, 122 (3d Cir. 1978) (weighing hardship to defendant in approving injunction's dissolution). In other words, the harsh effects of an SEC injunction demand that it not be imposed lightly or as a matter of course, that it be imposed only upon a meaningful showing of necessity, and when it is imposed, that it be as short and narrow as reasonably possible.

These principles would be dishonored if courts aimed to inflict hardship instead of tailoring injunctions to minimize it. A preventive injunction must be justified by a substantial showing of threatened harm, assuring the court that the opprobrium and other collateral consequences that accompany it are outweighed by a demonstrated public need; retribution is not a proper consideration to support this showing. *See Hartford-Empire Co. v. United States*, 323 U.S. 386, 433–35 (1945) (striking part of antitrust injunction applicable to directors and officers who, though they "may have rendered themselves liable to prosecution," had not been shown to pose a threat of future violations), *supplemented*, 324 U.S. 570. As the Court of Appeals for the D.C. Circuit aptly explained, "[j]ustifying an injunction, even in part, in terms of propitiating public sentiment, is objectionable as a matter of law." *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1229 (D.C. Cir. 1989). Nor is general deterrence a proper consideration. *See Arthur Lipper Corp. v. SEC*, 547 F.2d 171, 180 n.6 (2d Cir. 1976) (Friendly, J.) (distinguishing "injunctive proceedings, the objective of which is solely to prevent threatened future harm" from administrative sanctions used "not so much to control the respondent as to warn others . . . [which] has a significant

18

'penal' component" (quoting Louis L. Jaffe, Judicial Control of Administrative Action 267–68 (1965))).

And the principle that injunctions may issue only "to prevent threatened future harm," not to punish, *Arthur Lipper*, 547 F.2d at 180 n.6, applies equally to an injunction's scope. *See SEC v. Am. Bd. of Trade, Inc.*, 751 F.2d 529, 542–43 (2d Cir. 1984) (Friendly, J.). Just as it is error to issue an injunction for punishment's sake, it is error to broaden the scope of an injunction because of moral desert or to make an example of the defendant. That principle is implicit in the well-established rule that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff[]." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Indeed, rather than using punishment to *justify* SEC injunctions, courts must shape those injunctions to provide full relief without inflicting unnecessary pain. *See, e.g.*, *Patel*, 61 F.3d at 142 ("The loss of livelihood and the stigma attached to permanent exclusion from the corporate suite certainly requires more."); *Am. Bd. of Trade*, 751 F.2d at 542–43. And courts have consistently explained that SEC injunctions must be intended to deter the violator from further infractions (and thereby protect the public), not punish past misconduct. *See, e.g.*, *Bonastia*, 614 F.2d at 912; *SEC v. Graham*, 823 F.3d 1357, 1361–62 (11th Cir. 2016); *SEC v. Steadman*, 967 F.2d 636, 648 (D.C. Cir. 1992); *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1169 (D.C. Cir. 1978); *SEC v. Geon Indus., Inc.*, 531 F.2d 39, 54–56 (2d Cir. 1976) (Friendly, J.). Because an injunction must be fully supported by threatened harm, we reject Gentile's argument that a properly issued and framed SEC injunction can be a "penalty" as defined by *Kokesh*.

The SEC itself agrees with this approach in principle. In *Saad*, Exchange Act Release No. 86751, 2019 WL 3995968 (Aug. 23, 2019), the Commission was asked to evaluate a disciplinary sanction barring an individual from associating with any FINRA member firm. *Id.* at *1. The Commission observed at the outset that "if a sanction is imposed for punitive purposes as opposed to remedial purposes, the sanction is excessive or oppressive and therefore impermissible." *Id.* at *3. The Commission went on to explain that a reasonable, well-grounded finding that the sanctioned party "posed a clear risk of future misconduct" such that "the bar was . . . necessary to protect investors" was what distinguished an "appropriately-issued FINRA bar[]" from an impermissibly punitive bar. *Id.* at *4 (internal quotation marks and citation omitted). Conversely, "[a] sanction based solely on past misconduct . . . would be impermissibly punitive and thus excessive or oppressive." *Id.* at *5.

