# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**  Plaintiff,  v.  **GUY GENTILE,**  Defendant. | Case No. 16–cv–01619–BRM–ESK  **REPORT AND RECOMMENDATION** |

**KIEL**, U.S.M.J.

    **THIS MATTER** is before this Court on defendant's "motion for contempt" (Motion). (ECF No. 116.) Through the Motion, defendant seeks "an order to show cause why [plaintiff] should not be held in contempt for disobeying [this] Court's September 29, 2020 Order." (ECF No. 116-1 p.4.) Pursuant to this Court's instructions directing the parties to address particular concerns (ECF No. 117), defendant filed a supplemental brief in support of the Motion. (ECF No. 121.) Plaintiff filed an opposition to the Motion. (ECF No. 123.) Defendant filed a reply to plaintiff's opposition and then filed a supplemental letter in further support of his position. (ECF Nos. 125, 127.) For the following reasons, I recommend that the Motion be **DENIED**.

## BACKGROUND AND PROCEDURAL HISTORY

    The original complaint in this action was filed on March 23, 2016. (ECF No. 1.) This action has a long and complex procedural history. Rather than recount the five-year history of this action, which the Court is confident the parties are familiar with, I will address only the background relevant to the Motion.

## I. THIS ACTION

On September 29, 2020, District Judge Brian R. Martinotti entered an opinion and order (September 2020 Order) granting defendant's motion to dismiss (ECF No. 81) without prejudice. (ECF Nos. 108, 109.) Judge Martinotti found that the amended complaint, through which plaintiff was seeking the imposition of injunctions against defendant for allegedly having perpetrated two penny stock manipulation schemes, was insufficiently pleaded. (ECF No. 108 pp. 1, 31.)

The first scheme involved Raven Gold Corporation (RVNG) and was alleged to have been perpetrated in 2007. (ECF No. 47 ¶ 1.) The second scheme involved Kentucky USA Energy, Inc. (KYUS) and was alleged to have been perpetrated between 2007 and 2008. (*Id.*) Judge Martinotti concluded that because "according to the allegations of the [a]mended [c]omplaint, [defendant] ha[d] not engaged in illegal securities activity for over a decade" and because plaintiff failed to "plausibly allege [d]efendant will engage in future securities violations absent an injunction," dismissal was warranted. (ECF No. 108 p. 29.) Although plaintiff requested in its opposition to defendant's motion to dismiss that this Court take judicial notice of defendant's more recent activities in the Bahamas and Puerto Rico, Judge Martinotti declined to do so. (*Id.* pp. 23–25.)

In the September 2020 Order, Judge Martinotti granted plaintiff leave to file, by October 20, 2020, a second amended complaint "to cure the deficiencies." (ECF No. 109 p. 1.) However, the September 2020 Order provided that if plaintiff failed to file a second amended complaint by the specified date, "the [a]mended [c]omplaint … [would] be dismissed with prejudice." (*Id.* p. 2.)

On October 19, 2020, plaintiff informed the Court that it would not be "fil[ing] a further amended complaint in this [action]." (ECF No. 113.) On October 21, 2020, this action was closed and dismissed with prejudice. (ECF No. 114; *see* ECF No. 109 p. 2.)

## II.   THE FLORIDA ACTION

Five months later, on March 22, 2021, plaintiff filed a complaint against defendant and Mintbroker International, Ltd.[1] in the Southern District of Florida (Florida Action).  In the Florida Action, plaintiff alleges that Mintbroker "operated [between 2016 and 2019] an offshore broker-dealer in the Bahamas designed to help day traders in the United States circumvent the U.S. rules that regulate pattern day trading."   (ECF No. 116-13 ¶ 1.)   The basis of the Florida Action is defendant's Bahamian conduct that Judge Martinotti declined to take judicial notice of in this action.   (*See* ECF No. 108 pp. 23–25.)

In response to the Florida Action, defendant filed the Motion on November 2, 2021.  (ECF No. 116.)  I administratively terminated the Motion on November 12, 2021 and directed defendant to show cause as to why: (1) the Motion was not brought before the Southern District of Florida; and (2) this Court has the authority "to direct a plaintiff to withdraw a pleading in an action … pending in another federal district."   (ECF No. 117.)

Upon receipt of defendant's letter dated November 15, 2021, Judge Martinotti reinstated the Motion and referred it to me for a report and recommendation.  (ECF Nos. 118, 119.)   I then directed the parties to address the issues I raised in the order to show cause.   (ECF No. 120.)