That an injunction is permissible only where necessary "to prevent . . . misconduct from occurring in the future," and not merely "to punish past transgressions," *Saad*, 2019 WL 3995968, at *12, is a standard to which the SEC must also hold itself. When it does not, the buck stops here: Lest we return to those days when only a modest showing was considered sufficient, *Commonwealth Chem.*, 574 F.2d at 99, federal courts may not grant SEC injunctions except "upon a proper showing" of the likelihood of future harm.[7]

---

[7] As we explain below, we perceive an important distinction between the statutorily authorized equitable relief at issue here and the administrative sanctions at issue in *Saad*. So we do not think all of the *Saad* Release's reasoning is

Other courts are divided on whether an injunction can
ever be a § 2462 penalty. The Eleventh Circuit, bound by its
precedent, held that injunctions cannot be penalties under
§ 2462 because they are equitable. *Graham*, 823 F.3d at 1360.
It went on to explain that even had that precedent not been
established, it would hold § 2462 "does not apply to
injunctions like the one in [that] case." *Id.* The court reasoned
that injunctive relief is forward looking, while penalties
address past wrongdoing. *See id.* at 1361–62. By contrast, the
Fifth Circuit held in a non-precedential opinion that SEC
injunctions and D&O bars could be—and in that case were—
penalties under § 2462. *SEC v. Bartek*, 484 F. App'x 949, 957
(5th Cir. 2012) (per curiam). The Eighth, Sixth, and Tenth
Circuits declined to say whether injunctions can ever be § 2462
penalties, instead holding the particular injunctions before
them were not punitive. *See SEC v. Collyard*, 861 F.3d 760,
764 (8th Cir. 2017); *SEC v. Quinlan*, 373 F. App'x 581, 587
(6th Cir. 2010) (non-precedential); *United States v. Telluride
Co.*, 146 F.3d 1241, 1245–48 (10th Cir. 1998). The D.C.
Circuit has taken yet another approach in the agency context.
That court evaluates whether an administrative sanction
constitutes a penalty for purposes of § 2462 on a case-by-case
basis, considering "the degree and extent of the consequences

---

applicable to the injunction context. In particular, we do not
believe that, under § 78u(d)(1) or (6), "general deterrence . . .
may be considered as part of the overall remedial inquiry."
*Saad*, 2019 WL 3995968, at *2 (alteration in original) (quoting
*PAZ Sec., Inc. v. SEC*, 494 F.3d 1059, 1066 (D.C. Cir. 2007)).

to the subject of the sanction." *Johnson v. SEC*, 87 F.3d 484, 488 (D.C. Cir. 1996).[8] None of this is inconsistent with our holdings here; these courts simply have not decided the scope of injunctions permitted under § 78u(d).

In our view, the *Graham* court got it right. We have deemed inappropriate an injunction that was the functional equivalent of a monetary penalty. *United States v. EME Homer City Generation, LP*, 727 F.3d 274, 295–96 (3d Cir. 2013) ("Such injunctive cap-and-trade relief is the equivalent of awarding monetary relief and 'could not reasonably be characterized as an injunction.'" (quoting *United States v. Midwest Generation*, 781 F. Supp. 2d 677, 685 (N.D. Ill. 2011))); *see United States v. Luminant Generation Co.*, 905 F.3d 874, 890–91 (5th Cir. 2018) (Elrod, J., concurring in part and dissenting in part) (advocating our Court's approach in *EME Homer City*), *reh'g en banc granted*, 929 F.3d 316 (5th

---

[8] While we agree with the D.C. Circuit that considerations of both purpose and effect are relevant to whether an injunction constitutes a penalty, we believe these considerations bear on the authority of the district court to enter an SEC injunction, not on whether that injunction, while within the court's power to grant, is nonetheless time barred. We question too the consistency and administrability of this approach, which appears to contemplate the imposition of both punitive and remedial injunctions within § 2462's limitations period but of only remedial injunctions outside of it, with the time bar conclusively determined on appeal only after the fact. The approach we espouse today has the virtue of providing clear guidance ex ante by focusing instead on the SEC's authority to seek and the court's authority to impose an injunction under § 78u(d)(1) and (6).