Pending the outcome of the Motion, on November 8, 2021 defendant filed a motion in the Southern District of Florida to stay the Florida Action.   (ECF No. 126-1.)   The Southern District of Florida denied defendant's request for a stay on December 15, 2021.   (*Id.*)

---

[1] Plaintiff alleges that defendant is the "founder, owner, and chief executive officer" of Mintbroker International, Ltd.   (ECF No. 116-13 ¶ 1.)   Mintbroker International, Ltd. is alleged to have been formerly known as Swiss America Securities Ltd. and does business as SureTrader.   (*Id.*)

## THE MOTION

Defendant argues that pursuant to the first-filed rule, this Court should enter an order holding plaintiff in contempt. Defendant argues that because the basis of the Florida Action is "related" to this now-dismissed action, plaintiff's "failure to file a second amended complaint in [the District of New Jersey] and instead fil[e] a reworked complaint in a different federal court [is a] clear[] and direct[] violat[ion]" of the September 2020 Order. (ECF No. 116-1 p. 13.)

Defendant emphasizes that plaintiff "always viewed its investigation into the Bahamian broker-dealer ... as a primary basis on which to seek an injunction" in this action. (*Id.* p. 9.) Although defendant concedes that "complete uniformity" between this action and the Florida Action is lacking, defendant alleges that since plaintiff "sought to piggyback its untimely allegations related KYUS and RVNG on more recent allegations related to [defendant's] conduct in the Bahamas," the Florida Action is the result of "forum shop[ing]" and is improper. (*Id.* p. 13; ECF No. 125 p. 3.)

For example, defendant notes that plaintiff alleged in this action that defendant's "presence in the securities industry as the beneficial owner ... of a Bahama-based online brokerage firm.... will present him with daily opportunities to violate the securities laws." (ECF No. 116-1 p. 9.) Furthermore, defendant asserts that plaintiff admitted when requesting discovery in this action that the activities as to the penny stock manipulation schemes and Bahama broker-dealer were related. (*Id.* pp. 9, 10.) Since plaintiff "sought to litigate the question of [his] alleged violation ... in connection with his Bahamian broker-dealer [in this action], but it lost" and then "ignore[ed]" this Court's instruction to include these facts in a second amended complaint, defendant argues that plaintiff's complaint filed in the Florida Action "containing these same allegations, seeking the same relief should be withdrawn." (*Id.* p. 11; ECF No. 121 pp. 4, 6.)

In contrast, plaintiff argues that this action and the Florida Action "involv[e] different allegations ... which occurred at different times and in different

4

locations." (ECF No. 123 p. 5.) Plaintiff notes that while it raised defendant's Bahamian conduct as support for its request for injunctive relief in this action, defendant's "activity in the Bahamas was not an element of" this action. (*Id.*) Furthermore, plaintiff clarifies that when seeking discovery from defendant in this action, "the term 'related' signified only that the other investigations involved potential securities law violations by [defendant]." (*Id.* pp. 12, 13.)

Although the opinion accompanying the September 2020 Order stated that for this action "to survive, [plaintiff] would have to allege in a further amended complaint facts sufficient to support injunctive relief," plaintiff asserts that the September 2020 Order "said nothing to preclude [plaintiff] from bringing a separate action against [defendant] in another judicial district." (*Id.* pp. 14, 15.) Since the September 2020 Order "did not compel [plaintiff] to file a complaint against [defendant] based on his Bahama activities," and this Court "has not [yet] adjudged the allegation in the Florida [Action]," plaintiff explains that it acted within its authority to commence the Florida Action. (*Id.*)

Since the September 2020 Order was "fully complied" with, plaintiff asserts that the Motion must be denied. (*Id.* p. 15). However, because this action and the Florida Action are not "substantially related," plaintiff maintains that the first-filed rule does not apply and the issue as to the September 2020 Order's preclusive effect is a decision to be made by the Southern District of Florida. (*Id.* p. 17.)

## DISCUSSION AND ANALYSIS

In seeking entry of an order holding plaintiff in contempt, defendant also requests this Court to direct plaintiff to withdraw its complaint in the Florida Action. Although defendant cites to the first-filed rule in support of this Court's authority to issue such an order, I find otherwise.

To hold a party in civil contempt, a court must find "that (1) a valid court order existed, (2) the [party] had knowledge of the order, and (3) the [party]

5

disobeyed the order." *Harris v. City of Phila.*, 47 F.3d 1311, 1326 (3d Cir. 1994). "A contempt citation should not be granted if 'there is ground to doubt the wrongfulness of' the [party's] conduct." *Id.* (quoting *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 974 (3d Cir. 1982)). Rather, a court must find clear and convincing evidence in support of each of the above elements. *Id.* at 1321.