22

Cir. 2019); *cf. Edelman v. Jordan*, 415 U.S. 651, 668 (1974) ("While the Court of Appeals described this retroactive award of monetary relief as a form of 'equitable restitution,' it is in practical effect indistinguishable in many aspects from an award of damages against the State."). A similar principle applies here. Injunctions may not be supported by the desire to punish the defendant or deter others, so courts abuse their discretion when they issue or broaden injunctions for those reasons. We therefore hold SEC injunctions that are properly issued and valid in scope are not penalties and thus are not governed by § 2462. If an injunction cannot be supported by a meaningful showing of actual risk of harm, it must be denied as a matter of equitable discretion—not held time barred by § 2462.

There is one puzzle we feel compelled to address. The *Kokesh* Court held SEC disgorgement is a penalty—despite the maxim that "[a] civil penalty was a type of remedy at common law that could only be enforced in courts of law," *Tull*, 481 U.S. at 421–22; *see Decorative Stone Co. v. Bldg. Trades Council of Westchester Cty.*, 23 F.2d 426, 427–28 (2d Cir. 1928) ("Courts of equity do not award as incidental relief damages penal in character without express statutory authority . . . ."). If SEC disgorgement is both an equitable remedy and a § 2462 penalty, could an injunction be both too?

We think not. First, unlike § 78u(d)(1) and (6) injunctions, SEC disgorgement is not authorized by statute. It has instead been justified as part of courts' "inherent equity power to grant relief ancillary to an injunction." *Kokesh*, 137 S. Ct. at 1640 (quoting *SEC v. Tex. Gulf Sulphur Co.*, 312 F. Supp. 77, 91 (S.D.N.Y. 1970)). Without any textual basis, it is hard to see where the Supreme Court would look for a clear statement of congressional intent to deviate from equitable

23

traditions. Indeed, at the *Kokesh* oral argument several Justices expressed frustration that the lack of statutory text made it hard to define SEC disgorgement. *See* Transcript of Oral Argument at 7–9, 13, 31, 52, *Kokesh*, 137 S. Ct. 1635 (No. 16-529), 2017 WL 1399509.

Second, the *Hecht* admonition—that "[t]he historic injunctive process was designed to deter, not to punish," 321 U.S. at 329—is at the core of preventive injunctive relief. By contrast, *Tull* spoke to equity more broadly. So notwithstanding what *Kokesh* might suggest about equitable relief in general, we do not believe it opens the door to punitive injunctions.

Finally, though the *Kokesh* Court was careful to reserve the issue, *see* 137 S. Ct. at 1642 n.3, we note its skepticism that SEC disgorgement is applied in conformity with traditional equitable principles. *Compare id.* at 1640 ("Generally, disgorgement is a form of '[r]estitution measured by the defendant's wrongful gain.'" (alteration in original) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. a, at 204 (Am. Law Inst. 2010))), *with id.* at 1644 ("[I]t is not clear that disgorgement, as courts have applied it in the SEC enforcement context, simply returns the defendant to the place he would have occupied had he not broken the law. SEC disgorgement sometimes exceeds the profits gained as a result of the violation."). For these reasons, we conclude that proper injunctions do not fall within the definition of penalties as defined in *Kokesh*.

V

Our analysis to this point disposes of most of Gentile's arguments, but a few remain. First, Gentile argues that the

*Hecht* admonition—that "[t]he historic injunctive process was designed to deter, not to punish"—does not apply because it is inconsistent with *Kokesh*'s treatment of § 2462. That is, *Hecht* sets forth a dichotomy—punishment versus deterrence—that is untenable because *Kokesh* holds deterrence is punitive. We think this overreads *Kokesh*. Though the Court referred several times to "deterrence" without elaboration, we understand those references to address general deterrence. *See Kokesh*, 137 S. Ct. at 1642 ("[A] pecuniary sanction operates as a penalty only if it is sought 'for the purpose of punishment, and to deter others from offending in like manner' . . . ." (quoting *Huntington*, 146 U.S. at 668)). Our Court's gloss on *Hecht* reflects this important distinction between restraining the defendant on fear of contempt and making an example of him to deter others. *See Bonastia*, 614 F.2d at 912 (noting that injunctive relief serves "to *deter* [the violator] from committing future infractions of the securities laws," not to "punish" him for past misconduct (emphasis added)). The former is the very point of preventive injunctive relief; the latter is punitive. "When it comes to discerning and applying [traditional equitable] standards . . . 'a page of history is worth a volume of logic.'" *eBay*, 547 U.S. at 395 (Roberts, C.J., concurring) (quoting *N.Y. Tr. Co. v. Eisner*, 256 U.S. 345, 349 (1921)). All the more so here—where Gentile's logic is based on a strained reading of a single word in a case addressing a different remedy.