The parties neither dispute the validity of nor plaintiff's awareness of the September 2020 Order, therefore, only the third prong is at issue. I find that defendant, however, fails to meet his burden of demonstrating that plaintiff disobeyed the September 2020 Order.

Although the opinion accompanying the September 2020 Order provided that "[i]f [plaintiff] wishes th[is] Court to consider the[] allegations [as to defendant's conduct in the Bahamas], they must be included in a further complaint" (ECF No. 108 p. 25), plaintiff was given the choice of whether it wanted to file a second amended complaint or to have its amended complaint dismissed with prejudice (ECF No. 109 pp. 1, 2). In choosing not to file an amended complaint, plaintiff did not violate the September 2020 Order.

Since no contempt is found, an analysis as to this Court's authority to order withdrawal of the complaint in the Florida Action is not necessary. However, in response to defendant's argument, I note that the first-filed rule provides that "[i]n all cases of federal *concurrent* jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941) (emphasis added). In other words, "[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter." *Id.* The first-filed "rule can be used by courts to stay, enjoin, or transfer a later-filed action." *Keating Fibre Int'l, Inc. v. Weyerhaeuser Co., Inc.*, 416 F.Supp.2d 1048, 1051 (E.D. Pa. 2006). The first-file rule, however, only applies when "[the first-filed case is] truly duplicative of the [later-filed] suit…. That is, the one must be materially on all fours with the

6

other. The issues must have such an identity that a determination in one action leaves little or nothing to be determined in the other." *Sam Mannino Enters., LLC v. John W. Stone Oil Distrib., LLC*, 26 F.Supp.3d 482, 486 (W.D. Pa. 2014) (alterations in original) (quoting *Grider v. Keystone Health Plan Cent., Inc.,* 500 F.3d 322, 334 (3d Cir. 2007)).

The first-filed rule applies when, unlike here, two actions are concurrently pending in two different jurisdictions. *See Crosley Corp.*, 122 F.2d at 929. Since this action was terminated with prejudice prior to the commencement of the pending Florida Action, the first-filed rule does not apply. However, even if both actions were currently pending, since this action and the Florida Action are not "truly duplicative," the first-filed rule would still not apply. *See Sam Mannino Enters., LLC*, 26 F.Supp.3d at 486. While the amended complaint in this action alleged violations that occurred in the context of the penny stock manipulation schemes from 2007 and 2008, the Florida Action does not plead those facts and is only concerned with alleged violations that occurred between 2016 to 2019. Defendant concedes that the two complaints lack "complete uniformity," yet he argues that this Court can enjoin plaintiff from litigating the Florida Action because the complaints are fundamentally related. (ECF No. 125 p.3.) However, absent the pleading of the same issues and the same facts, the close relationship between two complaints, does not warrant the application of the first-filed rule. *PhotoMedex, Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 09-00896, 2009 WL 2326750, at *5 (E.D. Pa. July 28, 2009).

Furthermore, I emphasize that "a court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment.'" *Smith v. Bayer Corp.*, 564 U.S. 299, 307 (2011) (quoting C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4405, p. 82 (2d ed. 2002)). "Deciding whether and how prior litigation has [a] preclusive effect is usually the bailiwick of the *second* court." *Id.* Therefore, a court located in the District of New Jersey lacks the authority to determine whether the September 2020 Order precludes the

Southern District of Florida from adjudicating the Florida Action. Notably, the Southern District of Florida already expressed doubt as to this Court's authority to enter such an order. (*See* ECF No. 126-1 p.5 (finding that defendant "has not made a specific showing of prejudice or burdensomeness" to demonstrate whether this action has a preclusive effect on the Florida Action).)

## RECOMMENDATION AND ORDER

I issue this report and recommendation based upon my review of the papers and without oral argument. *See* Fed.R.Civ.P. 78(b); *see also* L.Civ.R. 78.1(b). For the reasons stated above, it is:

1. **RECOMMENDED** that the Motion be **DENIED**.
2. **ORDERED** that the Clerk of the Court administratively terminate the Motion at ECF No. 116 pending the review of this report and recommendation.
3. **ORDERED** that the Clerk of the Court activate this report and recommendation to indicate that it requires further action by the District Judge.
4. **ORDERED** that the parties have **14 days** to file any objections to this report and recommendation pursuant to Local Civil Rule 72.1(c)(2).

        */s/ Edward S. Kiel*
        **EDWARD S. KIEL**
        **UNITED STATES MAGISTRATE JUDGE**

Date: January 10, 2022