And unlike in *Kokesh*, there are few signs that courts issue SEC injunctions for general deterrence. True, there are isolated examples. *See, e.g.*, *Posner*, 16 F.3d at 522 ("We intend our affirmance . . . as a sharp warning to those who violate the securities laws that they face precisely such banishment."). But the caselaw in the main reflects the

25

traditional principles we have discussed. We also find it significant that cases prior to *Kokesh* addressing both SEC injunctions and disgorgement often discuss general deterrence only with respect to the latter. *See, e.g.*, *SEC v. Kokesh*, 834 F.3d 1158, 1162–64 (10th Cir. 2016), *rev'd*, 137 S. Ct. 1635; *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474, 1477–78 (2d Cir. 1996); *First City Fin. Corp.*, 890 F.2d at 1228–29, 1231–32; *see also Collyard*, 861 F.3d at 765. What is more, we have explained in an SEC case that "there is no great public or national interest to be served by an injunction in essence against a single individual." *Warren*, 583 F.2d at 121. That would hardly be true if we sought to implement a program of general deterrence through injunctions.

Part of our disagreement with Gentile stems from his focus on the Commission's intent. It may well be that in its zeal for enforcement, the Commission more recently has tended to seek injunctions in part for their general deterrent effect. *See* James D. Cox et al., SEC Enforcement Heuristics: An Empirical Inquiry, 53 Duke L.J. 737, 751 (2003). The impetus may be understandable; after all, SEC enforcement actions are "independent of the claims of individual investors" and are aimed at "promot[ing] economic and social policies." *Teo*, 746 F.3d at 102 (alteration in original) (quoting *SEC v. Rind*, 991 F.2d 1486, 1490 (9th Cir. 1993)); *see* Comment, Federal Agencies, *supra*, at 1048–49. But any tendency in that direction would be at odds with the Commission's own understanding of the limits on its powers, *cf. Saad*, 2019 WL 3995968, at *3–5, *12. And ultimately, rather than probe the agency's rationale for seeking a judicial remedy, we look to the nature of the remedy itself as explained by the courts imposing it. *See Kokesh*, 137 S. Ct. at 1643–44 (analyzing why disgorgement "is imposed by the courts"); *cf. Tull*, 481 U.S. at

26

423 ("Thus, the District Court intended not simply to disgorge profits but also to impose punishment.").

Second, Gentile argues that because obey-the-law injunctions require mere compliance with preexisting obligations, they must be punitive. Citing *Bonastia*, the Commission responds that "injunctions that track the statutory language charged in a complaint are permissible in this Circuit." SEC Br. 30 n.5. Gentile's argument has some force to the extent that obey-the-law injunctions pose a risk of overbreadth, lack of fair notice, unmanageability, and noncompliance with Federal Rule of Civil Procedure 65(d). *See Graham*, 823 F.3d at 1362 n.2 (collecting cases); *SEC v. Smyth*, 420 F.3d 1225, 1233 n.14 (11th Cir. 2005) (collecting cases); *Savoy*, 665 F.2d at 1318; *United States v. Corn*, 836 F.2d 889, 892 & n.6 (5th Cir. 1988); Laycock, *supra*, at 274–75. So in some cases—and perhaps in this one—an obey-the-law injunction will add little if anything to the sanctions already in place. There has been and continues to be "a difference of opinion as to whether as a general proposition injunctions to 'obey the law' should be issued in order that enforcement by administrative agencies may be sought by contempt rather than by the statutory route." *SEC v. Thermodynamics, Inc.*, 464 F.2d 457, 461 (10th Cir. 1972).

But Gentile has not asked us to hold obey-the-law injunctions impermissible—he argues only that they are subject to the § 2462 statute of limitations. So we note only that the appropriate scope of an injunction against further lawbreaking depends on the facts and circumstances of each case. Courts should make this determination on a developed record, *SEC v. Gabelli*, 653 F.3d 49, 61 (2d Cir. 2011), *rev'd on other grounds*, 568 U.S. 442 (2013), assuming the plaintiff has stated a plausible claim for relief, *see EME Homer City*

27

*Generation*, 727 F.3d at 295–96 (affirming dismissal of claims for improper injunctive relief). It is true that in *Bonastia* we reversed the district court's refusal to grant an obey-the-law injunction. *See* 614 F.2d at 910–11. We have also struck overbroad language enjoining parties to obey the law. *See Belitskus v. Pizzingrilli*, 343 F.3d 632, 650 (3d Cir. 2003) (citing *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals, Inc.*, 913 F.2d 64, 83 (3d Cir. 1990), and *Warren*, 583 F.2d at 121). The "degree of particularity required of an injunction depends on the subject matter involved." *Pub. Interest Research Grp.*, 913 F.2d at 83 (quoting *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987)). Ultimately, "[t]he district courts are invested with discretion to model their orders to fit the exigencies of the particular case, and have the power to enjoin related unlawful acts which may fairly be anticipated from the defendants' conduct in the past, but a decree cannot enjoin conduct about which there has been no complaint." *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1180 (3d Cir. 1976) (footnotes omitted); *see NLRB v. Express Publ'g. Co.*, 312 U.S. 426, 435–37 (1941).

We stress that the District Court, on remand, should not rubber-stamp the Commission's request for an obey-the-law injunction simply because it has been historically permitted to do so by various courts. After all, *Bonastia* was decided almost 40 years ago, when the landscape for SEC enforcement actions was significantly different than today's. *See Kokesh*, 137 S. Ct. at 1640. Indeed, Congress did not enact the penny-stock bar until ten years later. If the District Court, after weighing the facts and circumstances of this case as alleged or otherwise, concludes that the obey-the-law injunction sought here serves no preventive purpose, or is not carefully tailored to enjoin

only that conduct necessary to prevent a future harm, then it should, and must, reject the Commission's request. We note that the District Court has already addressed some of the relevant concerns involved in its opinion. We are also troubled by the fact that the Commission appears to seek two injunctions that attempt to achieve the same result.

Third, Gentile argues the penny stock bar is punitive because it "provides no benefit to victims of alleged past securities violations, nor does it purport to do so." Gentile Br. 27. In making this argument, he tacitly agrees with us that § 78u(d)(6) penny stock bars are injunctive in nature. But then he cites a series of cases that involve administrative suspensions and debarments, not court-ordered injunctive relief. *See De La Fuente v. FDIC*, 332 F.3d 1208, 1214–15, 1219–20 (9th Cir. 2003); *Proffitt v. FDIC*, 200 F.3d 855, 860–61 (D.C. Cir. 2000); *Johnson*, 87 F.3d at 488; *Saad v. SEC*, 873 F.3d 297, 304 (D.C. Cir. 2017) (Kavanaugh, J., concurring). We concede some courts have used similar logic. *See Collyard*, 861 F.3d at 764 (citing *Riordan v. SEC*, 627 F.3d 1230, 1234 (D.C. Cir. 2010) (Kavanaugh, J.), *abrogated on other grounds by Kokesh*, 137 S. Ct. 1635); *Telluride*, 146 F.3d at 1246–47; *Bartek*, 484 F. App'x at 956–57. But we think the distinction between injunctions and administrative sanctions makes all the difference. *See supra* Part IV; *Arthur Lipper*, 547 F.2d at 180 n.6. Our analysis is, after all, predicated on traditional principles of *judicial* relief. Gentile is quite right to point out that exclusion from one's chosen profession is a devastating sanction. But the question is not whether an administrative sanction can be punitive; it is whether a federal court can issue a § 78u(d)(6) injunction for punitive purposes. It cannot.

Finally, Gentile argues that the obey-the-law injunction and penny stock bar are punitive because they do not seek to

restrain imminent violations. Gentile concedes, as he must, that an injunction against an imminent violation is not a penalty. *See* Gentile Br. 42 ("Of course the SEC has unlimited power to obtain an injunction against an individual who is actually violating the securities laws or on the precipice of doing so."). He objects that his case does not rise to that standard. It is true that we apply a somewhat less demanding imminence standard in SEC enforcement cases than we do in reviewing the FTC's exercise of similar statutory injunction authority. *Compare Bonastia*, 614 F.2d at 912 ("The well established standard . . . is based on a determination of whether there is a reasonable likelihood that the defendant, if not enjoined, will again engage in the illegal conduct."), *with FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 158 (3d Cir. 2019) ("'[I]s about to violate' means something more than a past violation and a likelihood of recurrence."). But neither *Bonastia* nor the *Aaron* Court (which seemed to approve a test much like ours) dispensed with the requirement of "a proper showing." *See Aaron*, 446 U.S. at 701 ("[T]he Commission must establish a sufficient evidentiary predicate to show that such future violation may occur." (citing *Commonwealth Chem.*, 574 F.2d at 98–100)); *Bonastia*, 614 F.2d at 913 (concluding that the SEC had made "a strong showing" that justified the reversal of the district court and entry of an injunction). Nor did either suggest that the fact of a past violation alone was sufficient to impose so onerous and stigmatizing a sanction as an industry bar or obey-the-law injunction. Rather, even with a lesser imminence requirement, we insisted the showing itself be substantial and based as well on "the circumstances surrounding the particular defendant." *Bonastia*, 614 F.2d at 912.

Along those same lines, we are mindful that we are interpreting the meaning of "penalty" for statute of limitations

30

purposes. Even assuming a valid preventive injunction could be a penalty, it is hard to see when it would accrue. *See Johnson*, 87 F.3d at 489 n.7. Gentile's argument must reject either *Bonastia* or our conclusion that § 78u(d)(1) and (6) conform to traditional equitable principles. We can do neither.

VI

SEC injunctions come with serious collateral consequences. *Commonwealth Chem.*, 574 F.2d at 99; *Am. Bd. of Trade*, 751 F.2d at 535. They can lead to administrative sanctions and disabilities, *see* Thomas J. Andre, Jr., The Collateral Consequences of SEC Injunctive Relief: Mild Prophylactic or Perpetual Hazard?, 1981 U. Ill. L. Rev. 625, 643–68, and collaterally estop defendants in subsequent private litigation, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331–33 (1979). Enjoined defendants suffer harm to their personal and business reputations. *See Sec. Inv'r Prot. Corp. v. Barbour*, 421 U.S. 412, 423 n.5 (1975) ("The moment you bring a public proceeding against a broker-dealer who depends upon public confidence in his reputation, he is to all intents and purposes out of business." (quoting Milton V. Freeman, Administrative Procedures, 22 Bus. Law 891, 897 (1967))); *Warren*, 583 F.2d at 122; ABA Committee on Federal Regulation of Securities, Report of the Task Force on SEC Settlements, 47 Bus. Law. 1083, 1091, 1149–50 (1992). And when a court bans a defendant from his industry, it imposes what in the administrative context has been called the "securities industry equivalent of capital punishment." *Saad v. SEC*, 718 F.3d 904, 906 (D.C. Cir. 2013) (quoting *PAZ Sec., Inc. v. SEC*, 494 F.3d 1059, 1065 (D.C. Cir. 2007)).

So we conclude by repeating Judge Friendly's warning: an SEC injunction "often is much more than [a] 'mild

31

prophylactic.'" *Commonwealth Chem.*, 574 F.2d at 99. When the Commission seeks an injunction, "the famous admonitions in [*Hecht*] must never be forgotten." *Am. Bd. of Trade*, 751 F.2d at 535–36.

*     *     *

Because properly issued and framed injunctions under § 78u(d)(1) and (6) are not penalties governed by § 2462, we will vacate the District Court's judgment and remand for proceedings consistent with this opinion.